**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| TERRY ADIRIM, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. CENTRAL INTELLIGENCE | )   Case No. 25-768 |
| AGENCY; | ) |
| SERVE: Office of General Counsel | ) |
| Washington, DC 20505 | ) |
| | ) |
| JOHN RATCLIFFE, in his official | ) |
| capacity as Director of the Central | ) |
| Intelligence Agency; | ) |
| SERVE: | ) |
| Litigation Division | ) |
| Office of General Counsel | ) |
| Central Intelligence Agency | ) |
| Washington, DC 20505 | ) |
| | ) |
| IVAN RAIKLIN, ESQ.; and | ) |
| 5209 AMPTHILL DR. | ) |
| ALEXANDRIA, VA | ) |
| | ) |
| AMERICA'S FUTURE, INC. | ) |
| SERVE: REGISTERED AGENTS INC | ) |
| 7901 4th St N., Ste 300 | ) |
| St. Petersburg, Fl 33702 | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

### NATURE OF THE CASE

1.    Plaintiff Terry Adirim is medical doctor who proudly served our Nation.

Dr. Adirim's public service included serving as acting assistant secretary of defense for health

affairs at the outset of the coronavirus pandemic,[1] in which role she gave Secretary of Defense Lloyd Austin the life-saving advice to vaccinate our servicemembers. Most recently, Plaintiff took on a senior role at the Central Intelligence Agency ("CIA" or the "Agency")'s Center for Global Health Services after being actively sought and recruited by the Agency for that role. Moreover the Agency's leaders expressed satisfaction with her performance; just weeks before Plaintiff's termination, CIA's chief operating officer sent her an email stating that the Agency looked forward to investing in her career.

2.    Ivan Raiklin and Laura Loomer are associates and political extremists. Defendant Raiklin is notorious for publishing the names of 350 individuals on a "Deep State Target List" who he considers guilty of treason and fit to be executed. Defendant Raiklin is particularly venomous regarding Plaintiff, publicly accusing her not only of treason, but also genocide, war crimes, homicide, and mutilation, while threatening to release her private correspondence. Defendant Raiklin states that he wishes for individuals such as Plaintiff to be unable "to walk anywhere" without feeling the "wrath of their neighbors, friends, relatives, family." Defendant Raiklin calls for those on his target list to be dangerously and illegally "swatted."[2] His odious actions and words threaten the physical safety of Plaintiff and her family.

3.    Last winter, within days of Plaintiff quietly starting work at CIA, Defendant Raiklin directed a tweet to CIA Director John Ratcliffe asking, "Is the architect of the illegal DOD CCP-19 Jab Genocide Mandate Terry Adirim burrowing in at the CIA?" Ex. A.[3] Plaintiff informed CIA

---

[1] *See* https://www.defense.gov/About/Biographies/Biography/Article/2604503/dr-terry-adirim/.

[2] S. Harris, *Trump's 'Secretary of Retribution,'* THE ATLANTIC (Nov. 2, 2024).

[3] This Tweet has since been deleted, but can be found using the "Wayback Machine".

security that someone at the Agency illegally leaked to Defendant Raiklin the non-public, private information that Plaintiff now served at CIA.

4.    On April 2, 2025, Loomer visited President Donald Trump in the White House. On April 3, a series of national security officials were terminated.[4] Also, that day, Defendant Raiklin tweeted, "I respect Laura Loomer." Ex. B. On April 4, Loomer took credit in a tweet for convincing President Trump to fire the National Security Agency director and others, Ex. C; the president admitted to listening to Loomer's personnel recommendations.[5] Also, on April 4, CIA terminated Plaintiff's employment. Plaintiff asked twice for the reason for her termination, and Plaintiff's supervisor told her "I have no information."

5.    Common sense indicates and discovery will show that Defendant Raiklin asked Loomer to request that President Trump terminate Plaintiff. On April 8, just four days after Plaintiff learned of her looming termination, Defendant Raiklin re-posted a message stating, "Scoop: Terry Adirim, a senior Central Intelligence Agency official and former senior defense official who played a pivotal and potentially illegal role in the Biden Administration's military vaccine mandate, was recently fired from the agency, a source has revealed exclusively to Breitbart News." Ex. D. The anonymously-sourced Breitbart article appeared earlier that same day. Someone at CIA again illegally leaked non-public, private information about Plaintiff, this time that she was to be terminated from the Agency.

---

[4] M. Haberman, *Trump Fires 6 N.S.C. Officials After Oval Office Meeting With Laura Loomer*, NEW YORK TIMES (Apr. 3, 2025).

[5] *See* A. Treene, *White House advisers have kept Laura Loomer at bay for months. Then, Trump invited her in*, CNN (Apr. 5, 2025).

6.    Plaintiff anticipates being terminated from employment with Defendant CIA on May 3, 2025, approximately one month short of when Plaintiff would qualify for full federal retirement benefits.

7.    Plaintiff and her family suffered terrible injustice only because her good service to our Country made her a target for a political extremist who defamed her and called for the termination of her employment and even her death. Rather than stand up for their officer against this thug, and other internet trolls, CIA and its director connived in firing Plaintiff and leaking private information about her. Through their actions and words, Defendants Raiklin, CIA, Director Ratcliffe, and Raiklin's employer America's Future jointly and severally violated the Due Process Clause of the Fifth Amendment and the Privacy Act. They committed breach of contract, defamation, intentional infliction of emotional distress, conversion, and tortious interference with Plaintiff's contract. Plaintiff seeks justice through claims for injunctive relief and statutory, compensatory, exemplary and punitive damages.

## JURISDICTION

8.    The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the action arises under the Due Process Clause of the Fifth Amendment; the Privacy Act of 1974, 5 U.S.C. § 552a; and Virginia common law. The Court also exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the action involves an amount in controversy exceeding $75,000 between different States' citizens.

9.    The Court exercises personal jurisdiction over Defendant CIA under Section 1331 as it is a federal agency, and over Defendant Director Ratcliffe as he is named in his capacity as an agency head. The Court exercises personal jurisdiction over Defendant Raiklin pursuant to Section 1332 as upon information and belief he is a resident of this District, having run for elected office

in Virginia. The Court exercises personal jurisdiction over Defendant America's Future pursuant to Section 1332 as it solicits donations in this District.

## VENUE

10.    Venue in this District is proper because constitutional, statutory, and tortious violations took place in the Eastern District of Virginia.

## THE PARTIES

11.    Plaintiff served as director of CIA's Center for Global Health Services and a resident of Maryland. She is sixty-one years of age.

12.    Defendant CIA is a U.S. Government agency headquartered in this District.

13.    Defendant Ratcliffe is Director of CIA.

14.    Defendant Raiklin is a resident of, and former political candidate in, Virginia.

15.    Defendant America's Future is a not-for-profit incorporated in Florida that solicits donations in this District.

## FACTUAL ALLEGATIONS

16.    Plaintiff is an emergency medicine and public health expert who served, until April 2025, as director of CIA's Center for Global Health Services. She earlier served as a senior associate dean, department chair and professor at the Schmidt College of Medicine at Florida Atlantic University, as well as in executive leadership roles at the Departments of Defense and Veterans Affairs.

17.    While at the Defense Department, Plaintiff served as acting assistant secretary for health affairs, the principal advisor to the Defense Secretary for all health protection policies, programs, and activities. Plaintiff's service at the Pentagon coincided with the COVID-19

pandemic. Plaintiff's advice to Secretary Lloyd Austin included a recommendation, accepted by the secretary, that military servicemembers receive COVID-19 vaccines.

18.    Plaintiff's good advice saved the lives of American servicemembers. While several troops sadly died of COVID-19 in the early days of the pandemic in 2020-21, none died of COVID-19 after Secretary Austin adopted her recommendation and ordered our armed forces vaccinated. Plaintiff's advice and Secretary Austin's order followed in the best traditions of our military: George Washington ordered the Continental Army's soldiers to receive experimental smallpox vaccinations in 1777.

19.    After being actively recruited by Defendant CIA, including interviews with the Agency's director and deputy director at that time, on December 11, 2024, Plaintiff signed a renewable five-year contract with the Agency to serve as a member of the Senior Intelligence Service and lead CIA's Center for Global Health Services. Ex. E. She entered on duty with Defendant CIA on December 16, 2024. Plaintiff's hiring by Defendant CIA was nonpublic information.

20.    In March 2024, Defendant CIA's third-ranking official, the Agency's chief operating officer, confirmed Plaintiff's satisfactory performance as director of Global Health Services.

21.    Defendant Raiklin, who styles himself as Donald Trump's "Secretary of Retribution," is an attorney, combat veteran, former military intelligence and special operations officer, and former candidate for office. Defendant Raiklin was present at the United States Capitol during the deadly insurrection on January 6, 2021, but charged with no crime.[6]

---

[6] S. Harris, *Trump's 'Secretary of Retribution.'*

22.    Defendant Raiklin's only known employment is as one of only five members of the board of directors of America's Future, a political advocacy group. America's Future describes him as being:

> known internationally for his fearless and candid reporting on some of the most controversial topics of our time and for speaking out for the truth regardless of politics. His skilled approach to investigations has exposed corruption at the federal and state levels … He is laser-focused on educating and motivating American citizens and Congress to take bold steps to protect our constitutional rights and the Republic.[7]

23.    Defendant Raiklin staunchly opposed Secretary Austin's decision to vaccinate servicemembers, and remains fiercely critical of Plaintiff's recommendation of the same. He claims that the vaccinations "ended up killing lots of people."[8]

24.    Since at least October 2023, Defendant Raiklin and Loomer are close associates, participating for example as the featured speakers in a "ReAwaken America Tour."[9]

25.    Circa July 2024, Defendant Raiklin included Plaintiff's name on a "Deep State Target List" of 350 individuals he considers guilty of treason, a list which he wears on a t-shirt, including on television. Most people on Defendant Raiklin's list are current or former government officials, or relatives of these officials. According to *The Atlantic*, Defendant Raiklin "said he would conduct 'livestreamed swatting raids' against his targets."[10]

26.    In October 2024, Defendant Raiklin stated on Roseanne Barr's podcast that Plaintiff should be convicted of "genocide and mass mutilation." He also stated that he obtained Plaintiff's

---

[7] *See* https://www.americasfuture.net/leadership/.

[8] S. Harris, *Trump's 'Secretary of Retribution.'*
[9] *See* https://subsplash.com/u/-RT4DVC/media/embed/d/fsqfnyv?logoWatermark=0.

[10] S. Harris, *Trump's 'Secretary of Retribution.'* The magazine explained that "Swatting is the illegal practice of falsely reporting an emergency in order to summon armed law enforcement to someone's home." *Id*.

Twitter/X direct messages. A copy of the Deep State Target List available online includes a request to Elon Musk, owner of X (formerly known as Twitter), for copies of the 350 individual's direct messages.

27.     On Barr's show, Defendant Raiklin described the individuals on his list, such as Plaintiff, as "war-criminal scum." He stated that he hoped that those on his list would be unable "to walk anywhere, whether it's in the digital space of physical space, without them feeling the, let's just say, wrath of their neighbors, friends, relatives, family."

28.     On December 11, 2024, Plaintiff signed a contract with Defendant CIA, Ex. E, and entered on duty on December 16, 2024.

29.     On December 22, 2024, Defendant Raiklin directed a tweet to Defendant Ratcliffe asking, "Is the architect of the illegal DOD CCP-19 Jab Genocide Mandate Terry Adirim burrowing in at the CIA?" Ex. D. This tweet came six days after Plaintiff entered on duty with Defendant CIA.

30.     Plaintiff's position with Defendant CIA was nonpublic information. Either someone at Defendant CIA informed Raiklin of Plaintiff's hiring, or the Agency informed someone outside of CIA who told Raiklin.

31.     On March 31, 2025, X's owner, Musk, visited CIA Headquarters.[11]

32.     On April 2, 2025, Loomer visited President Donald Trump in the White House.  On April 3, 2025, a series of senior officials including National Security Agency director General

---

[11] *See* J. Barnes, *Musk Visits C.I.A. to Discuss Downsizing Efforts,* NEW YORK TIMES (Mar. 31, 2025).

Timothy Haugh were terminated from their positions.[12]  Also on April 3, 2025, Defendant Raiklin tweeted, "For the record, I respect Laura Loomer." Ex. B.

33.    On April 4, 2025, Loomer took credit in a tweet for convincing President Trump to fire General Haugh and others, stating, "NSA Director Tim Haugh and his deputy Wendy Noble have been disloyal to President Trump. That is why they have been fired … Thank you President Trump for being receptive to the vetting materials provided to you and thank you for firing these Biden holdovers. Vetting matters!" Ex. C.

34.    Also on April 4, 2025, President Trump stated that he spoke with Loomer on April 3 and listened to her "hiring recommendations."[13]

35.    Also on April 4, 2025, Defendant CIA informed Plaintiff that her employment was to be terminated. She was given no reason for her termination. When Plaintiff twice asked her supervisor for the reason for her termination, her supervisor answered, "I have no information." An administrator at Defendant CIA told Plaintiff that the Agency "was invoking the clause in her contract that allows termination to occur 'upon thirty (30) days notice by either part for any reason.'"

36.    Upon information and belief, Defendant Raiklin asked that Loomer request at her White House meeting that President Trump terminate Plaintiff, the president or his staff member ordered Defendants CIA and Ratcliffe to do so, and they complied with the order the next day.

37.    On April 8, 2025 Defendant Raiklin re-posted a message stating, "Scoop: Terry Adirim, a senior Central Intelligence Agency official and former senior defense official who played

---

[12] *See* M. Haberman, *Trump Fires 6 N.S.C. Officials After Oval Office Meeting With Laura Loomer.*

[13] *See* A. Treene, *White House advisers have kept Laura Loomer at bay for months. Then, Trump invited her in.*

a pivotal and potentially illegal role in the Biden Administration's military vaccine mandate, was recently fired from the agency, a source has revealed exclusively to Breitbart News." Ex. D. The anonymously-sourced Breitbart article appeared earlier that same day.

38.    Plaintiff's position at Defendant CIA was nonpublic information; either someone at the Agency informed Breitbart of Plaintiff's termination, or CIA informed someone outside of the Agency who told Breitbart.

39.    Also on April 8, 2025, Donald Trump Jr. tweeted the phrase "Bye bye" and an emoji of hands clapping, while attaching a screenshot of the title of the Breitbart article.  Ex. F.

40.    On April 13, 2025, Defendant Raiklin stated on CNN that "the nation will be furious" if within twelve months, no one on his "Deep State Target List" is executed.[14]

41.    Plaintiff anticipates being terminated from employment with Defendant CIA on May 3, 2025, approximately one month short of when Plaintiff would qualify for full federal retirement benefits.

## CLAIMS FOR RELIEF

### Count One:
### Violation of the Due Process Clause
### against Defendants CIA and Ratcliffe

42.    Plaintiff incorporates the allegations in paragraphs 1-41 as if fully set forth herein.

43.    The Fifth Amendment provides that no one may be deprived of a property interest without due process of law. *See* U.S. CONST. AMEND V. Plaintiff maintains a cognizable property interest in her contract with Defendant CIA, and a procedural right not to be terminated from the Agency with a defamatory statement made about her to Breitbart News on her way out the door,

---

[14] *The far-right extremist with a 'retribution list,'* CNN (Apr. 10, 2025).

accusing Plaintiff of "potentially illegal" activity, and noting that as the reason for her being fired by Defendant CIA.

### Count Two:
### Breach of contract
### against Defendants CIA and Ratcliffe

44.    Plaintiff incorporates the allegations in paragraphs 1-43 as if fully set forth herein.

45.    The elements of breach of contract in Virginia are a valid contract, performance by the non-breaching party, and breach by the other party, resulting in damages. Plaintiff and Defendant CIA signed a valid contract for five years of employment. Plaintiff, per Defendant CIA's chief operating officer, performed admirably. Defendants CIA and Ratcliffe breached their employment agreement with Plaintiff, causing her to lose nearly five years of wages.

46.    While Defendant CIA's contract with Plaintiff states that the Agency may terminate that agreement upon thirty days' notice "for any reason" that reason must be a *lawful* reason. The reasons may not be defamatory statements or tortious interference with the contract by third parties. Any contract, including those entered into by Defendant CIA, includes an implied covenant of good faith and fair dealing by the parties. Defamatory statements and tortious interference violate that covenant.

### Count Three:
### Violation of the Privacy Act
### against Defendants CIA and Ratcliffe

47.    Plaintiff incorporates the allegations in paragraphs 1-46 as if fully set forth herein.

48.    The Privacy Act provides that no federal agency shall disclose any record contained in a system of records to any person, except through a written request by the individual to which the record refers, or pursuant to thirteen exceptions, none of which applies in this case.  *See* 5 U.S.C. § 552a(b). If an agency fails to comply with the Privacy Act, "in such a way as to have an

11

adverse effect on an individual," that person may bring a civil action against the agency.  5 U.S.C. § 552a(g)(1)(D).

49.    The non-public facts that Plaintiff was hired and then terminated by Defendant CIA are contained in the Agency's system of records. Someone at Defendant CIA leaked to Breitbart News, or a source of Breitbart, that Plaintiff was hired by the Agency in December and terminated in April. Either Defendant CIA or Breitbart's source additionally implied that the reason for Plaintiff's termination was her "potentially illegal role in the Biden Administration's military vaccine mandate." Defendant CIA's improper disclosures regarding Plaintiff's hiring, firing, and the alleged reason for her termination caused her grave harm, including being condemned online by Defendant Raiklin as "the architect of the illegal DOD CCP-19 Jab Genocide Mandate" in connection with her termination, resulting in her being held up to vile public abuse, and physically endangering her and her family.

### Count Four:
### Defamation
### against Defendants Raiklin and America's Future

50.    Plaintiff incorporates the allegations in paragraphs 1-49 as if fully set forth herein.

51.    The elements of defamation of a public figure in Virginia are the publication of a maliciously false statement of fact to a third party, harmful to a plaintiff's reputation.

52.    Defendant Raiklin stated on podcasts and online postings that Plaintiff—a dedicated medical professional and patriotic public servant—is guilty of treason, genocide, war crimes, homicide, and mutilation. These statements are, of course, false and defamatory *per se*. Plaintiff obviously did not commit, much less been convicted of these heinous crimes. It is cruel and perverse that Defendant Raiklin makes these statements regarding Plaintiff's successful efforts to save the lives of American servicemembers during the pandemic. Defendant Raiklin's

12

statements damaged Plaintiff by causing the termination of her employment, holding her up to vile public abuse, thereby physically endangering her and her family.

53.    Defendant Raiklin's employer, Defendant America's Future, holds constructive knowledge of their board member's false and defamatory public statements, which are the subject of national press attention, yet publicly describes him as a "fearless and candid" reporter, "speaking out for the truth," exposing federal corruption, who is "laser-focused on educating and motivating American citizens …".[15]

## Count Five:
### Intentional infliction of emotional distress
### against Defendants Raiklin and America's Future

54.    Plaintiff incorporates the allegations in paragraphs 1-53 as if fully set forth herein.

55.    The elements of intentional infliction of emotional distress in Virginia are a defendant's intentional, extreme and outrageous conduct causing a plaintiff's severe emotional distress.

56.    Defendant Raiklin publicly admitted that he hoped that an individual's inclusion on his Deep State Target List would render them unable "to walk anywhere" without feeling the "wrath of their neighbors, friends, relatives, family." Defendant Raiklin also publicly taunted and threatened Plaintiff that he illegally obtained and would share her private Twitter/X direct messages. His statements and actions are the very definition of intentional, extreme, and outrageous conduct. By holding Plaintiff up to vile public abuse, thereby physically endangering her and her family, Defendant Raiklin caused Plaintiff severe emotional distress.

---

[15] *See* https://www.americasfuture.net/leadership/.

57.     Defendant Raiklin's employer, Defendant America's Future, holds constructive knowledge of their board member's outrageous misconduct, which is the subject of national press attention.

### Count Six:
### Conversion
### against Defendants Raiklin and America's Future

58.     Plaintiff incorporates the allegations in paragraphs 1-57 as if fully set forth herein.

59.     The elements of conversion in Virginia are a plaintiff's ownership of property, a defendant's wrong against plaintiff's rights to that property, resulting in plaintiff being deprived of their property, for example through taking it without plaintiff's consent.

60.     A copy of Defendant Raiklin's Deep State Target List, available on the internet includes a request to Musk, owner of Defendant X, for copies of the 350 individuals' direct messages. Defendant Raiklin subsequently stated on Roseann Barr's podcast that he indeed obtained Plaintiff's private Twitter/X direct messages.

61.     Defendant Raiklin's employer, Defendant America's Future, holds constructive knowledge of their board member's statement that he stole copies of Plaintiff's Twitter/X direct messages, which is the subject of national press attention.

### Count Seven:
### Tortious Interference With Contractual Relations
### against Defendant Raiklin

62.     Plaintiff incorporates the allegations in paragraphs 1-61 as if fully set forth herein.

63.     The elements of tortious interference in Virginia are a valid contract, a defendant's knowledge of that contract, and intentional interference causing a breach of contract, resulting damage to the plaintiff.

64.    Plaintiff and Defendant CIA entered into a valid employment contract. Defendant Raiklin tweeted about his knowledge of that contract. Defendant Raiklin intentionally interfered with the contract by making false and defamatory statements about Plaintiff and asking that Loomer petition President Trump to order the termination of Plaintiff's contract. Loomer did as Defendant Raiklin requested. Defendants CIA and Ratcliffe then breached the contract, costing Plaintiff nearly five years of wages.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a jury trial on all triable issues.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court enter an award and judgment in their favor, against Defendants as follows:

(a) Injunctive relief, against Defendants CIA and Ratcliffe;

(b) Statutory damages, against Defendants CIA and Ratcliffe;

(c) Compensatory damages, in an amount to be determined, but in excess of $75,000, against all Defendants;

(d) Exemplary and punitive damages against Defendants Raiklin and America's Future;

(e) Expenses and costs, including attorneys' fees, pursuant to 5 U.S.C. §§ 504 and 552a; and

(f) Such other relief as the Court deems appropriate.

Plaintiff further respectfully requests that the Court hold Defendants jointly and severally liable.

Dated: May 2, 2025

Respectfully submitted,

*/s/ Kevin T. Carroll*
Kevin T. Carroll, VSB No. 95292
**Fluet**
1751 Pinnacle Drive
Suite 1000
Tysons, Virginia 22102
T: (703) 590-1234
F: (703) 590-0366
kcarroll@fluet.law
e-file@fluet.law

*Attorney for Plaintiff*