IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TERRY ADIRIM, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-768 (MSN/WBP) |
| ) | |
| U.S. CENTRAL INTELLIGENCE ) | |
| AGENCY, *et al.* ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MOTION FOR A TEMPORARY RESTRAINING ORDER**

Plaintiff, the Central Intelligence Agency (CIA)'s senior medical officer Dr. Terry Adirim, is likely to succeed on the merits of her Due Process claim, an almost identical claim to one now pending before the Court of Appeals; she will suffer irreparable harm, including "stigma plus," from being terminated to the sound of a defamatory tweet from Donald Trump, Jr.; the balance of equities is in her favor, as she is just three weeks before the vesting of her well-deserved full retirement benefits; and the public interest strongly disfavors political extremists from outside the Government making decisions about the Agency's senior personnel.

The federal Defendants' arguments against injunctive relief are:

- Plaintiff's reasons for her termination are "a speculative and unsupported theory", a "conspiracy theory";

- The declaration of Elon Musk's "Department of Government Efficiency" (DOGE) representative at CIA's should be taken at face value; and

- CIA may self-regulate itself to break contracts for any reason.

Plaintiff respectfully disagrees with the Government.  She submits that:

- Plaintiff was fired due to defamatory statements made by Defendant Ivan Raiklin to Laura Loomer, President Donald Trump, and Defendants CIA and Ratcliffe, statements amplified by Donald Trump, Jr. in his effective role as a senior Government official, amounting to "stigma plus";

- Elon Musk's DOGE representative at CIA's declaration should not be taken at face value; and

- CIA may not permit itself to break contracts for reasons that under common law, such as reliance on defamatory statements that the Agency *knows* to be untrue, are not allowed.

**Argument**

Plaintiff is about to be fired due to false and defamatory statements made by Defendant Raiklin to Laura Loomer, who repeated them to President Donald Trump, who relayed them to Defendants CIA and Ratcliffe.  Defendants CIA and Ratcliffe's proposed wrongful termination of Plaintiff was then celebrated in a tweet by Donald Trump, Jr.—who is in effect a very senior Government official of the current presidential Administration—reposting an article publishing Defendant Raiklin's libel against Plaintiff as the reason for her firing, in a classic case of a "stigma-plus" termination.  This sequence of events violates Plaintiff's due process rights, in her view, based upon a recent decision by this Court in *Doe v. ODNI*, Case No. 1:25cv300, which as of May 6, 2025, is on appeal by the Government to the Fourth Circuit.  Plaintiff fully deserves injunctive relief, but in the alternative, a continued administrative stay until the underlying issue in her case and in Doe is resolved by the Court of Appeals is in the interests of judicial economy.

Plaintiff assumes the Court's familiarity with the facts of this case as set forth in her Complaint, and with the well-established standards for granting a preliminary injunction:  (1) likelihood of success on the merits, (2) irreparable harm absent relief, (3) a favorable balance of the equities and (4) service of the public interest.

Plaintiff also concedes, as she must, that the gravamen of her request for injunctive relief is Defendants' CIA and Ratcliffe's violation of her Fifth Amendment due process and liberty interests. She included the Government's violations of the Privacy Act and its breach of her contract in her Complaint and motion for a temporary restraining order only to fully describe to the Court the remarkable extent of these defendants' illegal acts in this case.

A.  **Plaintiff's termination by the Government pursuant to defamatory statements by extremist Ivan Raiklin, as amplified by Donald Trump, Jr.'s tweet, is a "stigma-plus" firing violating her Fifth Amendment due process rights.**

*Contra* Defendants' assertion, Plaintiff's Complaint is not a simple contract claim. It is an allegation of serious and unconstitutional misconduct by the Government.

Defendant CIA illegally leaked the personal and confidential information of Plaintiff's hiring and firing by the Agency, in blatant violation of the Privacy Act, and then Breitbart News. Defendant Raiklin and Donald Trump, Jr. piled on with defamatory accusations that Plaintiff was fired for falsely alleged illegal activities while serving with the Department of Defense. In fact, Plaintiff was fired due to the lunatic conspiracy theories of Defendant Raiklin and his fellow political extremist Laura Loomer,[1] as communicated by her to President Trump at the White House on April 2, 2024. Plaintiff's termination under these extraordinary circumstances is a classic case of a stigma-plus firing by the Government, one that implicates her liberty and property interests, and her constitutional right to due process.

The Government's claim that "Donald Trump, Jr. does not functionally act as a Government official" is laughable. No one even casually familiar with American politics can

---

[1] It is remarkable that the Government puts the phrase political extremist in mocking quotation marks regarding Plaintiff's use of it to describe Defendant Raiklin and Loomer. If Raiklin's call to execute hundreds of former senior federal officials for treason, his description of the government's COVID-19 policies as genocide, and Loomer's accusation of government complicity in the 9/11 terrorist attacks are not indicia of political extremism, what then is?

3

dispute that Donald Trump, Jr. is an official actor for his father's government. Donald, Jr. helped pick the vice president,[2] and the Cabinet,[3] and just defenestrated the national security advisor.[4] Trump, Jr. traveled to Greenland in support of the Administration's illegal efforts to seize territory from our ally Denmark.[5] Junior is reportedly setting up government/ commercial arrangements for his family across the world.[6] Pretending that Trump Junior does not speak for the Government asks the Court to suspend the judicial notice that comes from minimally informed citizenship in 2025. The Court ought to decline the Government's suggestion to ignore the obvious. When Donald Trump, Jr. tweeted in celebration about Plaintiff's unjust firing to his *fifteen million* followers on X, he defamed her on behalf of the Government..

What Defendant CIA terms "a speculative and unsupported theory" and a "conspiracy theory" about the events of early April is what is also known as circumstantial evidence, of the kind upon which the Agency (and the Department of Justice) takes action every day. Defendant Raiklin repeatedly raged in posts and podcasts about Plaintiff's alleged crimes. Raiklin's associate Loomer met with President Trump on April 2, 2025. Raiklin tweeted about his admiration for Loomer that same day. The next day, April 3, President Trump fired several senior national security officials; both Trump and Loomer publicly admitted to having discussed

---

[2] *See* S. Goldmacher, *Donald Trump Jr. Is Building a 'MAGA Bench.' J.D. Vance Is Just the Start*, NEW YORK TIMES (Jul. 17, 2024).

[3] *See* A. Ulmer, *Donald Trump Jr is helping his father pick the most controversial cabinet of modern times,* REUTERS (Nov. 24, 2024).

[4] *Behind the Mike Waltz Ouster,* WALL STREET JOURNAL (May 1, 2025).

[5] I. Aikman, *Trump Jr arrives in .Greenland after dad says US should own the territory*, BBC (Jan. 7, 2025).

[6] E. Lipton, *Trump sons' deals on three continents directly benefit the president*, NEW YORK TIMES (May 5, 2025).

these terminations.  The next day, April 4,  Plaintiff was without warning and contrary to recent assurances from a senior Agency official that her position was secure, fired from Defendant CIA.  Days later, on April 8, Raiklin and Trump's son tweeted triumphantly about Plaintiff's termination, Privacy Act-protected information given from someone at the Agency to Breitbart News by an anonymous source, adding the defamatory allegation that she was fired because of falsely alleged illegal activity while serving as an assistant secretary of defense.[7]

Defendants CIA and Ratcliffe do not, because they cannot, offer any explanation at all for why the Agency illegally leaked Plaintiff's hiring and firing to uncleared third parties including, *inter alia*, Breitbart News.[8]  Except for the fact that she is a contract employee, Plaintiff's case is very similar to that of the plaintiffs in *Doe v. ODNI*, who obtained injunctive relief before Judge Trenga, a decision which is now on appeal by the Government to the Fourth Circuit.  Here, Defendants CIA and Ratcliffe knew for sure that Defendant Raiklin's defamatory statements are false; obviously, Plaintiff is not guilty of genocide or treason, and yet Defendants acted upon these libelous statements and the president's son republished and amplified them.

This false accusation of illegal activity by Plaintiff is the kind of "stigma-plus" termination that the Fourth Circuit found in *Roe v. Department of Defense*, 947 F.3d 207 (4th Cir. 2020), could lead to a violation of the Due Process Clause of the Fifth Amendment.  No one in

---

[7] The Government makes much of the fact that Plaintiff filed suit only the day before her scheduled May 3, 2025, termination, but fails to acknowledge that Defendant CIA refused her request to discuss and avoid her planned firing.  Left without any alternative, Plaintiff reluctantly filed suit, to enforce her rights as a citizen and government employee to a modicum of due process at the twilight of her lengthy and distinguished public service career.

[8]  Twenty years ago, the disclosure of CIA officer Valerie Plame's Agency affiliation was the subject of a special counsel investigation that resulted in a conviction for false statements of the counsel to the vice president.  Today, Defendant CIA leaks the Agency affiliation of an officer to right-wing media without apparent objection from the Department of Justice.

any profession would want to apply for a job for the reason that they were fired from their last position for publicly-alleged illegal activity. As in *Roe*, Plaintiff is to suffer "a particularly heinous brand of discharge" and any prospective employer with access to Google will learn of the circumstances of her discharge, as amplified through libel by the president's son.

As even the Government admits, there may be a cognizable due process claim based on the deprivation of a liberty interest where a public employer makes stigmatizing remarks in the course of a discharge. *See Ridpath v. Bd. of Governors*, 447 F.3d 292, 309 (4th Cir. 2006); *see also Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007). Plaintiff similarly alleges a stigma on her reputation, made public by CIA and Donald Trump, Jr., in conjunction with her termination from CIA.

Plaintiff recognizes, as the Government notes, that there is a circuit split over whether the holding in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 504 (1954), is an administrative principle, or a constitutional mandate of due process for federal employees, including those employed by Defendant CIA. Plaintiff asserts that *Accardi* represents a constitutional mandate of due process for CIA employees facing irreparable injury, including Agency contractors such as Plaintiff, from termination pursuant to a defamatory statement from someone as senior within the Government as Trump, Jr. Again, this is the exact issue now before the Court of Appeals in *Doe v. ODNI*. Even if the Court declines at this time to grant Plaintiff an injunction, a continued administrative stay pending the Fourth Circuit's resolution of the nearly identical issues raised in *Doe*, is in the interests of judicial economy.

**B.     A declaration by Elon Musk's representative at CIA ought not be credited by the Court.**

The slim reed of a factual basis to the Government's reply to Plaintiff's motion for an injunction is a declaration by Brenda McKinlay. McKinlay is upon information and belief Elon

6

Musk's representative of his "Department of Government Efficiency" at Defendant CIA.[9] McKinlay, serving as the Agency's deputy chief operating officer (COO), is not a career CIA officer. Rather, she is an unauthorized political appointee within an organization that statutorily is supposed to have only three politically-appointed positions—the director, general counsel and inspector general.

McKinlay is, critically, only the *deputy* COO. Defendant CIA's actual number-three official during Plaintiff's CIA service, COO and career official Maura Burns, assured Plaintiff in writing in March of the security of her job and of the Agency's senior leadership's satisfaction with her performance. Burns' words are not surprising. Plaintiff is a successful former acting assistant secretary of defense, who Defendant CIA actively sought to recruit to her role. Plaintiff is *eager* to solicit testimony from Burns about her termination, and to depose McKinlay.

McKinlay's threadbare statement that "Plaintiff's conduct had already generated multiple complaints by several different CIA officers regarding alleged inappropriate and harassing statements and actions by Plaintiff's towards them in the workplace" is devoid of any substantive detail to which Plaintiff can make an intelligent response. If there were *actual* evidence of McKinlay's claimed multiple complaints of harassment against Plaintiff, no doubt Defendant CIA would have attached them as exhibits to the Government's brief. Plaintiff, a married sixty-one year-old woman, a successful member of the Senior Executive Service over many years, and a former subcabinet official, is an objectively unlikely candidate as a first-time workplace harasser in the autumn of her years.

---

[9] The scare quotes are from the Government's own executive order purporting to establish "DOGE" by presidential fiat.

Defendants italicize part of the following statement in their filing: "Elon Musk visited the CIA's headquarters … *Plaintiff does not explain the significance of this event or why it is relevant to her claims*."  Only because the Government asks, Plaintiff included this detail because of Defendant Raiklin's public claim to have (illegally) obtained her private, direct messages from Twitter—a company owned by Musk—and the Government's affiant in this case, D/COO McKinlay, is reportedly Musk's representative at Defendant CIA.  Plaintiff is eager to conduct discovery on this front.

Recently McKinlay's patron, Director Ratcliffe, shamelessly perjured himself before the congressional intelligence oversight committees, denying that detailed information about an incoming airstrike, which he received on an insecure device, was classified information.  Defendant Ratcliffe's subordinate McKinlay's declaration is best understood as a similarly facetious political, and not factual, statement on behalf of the Trump administration, and not CIA.  As such, McKinlay's statement need not be taken at face value by the Court.

**C.    CIA may not breach contracts based on defamatory statements known to be untrue.**

The Government Defendants' position, as Plaintiff understands it from oral argument, is that CIA may breach a contract for any reason, even a reason illegal at common law, unless that reason is specifically forbidden by a statute such as the Civil Rights Act.  In advancing this argument, the Agency seeks to press its unique prerogatives as an intelligence service too far.

Defendant CIA, as a small-a agency, lacks any ability to regulate itself beyond the terms of the common law, including the inadmissibility of terminating a contract for an unlawful reason, such as pursuant to a defamatory statement that one party knows for certain to be untrue.  An employer breaking an employment agreement with an employee under these circumstances violates the implied covenant of good faith and fair dealing that applies to any contract.

Plaintiff, as Defendants CIA and Ratcliffe know full well, was not involved in any illegal activity while serving as an assistant secretary of defense, much less genocide and treason; indeed, the Agency vetted her carefully between September and December 2024, including regarding her tenure at the Pentagon. Langley-based Defendant CIA asks the Court to formally grant the Agency *carte blanche* to breach contracts even for reasons illegal under Virginia law. The Court ought not do so.

## Conclusion

Plaintiff is a good career public servant who is about to be very publicly fired, only weeks short of the vesting of her full retirement benefits, due only to a knowingly false and *per se* defamatory accusation of illegal activity, a libel amplified on Twitter by the son of the President of the United States, in a classic case of stigma-plus termination in violation of her liberty and property interests, and her Fifth Amendment due process rights. She is likely to succeed on the merits of her Privacy Act claim, in particular; her firing under these unusual circumstances is so extraordinary as to amount to irreparable harm; and both equity and the public interest clearly call for the continuance of her long government service just through early June.

In the alternative, because the important legal questions presented by Plaintiff's case are so similar to those now before the Court of Appeals in *Doe v. ODNI*, a continued administrative stay until the Fourth Circuit speaks on these issues is appropriate in the interests of judicial economy.

Dated: May 7, 2025

Respectfully submitted,

*/s/ Kevin T. Carroll*
Kevin T. Carroll, VSB No. 95292
**Fluet**
1751 Pinnacle Drive
Suite 1000
Tysons, Virginia 22102
T: (703) 590-1234
F: (703) 590-0366
kcarroll@fluet.law
e-file@fluet.law

*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 7, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to counsel of record for Defendant CIA and Defendant Ratcliffe. I hereby certify that on May 7, 2025, a copy of the foregoing was mailed first class mail, postage prepaid, to:

Ivan Raiklin, Esq.
Board Member
America's Future, Inc.
1181 South Sumter Boulevard #412
North Port, Florida 34287

America's Future, Inc.
1181 South Sumter Boulevard #412
North Port, Florida 34287

America's Future, Inc.
SERVE: Registered Agents Inc
7901 4th St N Ste 300
St. Petersburg, Fl 33702

Ivan Raiklin, Esq.
5209 Ampthill Dr.
Alexandria, VA 22312

*/s/ Kevin T. Carroll*
Kevin T. Carroll, Esq.