IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TERRY ADIRIM, M.D. | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| U.S. CENTRAL INTELLIGENCE AGENCY, et al. | ) Case No.: 1:25-cv-00768-MSN-WBP |
| | ) |
| Defendants. | ) |

**DEFENDANTS IVAN RAIKLIN AND AMERICA'S FUTURE, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

COME NOW, the Defendants, Ivan Raiklin ("Raiklin") and America's Future, Inc. ("America's Future"), by Counsel, and in and for their Memorandum in Support of Motion to Dismiss state as follows:

## I. INTRODUCTION

This is a retaliatory action by the Plaintiff who was hired and terminated by the CIA. She makes conclusory allegations against the CIA, Director Ratcliff and Defendant Raiklin regarding the reasons for her termination. Plaintiff also challenges the opinions of Raiklin regarding the mandatory vaccination program instituted for service members. Raiklin opposed the program and believes, in his opinion, it led to unnecessary deaths. Plaintiff alleges Raiklin defamed her by offering his opinions, intentionally caused her to suffer emotional distress and wrongly interfered with her employment contract with the CIA. The case comes before the Court on a 12(b)(6) Motion to Dismiss.

## II. ALLEGATIONS IN COMPLAINT

Plaintiff recommended military service members receive COVID-19 vaccines. Compl. at ¶ 17. Raiklin opposed the imposition of mandatory vaccines and claims the COVID vaccines were

responsible for causing deaths. *Id.* at ¶ 23. Raiklin placed Plaintiff's name on a list of individuals he considers guilty of treason. *Id.* at ¶ 25. Raiklin allegedly stated on a podcast that Plaintiff should be convicted of "genocide and mass mutilation." *Id.* at ¶ 26. Raiklin stated he believes people on his list should be described "war-criminal scum." *Id.* at ¶ 27. On April 4, 2025 Plaintiff was terminated by the CIA. *Id.* at ¶ 35. Plaintiff speculates on "information and belief" that Raiklin asked Laura Loomer to ask President Trump to terminate plaintiff. *Id.* at ¶ 36.

### III. STANDARD OF REVIEW

The court, "in deciding a Rule 12(b)(6) motion, must take all well-pleaded material allegations of a complaint as admitted and review them in the light most favorable to the plaintiff." *De Sole v. United States*, 947 F.2d 1171 (4th Cir. 1991). "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F. 3d 250, 255 (4th Cir. 2009). Under the standard established by *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), compliance with Fed. R. Civ. P. 8(a)(2) requires more than "labels and conclusions," and a complaint must "state a claim to relief that is plausible on its face." *Id.* Facts that are merely consistent with a defendant's liability are insufficient to state a plausible claim. *Id.*

In order to survive a motion to dismiss, the "factual allegations must be enough to raise a right to relief above a speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d at 180 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). It is the court's obligation to "determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (quoting *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (internal quotation marks omitted).

In *Twombly*, the court rejected the prior rule, set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court stated that *Conley*'s "no set of facts" standard had "earned its retirement" and the "phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563. Instead, the *Twombly* court stated that Fed. R. Civ. P. 8 requires a greater showing – a complaint must present enough facts to state an entitlement to relief that is "plausible" on its face. *Id.* at 570.

## IV. LAW AND ARGUMENT

The allegations in the Complaint fail to state a plausible claim for relief against America's Future or Raiklin. All claims against America's Future should be dismissed because there are no allegations of any direct wrongdoing and no allegations to support vicarious liability. The defamation claims fail because the statements at issue are not actionable and the allegations in the Complaint fail to demonstrate actual malice. The intentional infliction of emotional distress claim should be dismissed because the conduct described is not "outrageous or intolerable" and there are no allegations to support the conclusory claim of "severe emotional distress". The conversion claim fails under Virginia law because Adirim's private Twitter/X communications are intangible property, not covered by the tort. Finally, Plaintiff's intentional interference with contract claim should be dismissed because the allegations fail to raise a right to relief above a speculative level. Therefore, Defendants' Motion to Dismiss should be granted and Adirim's claims against Raiklin and America's Future dismissed with prejudice.

### A. The Allegations fail to state a claim against America's Future.

There are no allegations of any direct wrongdoing by America's Future. The only allegations regarding America's Future are that they solicit money in this District for donations (¶ 15), Raiklin's "only known employment is as one of only five members of the board of directors of America's Future" (¶ 22), and in Counts IV, V, VI and VII, Plaintiff claims America's Future, as Raiklin's employer, has "constructive knowledge" of their board member's actions. These allegations do not support vicarious liability under Virginia law.

Virginia recognizes the rule that "generally corporations may be liable for compensatory damages for defamatory statements which are uttered by an agent while engaged in the scope of his employment and which grow out of an act connected with his employment." *Oberbroeckling v. Lyle*, 234 Va. 373, 1981-1982 (2987). "A master is not liable for every wrong which a servant may commit during the continuance of an employment." *E.H. Abernathy v. Romaczyk*, 202 Va. 328, 332 (1960). "Instead, under the traditional 'doctrine of respondeat superior, an employer is liable for the tortious act of his employee if the employee was performing his employer's business and acting within the scope of his employment.'" *Parker v. Carilion* Clinic, 296 Va. 319, 335 (2018). "In Virginia, the first principle of repondeat superior is that vicarious liability may be imposed on an employer when 'the service itself, in which the tortious act was done, was within the ordinary course of [the employer's] business,' i.e., when the employee committed the tort while 'performing a normal function' of his assigned job." *Id.* at 336 (internal citations omitted). Under the job-related-service principal no liability may be imposed if the tortious act did not arise out of the very service or task that the employee is being paid to perform. *Id.*

"An individual director is not an agent of the corporation but the directors are agents of the corporation when acting collectively on its behalf." *Watson v. Lederman*, 83 Va. Cir. 434, 435

(2011) (*citing Monacan Hills, Inc. v. Page*, 203 Va. 110 (1961); *Marcuse v. Broad-Grace* Arcade, 164 Va. 553 (1935)); *see also Estate of Alvarez v. Johns Hopkins Univ.*, 598 F. Supp. 3d 301, 323 (Md. D. 2022) (finding the doctor's role as a member of the Board of Trustees was the equivalent of that of a member of the Board of Directors of a corporation and nothing in the organization's governing documents authorized an individual member, as opposed to the Board itself, to act on behalf of the organization). There are no allegations that *the board* engaged in any relevant conduct. There are no allegations to suggest Raiklin, as a board member, is authorized to act on behalf of America's Future. There are no facts describing Raiklin's responsibilities as a board member or to explain how any of the conduct described in the complaint was performed as part the service or task he is engaged by America's Future to perform. Under Virginia law, America's Future simply is not vicariously liable for Raiklin's alleged conduct and the motion to dismiss as to America's Future should be granted.

### B. The Allegations in the Complaint fail to state claim of Defamation.

The elements of defamation under Virginia law are (1) publication of (2) an actionable statement with (3) the requisite intent. *See Jordan v. Kollman*, 269 Va. 569, 575 (2005). Adirim alleges Raiklin defamed her through a number of statements in online postings and podcast appearances in which he claims that Adirim is guilty of treason, genocide, war crimes, homicide, and mutilation. Compl. at ¶52. "The pleading standard for a defamation claim under Virginia law 'requires that the exact words spoken or written must be set out in the declaration in haec verba. Indeed, the pleading must. . . . purport to give the exact words.'" *McGuire* v. IBM Corp., 2011 U.S. Dist. LEXIS 100893, *15 (E.D. Va. 2011) (*citing Fuste v. Riverside Healthcare Ass'n Inc.*, 265 Va.127, 134 (2003)). The Complaint identifies three statements at issue (1) Adirim asserts Raiklin "staunchly opposed Secretary Austin's decision to vaccinate servicemembers" and claims

McGavin, Boyce, Bardot, Thorsen & Katz, PC
9990 Fairfax Boulevard, Suite 400 | Fairfax, VA 22030 | Tel: 703.385.1000 | Fax: 703.385.1555

the vaccinations "ended up killing lots of people" (Compl. at ¶ 23), (2) Raiklin included Adirim on his "Deep State Target List" of 350 people "he considers guilty of treason" (*Id.* at ¶ 25), and (3) on Rosanne Barr's podcast he stated that Adirim should be convicted of "genocide and mass mutilation" (*Id.* at ¶ 26). These statements are not actionable in defamation because they are expressions of opinion, are not of and concerning the plaintiff, and even if actionable the allegations in the Complaint fail to demonstrate actual malice.

i. The alleged statements are inactionable expressions of opinion.

"To be actionable, the statement must be both false and defamatory."[1] *Id.* "Statements of opinion are generally not actionable because such statements cannot be objectively characterized as true or false." *Jordan*, 269 Va. at 575. "Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion." Fuste, 265 Va. at 132-33. If a statement is not opinion, the plaintiff in a defamation action has the burden of proving that the statement is false. *Jordan*, 269 Va. at 576; *see also Williams v. Garraghty*, 249 Va. 224, 235 (1995). A defendant's statement of his or her subjective analysis of fully disclosed facts is generally not actionable. *See Schaecher v. Bouffault*, 290 Va. 83, 105 (2015).

The alleged statement that Adirim is guilty of "treason" is a broad description of a group Raiklin subjectively believes have acted against the interests of the United States. His characterization of disclosed conduct as "treason" is broadly applied to the people on Defendant's "Deep State Target List". These include people who were involved in a wide variety of supposed wrongdoings, including but not limited to the investigation of the January 6th attack on the capital,

---

[1] Even when statements involve the commission of a crime to support a defamation per se theory, a plaintiff must still prove the remaining elements of falsity, publication and intent. *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709 (2006) (evaluating whether statements related to plaintiff's profession were statements of opinion). When a statement supports an action for defamation per se the plaintiff is only relieved of her obligation to prove special damages.

the impeachment proceedings against President Trump, vaccine mandates, and more. Descriptions applied to such a broad group are necessarily are generalities, and do not implicate a specific crime to any single person on the list – it is simply "rhetorical hyperbole". "Language that is insulting, offensive, or otherwise inappropriate, but constitutes no more than 'rhetorical hyperbole'" is not defamatory. *See Schaecher*, 290 Va. at 92 (2015); *see also Marroquin v. Exxon Mobil Corp.*, 2009 U.S. LEXIS 44834, *23 (E.D. Va. 2009) (holding statements cited by plaintiff were "an opinion of the scope and magnitude of" admitted conduct and not actionable).

The same can be said for Raiklin's supposed accusation that Adirim is guilty of "war crimes." The statement in question, when viewed in context, is a label used to summarize the different members of the list—as the hosts of the podcast asked him to summarize his list, Raiklin offered "I just simply call them war criminal scum."[2] To take the statement out of context and construe it as a specific allegation of Adirim's guilt plainly twists the intended meaning meaning. Virginia requires an examination of context in evaluating whether a statement constitutes opinion to guard against such manipulation. *Snyder v. Phelps*, 580 F.3d 206, 219-20 (4th Cir. 2009) (stating courts must "assess how an objective, reasonable reader would understand the challenged statement by focusing on the plain language of the statement in the context and general tenor of its message").

---

[2] https://youtu.be/PHU25j6eyX4 beginning at 5:02 (last viewed June 30, 2025 at 1:20 p.m.). While, generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6), "a court may consider … documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

In the same podcast, Raiklin shared his view that Adirim should be convicted of "genocide and mass mutilation". Compl. ¶ 26. This is his opinion of the scope and magnitude of admitted conduct (the vaccine mandate). A reasonable person could "only regard [Raiklin's comments] as a relative statement of opinion ground upon the speaker's obvious bias." *Chaves v. Johnson*, 230 Va. 112, 119 (1985). "No reasonable [listener] would consider the [statements as] anything but the opinion of the [speaker] drawn from the circumstances related." *Chapin v. Knight-Ridder, Inc.*, 993 F.3d 1087, 1093 (4th Cir. 1994).

Furthermore, Adirim's allegation that Raiklin accused her of homicide misconstrues the statement. This allegation presumably is in reference to Raiklin's statement that the COVID-19 vaccine mandate for the armed forces "killed a lot of people." Compl. ¶ 23. This statement does not imply the commission of a crime. Additionally, Raiklin's comments did not even reference Adirim, instead focusing on the program itself. While a plaintiff does not have to be mentioned in a publication by name, the 'of or concerning' test requires the plaintiff to show "the publication was intended to refer to [her] and would be so understood by persons reading it who knew [her]." *Gazette, Inc. v. Harris*, 229 Va. 1, 37 (1985). There are no allegations to show the publication was intended to refer to Adirim as opposed to the program generally.

Raiklin's motion to dismiss should be granted because the statements at issue are rhetorical hyperbole, expressing Raiklin's subjective characterization of fully disclosed facts surrounding the vaccine mandate and are therefore not actionable.

  ii. <u>Even if Raiklin's statements are actionable, Plaintiff fails to allege actual malice.</u>

The requisite intent for defamation is determined by the status of the plaintiff. For a public figure to recover for a defamation claim, they must show that the allegedly defamatory statement was made with actual malice. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

"A finding of actual malice requires that the statement be made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* "The evidence must establish that the defendant had a high degree of awareness of probable falsity." *Shenandoah Publishing House, Inc. v. Gunter*, 245 Va. 320, 324 (1993) (citing *Harte-Hankes Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989)). "Actual malice demands subjective knowledge of likely falsity" *Blankenship v. NBC Universal, LLC*, 60 F. 4th 744, 768 (4th Cir. 2023).

New York Times actual malice is a subjective inquiry. *Bose Corp. v. Consumers Union*, 466 U.S. 486, n. 30 (1984) (noting plaintiff must prove the defendant realized his statements were false **or** that he subjectively entertained serious doubts); Blankenship, 60 F. 4th at 768 ("actual malice demands subjective knowledge of likely falsity"); *Fairfax v. N.Y. Pub. Radio*, 2023 U.S. Dist. LEXIS 81984 (E.D. Va. 2023) (noting actual malice is ultimately a subjective inquiry). In *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) the United States Supreme Court explained that "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing" and that "there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." The Court warned, however, that the defendant cannot *automatically* prevail based on self-reports of a belief that the statements are true and explained a defamation plaintiff *may* overcome such evidence by demonstrating the story (1) is fabricated, (2) is the product of the defendant's imagination, (3) is wholly based on an anonymous or unverified phone call, (4) is inherently improbable, or (5) where evidence demonstrates obvious reasons to doubt the veracity of the informant. Id. at 732. False reports from eyewitnesses of unambiguous events which speak for themselves may also demonstrate actual malice. *See Time, Inc. v. Tate*, 401 U.S. 279, 290 (1971). The Supreme Court of Virginia interpreted this authority and held that in cases where there

is no objective basis for a subjective belief, the plaintiff may be able to prove actual malice. *Gazette, Inc. v. Harris*, 229 Va. 1 (1985).

Here, Adirim fails to allege any facts to demonstrate there is no objective basis for Raiklin's belief that the vaccinations "ended up killing lots of people".[3] Compl. at ¶ 23. Raiklin's conclusions as to the degree and magnitude of the harm caused by the vaccination mandate are opinion, and because they are opinion, they are neither false nor without objective basis.[4] Therefore, Defendants' motion to dismiss Adirim's defamation claim should be dismissed.

### C. The Allegations in the Complaint fail to state an Intentional Infliction of Emotional Distress claim.

To adequately plead a claim of intentional infliction of emotional distress, Adirim must allege that: (1) "the wrongdoer's conduct is intentional or reckless"; (2) "the conduct is outrageous and intolerable"; (3) "the alleged wrongful conduct and emotional distress are causally connected"; and (4) "the distress is severe." *Russo v. White*, 241 Va. 23, 26 (1991).

The second element is "aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved." *Womack v. Eldridge*, 215 Va. 338, 342 (1974). The tort is "not favored" in the law. *Almy v. Grisham*, 273 Va. 68, 77 (2007). A plaintiff seeking recovery for IIED "must allege . . . all facts necessary to establish the cause of action" in order to withstand challenge at the pleadings stage. Id. "It is for the court to determine,

---

[3] Even where falsity is demonstrated, falsity alone is generally insufficient to prove actual malice. The inference of actual malice from falsity depends for its validity on the premise that the "eyewitness could not have perceived and understood anything but the truth." *See Mahoney v. Adirondack Pub. Co.*, 71 N.Y.2d 31, 40 (1987) (discussing *Time, Inc. v. Pape*, 401 U.S. 279, 285 (1971)). Here, there are no allegations to suggest Raiklin "could not have perceived or understood anything other than" that that vaccines *did not* kill lots of people.

[4] The other assertions (treason, war crimes, genocide, mass mutilation) flow from the underlying conclusion that the vaccine mandate ended up killing lots of people. These further characterizations relate to the "scope and magnitude" of the adverse consequences of the vaccine mandate.

in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Womack,* 215 Va. at 342.

The allegations fail to demonstrate outrageous and intolerable conduct. Outrageous and intolerable conduct is conduct "beyond all possible bounds of decency" or conduct that is "utterly intolerable in a civilized community." *Harris v. Kreutzer,* 271 Va. 188, 204 (2006) (internal quotations omitted) (finding a doctor verbally abusing a patient was not outrageous). Publishing opinions and characterizing a public figure's hotly debated policies with hyperbolic rhetoric is not "utterly intolerable in a civilized community" but instead reflects the freedoms afforded by the First Amendment for citizens to share opposing viewpoints on matters of public concern. Thus, for the same reasons the defamation claims fail, the conduct at issue is not "outrageous".

The complaint also fails to allege severe emotional distress. Although Adirim states Raiklin "publicly admitted he hoped" Adirim and others on his Deep State Target List would suffer severe emotional distress, there are no facts alleging Adirim has in fact suffered severe emotional distress. Compl. at ¶ 56. Adirim alleges that "by holding Plaintiff up to vile public abuse, thereby physically endangering her and her family, Defendant Raiklin caused Plaintiff severe emotional distress." *Id.* This is conclusory. There are no facts describing what emotional distress has been suffered and thus no facts from which to conclude the emotional distress is "severe". Virginia law requires more. *Orlando v. Smith,* 2024 U.S. Dist. LEXIS 210073, *36 (W.D. Va. 2024) (noting "a plaintiff must allege more precise facts indicating emotional distress" than merely alleging he suffered "emotional and mental distress, anguish, humiliation, fright, shock, pain, discomfort and anxiety"); *see also Harris v.* Krsutzer, 271 Va. 188, 204-205 (2006) (holding "difficulty sleeping, extreme loss of self-esteem and depression, requiring additional psychological treatment and

counseling" as well as "mortification, humiliation, shame, disgrace, and injury to reputation" failed to satisfy the element of severe emotional distress).

Adirim's intentional infliction of emotional distress claim should be dismissed because the conduct described is not outrageous and the allegations fail to demonstrate severe emotional distress.

### D. The Allegations in the Complaint fail to state a claim for Conversion.

The elements of conversion are "(i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession." *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001) (*citing Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75-76 (1956) (defining conversion as the wrongful assumption of authority "over another's goods, depriving him of their possession").

Conversion generally applies to tangible property and not intangible property. *See Williams v. Reynolds*, 2006 U.S. Dist. LEXIS 79178, *12 (W.D.Va. 2006). In *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994) the Virginia Supreme Court noted the tort of conversion may be recognized in cases where "intangible property rights arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond." Some district courts have found certain intangible business information can be subject to conversion. *In Re Outsidewlal Tire Litig.*, Case No. 1:09cv1217, 2010 U.S. Dist. LEXIS 73729 (E.D. Va. July 21, 2010) (finding blueprints were property that could be converted); *Combined Ins. Co. of Am. V. Wiest*, 578 F. Supp. 2d 822 (W.D. Va. 2008) (finding company's targeted recruitment list was property that could be converted). In *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 2011 U.S. Dist. LEXIS 113702 (E.D. Va. 2011), the Eastern District concluded that "if confronted with the issue, the Supreme Court of Virginia

would . . . permit a conversion action for . . . confidential business information about the manufacturing process and about a company's business plans."

In this case, Adirim claims Raiklin obtained copies of Plaintiff's private Twitter/X direct messages.[5] There are no allegations regarding the nature or content of the messages. There are no allegations that the messages include "confidential business information" or should otherwise be considered "property" for a conversion claim under Virginia law. *See In re Cap. One Fin. Corp.*, 2025 U.S. Dist. LEXIS 104577, *34 (E.D. Va. June 2, 2025) (holding tracking codes are not "property" for a conversion claim); *Am. Conservative Union v. Inst. For Legis. Analysis*, 2025 U.S. Dist. LEXIS 27448, *27 (E.D. Va. Feb. 13, 2025) (dismissing conversion claim premised on plaintiff's alleged trade secret and other non-public information because it was premised on intangible property). Therefore, Adirim's conversion claim based on intangible property should be dismissed.

### E. The Allegations in the Complaint fail to state a claim for Intentional Interference with Contractual Relations against Raiklin.

To state an intentional interference with contractual relations claim, a plaintiff must allege "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, *11 (2014). The allegations in the Complaint fail to state a plausible claim that Raiklin interfered with Adirim's contractual relations.

---

[5] It is not clear from the Complaint why these messages were "wrongfully obtained". If Twitter/X turned over the documents without authority to do so, Adirim's remedy would be against Twitter/X. If Twitter/X turned over the documents with authority to do so, the messages are not wrongfully obtained.

Adirim claims Raiklin orchestrated her termination by the CIA by asking Laura Loomer to ask President Trump to terminate Adirim, and President Trump obeyed. This theory is supported by speculative allegations offered "upon information and belief". Plaintiff assumes Raiklin asked Loomer to speak to President Trump about Adirim. Plaintiff assumes Loomer in fact spoke to President Trump about Adirim. Plaintiff assumes President Trump decided to terminate Adirim, and Plaintiff assumes the CIA terminated Adirim at President Trump's direction. Plausibility requires facts, not speculation. *See Ward v. Patient Access Network Found.*, Civil Action No. 1:24-cv-586, 2025 U.S. Dist. LEXIS 8230, *15 (E.D. Va. 2025) (granting motion to dismiss because "without supporting facts, Plaintiff's allegations rest on pure speculation").

"Although a plaintiff may initially plead parts of his case 'upon information and belief,' his allegations may not be conclusory." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023). When allegations "are far too speculative" and are "devoid of facts supporting the allegations that were pleaded upon information and belief dismissal is appropriate." *Id.* at 702. Here, Adirim's claims are far too speculative and the facts supporting the allegations pleaded upon information and belief -- that Raiklin and Loomer are "associates" and that Raiklin posted "for the record, I like Laura Loomer" on April 3, 2025 -- are insufficient to support the claims presented.

V. **CONCLUSION**

WHEREFORE, the foregoing considered, Defendants Ivan Raiklin, Esq. and America's Future, Inc., by counsel, move this Court to grant their motion to dismiss and dismiss this case with prejudice.

                                                **IVAN RAIKLIN, ESQ. AND**
                                                **AMERICA'S FUTURE, INC.**
                                                By Counsel

McGAVIN, BOYCE, BARDOT,
 THORSEN & KATZ, P.C.

/s/ *John D. McGavin*
John D. McGavin (VSB 21794)
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:   (703) 385-1000
Facsimile:   (703) 385-1555
jmcgavin@mbbtklaw.com
*Counsel for Defendants Ivan Raiklin, Esq.*
*And America's Future, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2025, I electronically filed the foregoing pleading using the CM/ECF System, which will send notifications of the filing to all counsel of record:

Kevin Thomas Carroll, Esq.
Fluet & Associates, PLLC
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22103
kcarroll@fluet.law
*Counsel for Plaintiff*

Carolyn M. Wesnouski, Esq.
DOJ-USAO
2100 Jamieson Avenue
Alexandria, VA 22315
Carolyn.wesnousky@usdoj.gov
*Counsel for U.S. Central Intelligence Agency*
*And John Ratcliffe*

/s/ *John D. McGavin*
John D. McGavin (VSB 21794)