**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |
|---|---|
| TERRY ADIRIM,<br><br>                Plaintiff,<br><br>        v.<br><br>U.S. CENTRAL INTELLIGENCE<br>AGENCY, *et al.*,<br><br>                Defendants. | No. 1:25-cv-768 (MSN/WBP) |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>FEDERAL DEFENDANTS' MOTION TO DISMISS</u>**

Plaintiff Terry Adirim, a former contract employee of the Central Intelligence Agency ("CIA"), brings suit against the CIA and its Director, John Ratcliffe (together, "Federal Defendants") for breach of contract, a due process violation, and violations of the Privacy Act. *See* Compl., Dkt. 1. Plaintiff has already tried and failed to obtain injunctive relief because she is unlikely to succeed on the merits of her claims. Federal Defendants now seek dismissal of Plaintiff's claims in an extension of their previous arguments as to why she was ineligible for injunctive relief. First, this Court lacks jurisdiction over Plaintiff's breach of contract claim because the Court of Federal Claims has exclusive jurisdiction over contract claims against the federal government seeking over $10,000. Second, Plaintiff has not alleged any plausible constitutional claim against the Federal Defendants in conjunction with her termination, especially given the express terms of her employment contract with the CIA, which allowed her termination "for any reason." And finally, Plaintiff has not alleged a plausible Privacy Act claim because she alleges neither any pecuniary harm flowing from the alleged disclosures nor that the disclosures were intentional or willful. Accordingly, all of Plaintiff's claims against the Federal Defendants merit dismissal.

## LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1).

A motion filed under Rule 12(b)(1) challenges a court's jurisdiction over the subject of the dispute and questions the "very power" of the court to hear the case. *United States v. Beasley*, 495 F.3d 142, 147 (4th Cir. 2007). Federal courts are courts of limited jurisdiction and are empowered to act on claims against the United States only in those specific instances in which the Constitution or a statute unequivocally waives the federal government's sovereign immunity from suit. *Lane v. Pena*, 518 U.S. 187, 192 (1996). The plaintiff bears the burden to demonstrate the existence of

subject-matter jurisdiction. *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002). When a defendant challenges the factual basis for subject-matter jurisdiction, the court is to regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the motion into one for summary judgment. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also Adams v. Bain*, 697 F.2d 1213, 1219-20 (4th Cir. 1982) (noting that an evidentiary hearing may be necessary when the "jurisdictional facts are intertwined with the facts central to the merits of the dispute").

**B. Federal Rule of Civil Procedure 12(b)(6).**

A motion pursuant to Rule 12(b)(6) serves to test the legal sufficiency of the plaintiff's complaint in relation to the factual averments she puts forward. Although a court must accept as true all well-pled allegations in adjudicating such a motion, it need not credit allegations that are merely conclusory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that courts adjudicating a Rule 12(b)(6) motion must determine whether the complaint alleges facts that state a plausible claim for relief)).

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Plaintiff's Complaint.**

As alleged, Plaintiff Terry Adirim is a medical doctor who previously served as the Acting Assistant Secretary of Defense for Health Affairs at the Department of Defense ("DoD"). Compl. ¶ 1, Dkt. 1. In that role, Plaintiff advised the Secretary of Defense that members of the armed services should receive COVID vaccines. *Id.* ¶ 2. On December 16, 2024, Plaintiff began working for the CIA as the Director of the agency's Center for Global Health Services pursuant to a written

contract. *Id.* ¶ 19. The terms of Plaintiff's employment contract with the CIA permitted "either party" to terminate the contract "[u]pon thirty (30) days notice . . . ***for any reason***." Compl. Ex. E, Dkt. 1-5 at 4 (emphasis added)[1]; Compl. ¶ 46. On April 4, 2025, the CIA invoked this clause in Plaintiff's employment contract and told her that her employment at the CIA would be terminated in thirty days, effective May 3, 2025. Compl. ¶¶ 6, 35, 41.

Plaintiff attributes her termination to defamatory statements made by a non-governmental actor, Defendant Ivan Raiklin, whom Plaintiff believes conspired with an associate, Laura Loomer, to ask President Trump to order the CIA to terminate her employment. *Id.* ¶¶ 2–5, 21–39. Plaintiff's complaint maintains that Mr. Raiklin and Ms. Loomer are "close associates" because they both were interviewed (in separate appearances) at the October 13–14, 2023 ReAwaken America Tour event in Miami, Florida. *Id.* ¶ 24.[2] Sometime in July 2024, Mr. Raiklin compiled and/or published a list of individuals "he considers guilty of treason" that included Plaintiff. *Id.* ¶ 25. On October 3, 2024, Mr. Raiklin appeared as a guest on a podcast, where he discussed Plaintiff, stated that she would be "criminally liable and . . . face consequences for genocide and for

---

[1] At the motion to dismiss stage, the Court can consider "documents that are explicitly incorporated into the complaint by reference," "those attached to the complaint as exhibits" and "document[s] submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Comm. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Accordingly, Federal Defendants cite to the various sources Plaintiff herself cited to in her Complaint as support for her allegations, which include various newspaper articles, tweets and a copy of Plaintiff's employment contract, some of which (but not all), are attached as exhibits to the Complaint.

[2] In the video to which Plaintiff cites, Ms. Loomer and Mr. Raiklin do not appear on screen together, neither mentions the other in their interview, and their separate interviews are screened twenty minutes apart. *See* Compl. ¶ 24 (citing to Clay Clark's ReAwaken America Tour ("Tour Video") (Oct. 21, 2023), available at https://subsplash.com/u/-RT4DVC/media/embed/d/fsqfnyv?logo); *see also* Tour Video at 14:35–22:30 (Ms. Loomer's interview), 41:09–48:23 (Mr. Raiklin's interview).

mutilation," and referred broadly to individuals within the so-called "deep state" as "war-criminal scum."[3]  *See id.* ¶¶ 26–27.

On December 22, 2024, Mr. Raiklin re-tweeted another individual's post about Plaintiff having a "SES position in our USG" to the President and other individuals, with the message "[i]s the architect of the illegal DOD CCP-19 Jab Genocide Mandate Terry Adirim burrowing in at the CIA?"  *Id.* ¶ 29; Dkt. 1-1.  Based on Mr. Raiklin's tweet,[4] Plaintiff alleges that "someone at the Agency illegally leaked to Defendant Raiklin the non-public, private information that Plaintiff now served at CIA."  Compl. ¶ 3; *see also id.* ¶ 49.

On April 2, 2025, Laura Loomer visited President Trump at the White House, where, according to the New York Times, she "laid out a list of people she believed were disloyal to the President."  Dkt. 9-1 at 41[5]; *see* Compl. ¶ 32.  On April 3, 2025, the New York Times reported that President Trump fired six officials from the National Security Council, including Michael Waltz, Brian Walsh, Maggie Dougherty, and Thomas Boodry.  Dkt. 9-1 at 41; Compl. ¶ 32.  No mention

---

[3] The quotations Federal Defendants use here are transcribed directly from Mr. Raiklin's statements on Roseanne Barr's podcast, the full video of which is available at https://www.youtube.com/watch?v=PHU25j6eyX4 (last visited July 24, 2025) and referenced in Plaintiff's Complaint at ¶¶ 26–27.

[4] The original tweet that Mr. Raiklin re-tweeted—shown in Exhibit A to Plaintiff's Complaint—itself references Plaintiff's own LinkedIn post, dated December 2024, that states "I'm happy to share that I'm starting a new position as Senior Executive at US Federal Government!"  *See* Dkt. 1-1 at 2 (including link to Plaintiff's LinkedIn post at https://t.co/ZCcfes8hRv).

[5] Where Plaintiff cited in her Complaint to a news article or tweet that she did *not* attach as an exhibit, Federal Defendants provided the Court with a copy in opposing Plaintiff's motion for a temporary restraining order.  *See* Dkts. 9-1 at 27 to 9-2 at 6; Dkt. 9-2 at 22.  Federal Defendants cite to those provided articles for the Court's ease of reference.  Here, Federal Defendants quote from the language of the article Plaintiff cited to in her Complaint in support of her allegation that "a series of senior officials including National Security Agency director General Timothy Haugh were terminated from their positions."  Compl. ¶ 32 n.12 (citing M. Haberman, *Trump Fires 6 N.S.C. Officials After Oval Office Meeting With Laura Loomer*, New York Times (Apr. 3, 2025), available at https://www.nytimes.com/2025/04/03/us/politics/trump-meeting-laura-loomer.html).

was made of Plaintiff or any other CIA officials.   That same day, Mr. Raiklin tweeted, in response to reports of Ms. Loomer's White House visit, "[f]or the record I respect Laura Loomer and her work."  Compl. ¶ 32; Dkt. 1-2.  On April 4, 2025, Ms. Loomer tweeted that she referred the NSA Director General Timothy Haugh and "his deputy, Wendy Noble" to President Trump for firing.  Compl. ¶ 33; Dkt. 1-3.  Ms. Loomer did not mention Plaintiff in her tweet or that she had referred anyone at the CIA to President Trump for firing.  Dkt. 1-3.

On April 5, 2025, CNN published an online article that quoted President Trump as stating that Ms. Loomer "recommended some people for jobs" and that "sometimes I listen to those recommendations, like I do with everybody, I listen to everybody, and then I make a decision." Dkt. 9-2 at 5–6; *see* Compl. ¶ 34.[6]  Plaintiff alleges that "on April 4, 2025, President Trump stated that he spoke with Loomer on April 3 and listened to her 'hiring recommendations,'" Compl. ¶ 34, but the article reports a more nuanced view—i.e., that the President "acknowledged meeting with Loomer but downplayed her role in the dismissal of National Security Council staff."  Dkt. 9-2 at 5–6.  Regardless, nothing in these media statements regarding Ms. Loomer's interaction with the President mentioned Plaintiff in any way.

On April 8, 2025, Breitbart News published an article online about Plaintiff, titled "Exclusive: Senior CIA Official Who Facilitated Biden's Military COVID-19 Vaccine Mandate Fired."  Dkt. 9-1 at 27–30; *see* Compl. ¶ 37 (referencing Breitbart News article).   Regarding Plaintiff's termination, the article stated that:

> Terry Adirim, a senior Central Intelligence Agency official and former senior defense official who played a pivotal and potentially illegal role in the Biden Administration's military vaccine mandate, was recently fired from the agency, a source has exclusively revealed to Breitbart News.

---

[6] Citing to A. Treene, *White House advisers have kept Laura Loomer at bay for months. Then, Trump invited her in*, CNN (Apr. 5, 2025), available at https://www.cnn.com/2025/04/05/politics/laura-loomer-donald-trump-meeting (last visited July 24, 2025).

Dkt. 9-1 at 27. The article went on to state that Plaintiff's "firing was related to her role in forcing service members to choose between taking a vaccine that was under Emergency Use Authorization or being kicked out, according to the source." *Id.* The article then referenced a September 2021 memorandum issued by Plaintiff during her tenure at the DoD about vaccinating service members and noted that "[h]er memo was considered legally dubious even inside the Pentagon, as Breitbart News reported in September 2022"—referring to a previous Breitbart article mentioning Plaintiff. *Id.* at 28. The article went on to analyze the potential illegality of Plaintiff's September 2021 memorandum about COVID vaccinations for service members. *Id.* at 27–29. Breitbart's source is not identified in the article in any way, nor is the phrase "potentially illegal role" directly attributed to the source. *Id.*

Based solely on this article, Plaintiff alleges that "[s]omeone at Defendant CIA leaked to Breitbart News, or a source of Breitbart, that Plaintiff was hired by the Agency in December and terminated in April"—and that "[e]ither Defendant CIA or Breitbart's source additionally implied that the reason for Plaintiff's termination was her 'potentially illegal role in the Biden Administration's military vaccine mandate.'" Compl. ¶ 49; *see also* ¶ 5 ("Someone at CIA again illegally leaked non-public, private information about Plaintiff, this time that she was to be terminated from the Agency."). Plaintiff alleges that the "improper disclosures" of her "hiring, firing, and the alleged reason for her termination caused her great harm," namely that she was "condemned online by Defendant Raiklin" and "held up to vile public abuse." *Id.*

On April 8, 2025—the same day the article was published—Mr. Raiklin retweeted a post of the article, along with the message "Deep State Target List member." Dkt. 1-4; Compl. ¶ 37. That same day, Donald Trump Jr., the son of President Trump, tweeted a screenshot of the Breitbart News article's headline along with the message "Bye bye" and a hand-waving emoji. Dkt. 1-6.

The screenshot included a picture of Plaintiff and the headline "Exclusive: Senior CIA Official Who Facilitated Biden's Military COVID-19 Vaccine Mandate Fired."[7]  *Id.*  Donald Trump Jr.'s tweet did not include the phrase "potentially illegal"—which appeared only in the full text of the Breitbart News article.  *Id.*

Based on this series of allegations and what she terms "[c]ommon sense," Plaintiff surmises that "Defendant Raiklin asked Loomer to request that President Trump terminate Plaintiff," Compl. ¶ 5, and that "[r]ather than stand up for their officer against this thug, and other internet trolls, CIA and its director connived in firing Plaintiff and leaking private information about her," *id.* ¶ 7.

**B.  Procedural History.**

On May 2, 2025, Plaintiff filed her Complaint in the instant case, naming as Defendants the CIA, the CIA Director John Ratcliffe, Ivan Raiklin, and America's Future Inc.  *See* Dkt 1.  As against the Federal Defendants, Plaintiff asserts three claims: (1) a violation of the Fifth Amendment's Due Process Clause for terminating her employment and allegedly telling Breitbart News that she was fired due to "'potentially illegal' activity"; (2) breach of contract for terminating her employment contract based on Mr. Raiklin's allegedly defamatory statements and tortious interference; and (3) violations of the Privacy Act for allegedly disclosing the fact of hiring and firing to Breitbart News and/or its source, and implying her termination was due to her "potentially illegal role" in the military vaccine mandate.  Compl. ¶¶ 42–49.  Plaintiff also asserts tort claims against Mr. Raiklin and/or America's Future for defamation, intentional infliction of emotional distress, conversion, and tortious interference with contractual relations.  *Id.* ¶¶ 50–64.  As relief,

---

[7] Donald Trump Jr.'s tweet does not appear to link to the actual article—i.e., it displays only a picture of the article's headline.  *See* Dkt. 9-2 at 22, available at https://x.com/donaldjtrumpjr/ status/1909640009218392488?s=51 (last visited July 24, 2025).

Plaintiff seeks "in excess of" $75,000 in compensatory damages, injunctive relief, statutory damages, punitive damages, and attorneys' fees. *Id.* at 15.

The same day Plaintiff filed her Complaint, she moved the Court for injunctive relief against the Federal Defendants, seeking the extraordinary remedy of a temporary restraining order ("TRO") to prevent her termination that was set to occur on May 3, 2025. Dkt. 3. On May 3, 2025, the Court ordered an administrative stay in the case and ordered the Federal Defendants to "refrain from terminating Plaintiff or otherwise altering her employment status" until further order of the Court. Dkt. 6. On May 5, 2025, the Court held a hearing on Plaintiff's motion for a TRO and heard oral argument. At the end of the hearing, the Court ordered the parties to submit further briefing on the Plaintiff's motion and scheduled another hearing for Friday, May 9, 2025. Dkt. 8.

On May 9, 2025, the parties appeared before the Court after having submitted additional briefs. *See* Dkts. 9, 12–13. After hearing oral argument, the Court converted Plaintiff's motion for a TRO into one for a preliminary injunction and denied it, holding that Plaintiff "had failed to make a clear showing that she is likely to succeed on the merits of her stigma-plus due process claim." Dkt. 14. The Court then lifted the administrative stay previously entered by the Court. *Id.* In the meantime, Plaintiff served the Federal Defendants with a copy of her Complaint and Summons via certified mail post-marked on May 5, 2025.

## ARGUMENT

### I.   This Court Lacks Jurisdiction Over Plaintiff's Breach of Contract Claim (Count 2).

As the Federal Defendants explained in opposing Plaintiff's motion for injunctive relief, this Court lacks jurisdiction over Plaintiff's breach of contract claim. *See* Dkt. 9 at 10–11. The Tucker Act waives sovereign immunity for non-tort damage claims against the United States founded, *inter alia*, on "any express or implied contract with the United States." 28 U.S.C. §

1491(a)(1).  While a district court may exercise jurisdiction over claims not exceeding $10,000, *see* 28 U.S.C. §1346(a)(2) (known as "the Little Tucker Act"), binding authority has made clear that the Court of Federal Claims has ***exclusive*** jurisdiction for claims above this dollar threshold, *see* 28 U.S.C. § 1491 (known as "the Big Tucker Act"); *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996); *see also Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1304 (Fed. Cir. 2008); *Scarlett v. Nat'l Science Foundation*, 2024 WL 3732447, at *3 (E.D. Va. Aug. 6, 2024) (Nachmanoff, J.).

As Plaintiff's claim is for at *least* $75,000,[8] exclusive jurisdiction over her breach of contract claim lies in the Court of Federal Claims under the Big Tucker Act.  *Jan's Helicopter*, 525 F.3d at 1304; *E. Enters. v. Apfel,* 524 U.S. 498, 520 (1998) ("[T]he Court of Federal Claims has exclusive jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000."); *Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 578 (4th Cir. 2017) (recognizing that jurisdiction over claims in excess of $10,000 lies exclusively with the Court of Federal Claims).

Accordingly, the Court should dismiss Plaintiff's claim without prejudice, to allow Plaintiff the decision of whether to file her claim in the Court of Federal Claims *or* waive her right to damages above $10,000 and re-file in this Court.  *See Garner v. U.S. Dep't of Homeland Sec.*, 2022 WL 126691, at *2 (E.D.N.C. Jan. 12, 2022) (dismissing plaintiff's breach of contract claim to allow him to refile in Court of Federal Claims or in district court "if he waives all damages above $10,000"); *Goins v. Speer*, 2017 WL 3493607, at *6 (E.D.N.C. Aug. 14, 2017) (same).

---

[8] While Plaintiff seeks over $75,000 in compensatory damages in her Complaint, it is not entirely clear what amount of that, if any, is attributed to her breach of contract claim.  Assuming however, that Plaintiff seeks loss of income and full retirement benefits (which she suggests that she will, *see* Dkt. 4, Pl.'s Mot. at ¶ 22), it is extremely unlikely that Plaintiff's claim is *less than* $10,000.

It is also worth noting that Plaintiff fails to state a claim for breach of contract. Plaintiff concedes, as she must, that the termination provision of her employment contract allows either party to terminate the contract "for any reason" and does not require Plaintiff or the Agency to provide any basis. *See* Compl. Ex. E, Dkt. 1-5 at 4; Compl. ¶ 46. In accordance with the contract, Plaintiff acknowledges that no reason was articulated for her termination. *See id.* ¶ 35. Through only speculation, Plaintiff seeks to attribute her termination to defamatory statements made by a non-governmental actor, Defendant Ivan Raiklin, whom Plaintiff believes conspired with an associate, Laura Loomer, to ask President Trump to order the CIA to terminate her employment. *Id.* ¶¶ 2–5, 21–39. But such allegations are insufficient to survive a motion to dismiss—"[f]actual allegations must be enough to raise a right to relief above the speculative level"; the plaintiff must allege facts that are sufficient "to state a claim to relief that is *plausible on its face*." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (emphasis added). And indeed, Plaintiff's allegations in this regard are also illogical—there would be no reason for the CIA to rely on defamatory statements about Plaintiff in their decision to terminate her, as her contract meant she was an at-will employee who could be fired "for any reason." Plaintiff's attempts to challenge her legal termination based on speculative allegations as to the agency's motivations require reading into the employment contract provisions and protections that are simply not there. Accordingly, even if this Court had jurisdiction over Plaintiff's breach of contract claim, which it does not, Plaintiff fails to state a claim.

## II.    Plaintiff Has No Cognizable Constitutional Due Process Claim (Count 1).

Plaintiff has already conceded that "she maintains no cognizable property interest in her contract position" with CIA and that she was fired pursuant to the "CIA's internal regulations" and her employment contract's express term that she could be fired "for any reason." *See* Dkt. 4 at 5.

Despite this, Plaintiff still seeks to turn a run-of-the-mill contract dispute into a constitutional claim. She cannot do so.

While advocating for a temporary restraining order, Plaintiff advanced at least three theories for why her termination violated the Fifth Amendment's due process clause. As Federal Defendants explained at length to the Court in its response to that motion, none of these theories provide a cognizable basis for Plaintiff to advance a constitutional claim. Moreover, Plaintiff has not even properly raised these theories in her Complaint. As such, and as explained in greater detail below, Plaintiff's constitutional claim merits dismissal for failure to state a claim.

### A. Plaintiff Has Not Alleged a Plausible Constitutional Claim Under the *Accardi* Doctrine.

First, Plaintiff has argued that "she maintains a cognizable interest in the Agency following its own rules regarding termination." Dkt. 4 at 5. What Plaintiff refers to—albeit obliquely—is the *Accardi* doctrine, named after the seminal Supreme Court case on the issue. Dkt. 12 at 6; *see United States ex rel. Accardi v. Shuaughnessy*, 347 U.S. 260, 504 (1954). "The *Accardi* doctrine refers to the long-settled principle that government agencies are bound to follow their own rules and regulations." *Maryland v. Exxon Mobil Corp.*, 569 F. Supp. 3d 273, 283 (D. Md. 2021); *see also Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) (*Accardi* doctrine "provides that when an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid"). As the Fourth Circuit has recognized, the doctrine's purpose is "prevent the arbitrariness which is inherently characteristic of an agency's violation of its own procedures." *United States v. Heffner*, 420 F.3d 809, 812 (4th Cir. 1969).

As such, while the *Accardi* doctrine generally references "due process," it is *not* a doctrine of *constitutional law* that invokes the Fifth Amendment. *See Bourdon v. DHS*, 983 F.3d 473, 483 (11th Cir. 2020). To the contrary, the Supreme Court has stated that *Accardi* "enunciate[d]

principles of federal administrative law, other than of constitutional law binding on the States." *Bd. of Curators v. Horowitz*, 435 U.S. 78, 92 n.8 (1978); *see also Whims v. Harbaugh*, 139 F.3d 897 (Table) n.2 (4th Cir. 1998) (same); *CGB v. Wolf*, 464 F. Supp. 3d 174, 226 n.41 (D.D.C. 2020) (same). Accordingly, the *Accardi* doctrine has traditionally been applied in instances involving "an agency's failure to afford an individual *procedural* safeguards required under its own regulations." *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999) (emphasis added). Courts have held that claims under the *Accardi* doctrine provide relief where there are discrete failures by an agency to abide by its own rules or regulations that aim to protect procedural protections. *See id.* (collecting cases). As the Supreme Court has clarified, the *Accardi* doctrine is not "'intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion' or unless 'an agency required by rule to exercise independent discretion has failed to do so.'" *Morgan*, 193 F.3d at 267 (quoting *Am. Farm Lines v. Black Ball Freight Serv.,* 397 U.S. 532, 538–39 (1970)).

As an initial matter, Plaintiff has not properly raised an *Accardi* claim in her Complaint. Nowhere does Plaintiff allege that the CIA failed to follow its own regulations in firing her, let alone explicitly set forth a claim under the *Accardi* doctrine. She cannot fashion one now by attempting to amend her Complaint through her briefing. *See Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also Spassova-Nikolova v. Rollins*, 2025 WL 817865, at *3 n.8 (E.D. Va. Mar. 12, 2025).

And even *if* Plaintiff had pled such a claim, nowhere—whether in her Complaint or her prior briefing—does Plaintiff describe how the CIA failed to follow its own rules in terminating her or what procedural safeguards she did not receive that were required by the CIA's own

regulations.  To the contrary, Plaintiff concedes that Plaintiff was fired pursuant to "CIA's internal regulations and the Agency's contract with Plaintiff"— which, of course, independent of any such regulations, allowed her termination "for any reason."  Dkt. 4 at 5; Compl. ¶ 35.  Put simply, other than reflexively stating that the CIA must follow its own regulations, Plaintiff's complaint does not identify a single regulatory provision that the agency purportedly violated through its termination of her contract employment.  As such, even to the extent that a CIA employee might theoretically be able to present a cognizable *constitutional* claim under the *Accardi* doctrine (which they cannot), Plaintiff has not plausibly alleged any such claim in her Complaint.

### B. Plaintiff Has Not Plead a Plausible Constitutional Claim Due to her Termination Based on Alleged Defamation by a Third Party.

Second, Plaintiff has also previously advanced the idea it is unconstitutional for an employer to rely on a third-party's false and defamatory statements in firing someone.[9]  Here too, Plaintiff has not properly raised this claim in her Complaint and cannot do so now through briefing. *See Mylan Labs.*, 770 F. Supp. at 1068.  Moreover, undersigned counsel is aware of no case law suggesting that firing an employee because of a third-party's defamation—even knowingly[10]—is unlawful, *let alone* unconstitutional.  At most, this is a repeat of Plaintiff's breach of contract claim, which as Federal Defendants explain above, is outside of this Court's jurisdiction.  *See supra* Part I.  To accept Plaintiff's theory allows *any* public employee to invoke the Due Process Clause any time they disagree with the rationale for their termination—no matter what it is.  Simply put, there is nothing to suggest that the due process clause is implicated simply because an employee is

---

[9] Plaintiff appears to have abandoned this theory after not responding to Federal Defendants' arguments on the issue advanced in their opposition brief to her TRO motion.  *See* Dkt. 9 at 14–15; *see generally* Dkt. 12.  Federal Defendants include it here out of an abundance of caution.

[10] Notably, Plaintiff does not allege in her Complaint that the CIA was aware that Mr. Raiklin's alleged defamation was false—or that the CIA knew that Plaintiff's role in the vaccine mandate was *not* "potentially illegal."

terminated for false, wrong, or unfair (but not discriminatory) reasons.[11]

### C.  Plaintiff Has Not Plausibly Alleged a "Stigma-Plus" Claim.

Plaintiff's third and final theory is that her termination violated the Due Process Clause because the CIA defamed her in the process by leaking to Breitbart News that she was fired for allegedly illegal activity in connection with her role at the DoD with respect to COVID-19 vaccinations for servicemembers.  Compl. ¶ 43.

The Fourth Circuit recognizes a due process claim based on the deprivation of a liberty interest where a public employer makes "stigmatizing remarks" "in the course of a discharge or significant demotion."  *Ridpath v. Bd. of Governors*, 447 F.3d 292, 309 (4th Cir. 2006) (quotation omitted).  The Fourth Circuit describes this type of due process claim as arising from "two distinct rights protected by the [Due Process Clause]," namely the right "to engage in any of the common occupations of life," and the right to due process "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him."  *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007).  Accordingly, a constitutional "'liberty interest is implicated by public announcement of reasons for an employee's discharge.'"  *Id.* at 645–46 (quoting *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990)).  This type of claim—referred to as "stigma plus"—"'prevent[s] a public employer from disseminating false reasons for the employee's discharge without providing the employee notice and [an] opportunity to be heard in order to clear [her] name.'"  *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 356 (D. Md. 2011) (quoting *Miller v. Hamm*, 2011 WL 9185, at *8 (D. Md. Jan. 3, 2011)).

---

[11] And as noted *supra*, Plaintiff's claim falls apart under even modest scrutiny – there would be no reason for the CIA to rely on defamatory statements about Plaintiff in their decision to terminate her, as her contract meant she was an at-will employee who could be fired "for any reason."

To state a stigma plus claim, Plaintiff "must allege that the charges against [her]: (1) placed a stigma on [her] reputation; (2) were made public by the employer; (3) were made in conjunction with [her] termination or demotion; and (4) were false." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007). Importantly, "[s]tigma-plus claims are generally premised on an ***overt, direct government statement*** that the plaintiff has a serious character flaw." *Moschetti v. Office of the Inspector General*, 2022 WL 3329926, at *6 (E.D. Va. Aug. 11, 2022) (emphasis added). This is illustrated by the cases where the Fourth Circuit has provided "concrete examples of the types of public statements" that can create a stigma-plus claim. *Ridpath*, 447 F.3d at 447 F.3d 292; *see Boston v. Webb,* 783 F.2d 1163, 1165–66 (4th Cir. 1986) (holding plaintiff had a viable stigma-plus claim where City Manager issued a press release issued that plaintiff, a city police officer, was discharged after failing to disprove allegation of receiving a bribe); *Cox v. N. Va. Transp. Comm'n,* 551 F.2d 555, 557–58 (4th Cir. 1976) (same where state board commissioners made public statements to newspapers attributing plaintiff's discharge to investigation of financial irregularities); *McNeill v. Butz,* 480 F.2d 314, 319–20 (4th Cir. 1973) (same where state department of agriculture charged government employees with violating various regulations, such as fraudulently obtaining federal payments for farm operators, in connection with discharges).

Here, Plaintiff asserts that Donald Trump Jr.'s tweet of the April 8, 2025 Breitbart News article headline constituted a public government statement endorsing the fact that Plaintiff was fired for potentially illegal activity. The tweet—which states "Bye bye" followed by a hand waving emoji—includes a screenshot with a picture of Plaintiff and the headline "Exclusive: Senior CIA Official Who Facilitated Biden's Military COVID-19 Vaccine Mandate Fired." Dkt. 1-6. Under *any* standard, this is not a direct, clear statement from Plaintiff's employer—the CIA— about why Plaintiff was terminated. Firstly, the tweet does not actually link to the Breitbart News

article, meaning it does not contain the alleged defamation at issue, let alone state why she was fired. The words "potentially illegal" do not appear in the Breitbart News headline *or* Donald Trump Jr.'s tweet. *See* Dkt. 1-6. Furthermore, Plaintiff does not allege in her Complaint that Donald Trump Jr. is employed by the CIA, employed by another other branch or agency of the federal government, or somehow was authorized to represent the views of either. As such, Donald Trump Jr.'s tweet of "[b]ye bye" followed by a hand-waving emoji is not an overt statement directly attributable to the CIA affirming that Plaintiff was terminated due to potentially illegal activity.

In any event, the language of the underlying Breitbart News article is itself ambiguous and not fairly traceable to the CIA. The article states that "Terry Adirim, a senior CIA official and former senior defense official who played a pivotal and potentially illegal role in the Biden Administration's military vaccine mandate, was recently fired from the agency, a source has exclusively revealed to Breitbart News." Dkt. 9-1 at 27. Breitbart News does not identify its source or indicate that CIA confirmed and/or endorsed its news. Moreover, the structure of the sentence, which uses the phrase "potentially illegal role" as part of how it identifies who Plaintiff is, establishes that it is *Breitbart News's* opinion that Plaintiff engaged in potentially illegal activity—not the source's. This impression is further underscored by reading the remainder of the article, which in fact, is largely Breitbart News's ***own analysis*** of whether Plaintiff's activity with respect to the DoD vaccine mandate was legal. *See* Dkt. 9-1 at 27–29. In short, neither Donald Trump Jr.'s tweet, nor the Breitbart News article, state that the CIA fired Plaintiff ***because of*** potentially illegal activity.

Accordingly, Plaintiff has not plausibly alleged that her employer made a public statement, in conjunction with her termination, that she has a serious defect of character. As such, her

constitutional claim merits dismissal.

### III.    Plaintiff Has Not Alleged a Plausible Privacy Act Claim (Count 3).

In her final claim against Federal Defendants, Plaintiff alleges that they violated 5 U.S.C. § 552a(b) of the Privacy Act by disclosing three non-public facts about Plaintiff: (1) that she was hired by the CIA in December 2024; (2) that she was terminated by the CIA in April 2025; and (3) that the reason for her termination was her "potentially illegal role in the Biden Administration's military vaccine mandate."  Compl. ¶ 49.

In general, the Privacy Act "prohibits federal agencies from disclosing their records to any person or to another agency" and "provides a private cause of action for an individual who has suffered an adverse effect as the result of a disclosure."  *Fattahi v. Bureau of Alcohol, Tobacco & Firearms*, 186 F. Supp. 2d 656, 659 (E.D. Va. 2002).  The elements of a Privacy Act violation claim are:

> (1) that the information allegedly disclosed is covered by the [Privacy] Act as a "record" contained in a "system of records";
> (2) that the agency disclosed the information;
> (3) that the disclosure was without plaintiff's consent and did not fit within one of the enumerated exceptions to the anti-disclosure provision;
> (4) that the disclosure was willful or intentional; and
> (5) that the disclosure had an adverse effect on the plaintiff.

*Id.*; *see also Chesser v. Fed. Bureau of Investigation*,  2017 WL 663348, at *4 (E.D. Va. Feb. 17, 2017) (setting forth elements of a cause of action under the Privacy Act).

Plaintiff fails to state a plausible Privacy Act claim for at least two independent reasons.

**First,** the Privacy Act "only waives sovereign immunity if the plaintiff can prove 'actual damages'"—which are "limited to pecuniary harm and do[] not include purely mental or emotional harms."  *Poursaied v. EEOC*, 2015 WL 7112008, at *3 (M.D.N.C. Nov. 13, 2015).  "Thus, in order to state a claim under the Privacy Act, a plaintiff must claim some pecuniary loss."  *Id.*; *see also*

*F.A.A. v. Cooper*, 566 U.S. 284, 299 (2012) ("The Privacy Act does not unequivocally authorize an award of damages for mental or emotional distress. Accordingly, the Act does not waive the Federal Government's sovereign immunity from liability for such harms."). Plaintiff does not allege in her Complaint that the CIA's alleged disclosures caused her any pecuniary harm. To the contrary, she alleges only that the disclosures "caused her grave harm," which included "being condemned online," "held up to vile public abuse," and being "physically endangered" along with her family. Compl. ¶ 49. Each of these are the exact type of "mental or emotional distress" damages that the Supreme Court has held unavailable under the Privacy Act. *Cooper*, 568 U.S. at 299.[12] Thus, because Plaintiff has not alleged any pecuniary harm flowing from the CIA's alleged improper disclosures, she cannot sustain a claim under the Privacy Act. *See Poursaied*, 2015 WL 7112008, at *3 (dismissing Privacy Act claim where plaintiff "claim[ed] that the EEOC's conduct made her 'upset' and caused her 'serious emotional injury,' but she d[id] not claim to have suffered any pecuniary harm").

Second, "[t]o recover damages for violations of the Act, a plaintiff must allege facts showing that the government agency 'acted in a manner which was intentional or willful.'" *Middlebrooks v. Mabus*, 2011 WL 4478686, at *8 (E.D. Va. Sept. 23, 2011) (quoting 5 U.S.C. § 552a(g)(4)). This standard "is great—more than gross negligence." *Reinbold v. Evers*, 187 F.3d

---

[12] This is particularly the case with the CIA's third alleged disclosure—that the CIA hired her. At the outset, there is a significant question of whether any of the information Plaintiff alleges is subject to the Privacy Act, particularly Plaintiff's *hiring* under the circumstances alleged in Plaintiff's complaint. *See Walker v. Gambrell*, 647 F. Supp. 2d 529, 536 (D. Md. 2009) ("[I]nformation acquired through voluntary verbal communication, prior knowledge, or observation does not constitute a record, and therefore its disclosure does not violate the [Privacy] Act."). Plaintiff's allegations make it equally plausible that others discovered or commented on her employment with the CIA because of her *own* disclosures, namely her public statement on LinkedIn that she had a new job within the federal government. *See supra* n.4. But in any event, here too she does not allege that any putative leak of her *hiring* at the CIA somehow caused her any form of actual pecuniary loss.

348, 361 n.14 (4th Cir. 1999). Indeed, to be intentional or willful, the disclosure must be "'an act committed 'without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.'" *Id.* (quoting *Waters v. Thornburgh,* 888 F.2d 870, 875 (D.C. Cir. 1989)). Plaintiff does not allege in her Complaint that the CIA acted intentionally or willfully. Far from it: Plaintiff does not even allege *who* at the CIA made any alleged disclosure, much less that such act was done willfully. Compl. ¶ 49 ("[s]omeone at Defendant CIA leaked to Breitbart News, or a source of Breitbart, that Plaintiff was hired by the Agency in December and terminated in April"); *see also* ¶ 5 ("Someone at CIA again illegally leaked non-public, private information about Plaintiff, this time that she was to be terminated from the Agency.").[13] This too is an independent ground for dismissal of Plaintiff's claim. *See Middlebrooks*, 2011 WL 4478686, at *8 (dismissing plaintiff's Privacy Act claim where "complaint [wa]s replete with adjectives and 'adverbs that state[d] in conclusory fashion that the Navy's acts were 'vicious[] and willful[],' but it fail[ed] to allege a single fact to support these assertions"). Accordingly, Plaintiff has failed to state a plausible violation of the Privacy Act and her claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request that this Court dismiss Plaintiff's claims against them.

---

[13] Plaintiff also offers only impermissible speculation that the unnamed source who provided information to Breitbart News was from the CIA at all. *See Bing v. Brivo Systems, LLC*, 959 F.3d 605, 618 (4th Cir. 2020) (where a court "would have to 'speculate' to 'fill in the gaps'" "rather than drawing a reasonable inference," plaintiff's assertions fail to state a claim) (quoting *Iqbal*, 556 U.S. at 678); Compl. ¶ 49 ("[e]ither Defendant CIA *or* Breitbart's source additionally implied that the reason for Plaintiff's termination was her 'potentially illegal role in the Biden Administration's military vaccine mandate.'") (emphasis added); *id.* ¶ 5, 7 (alleging that "[c]ommon sense," indicates "Defendant Raiklin asked Loomer to request that President Trump terminate Plaintiff," and that "[r]ather than stand up for their officer against this thug, and other internet trolls, CIA and its director connived in firing Plaintiff and leaking private information about her").

Dated July 24, 2025

Respectfully submitted,

ERIK S. SIEBERT
UNITED STATES ATTORNEY

By:     _____/s/_____
ELIZABETH A. SPAVINS
CAROLYN M. WESNOUSKY
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3785/3996
Fax: (703) 299 3983
Email: Lizzie.Spavins@usdoj.gov
          Carolyn.Wesnousky@usdoj.gov

*Counsel for Federal Defendants Central Intelligence Agency and Director John Ratcliffe*