IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TERRY ADIRIM, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 25-cv-00768-MSN-WBP |
| | ) |
| U.S. CENTRAL INTELLIGENCE AGENCY; *et al.* | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF TERRY ADIRIM'S BRIEF IN OPPOSITION TO
GOVERNMENT DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

This case arises from Defendant the Central Intelligence Agency ("Defendant CIA" or "CIA" or "Agency") and CIA Director John Ratcliff ("Defendant Ratcliff") (collectively "Government Defendants")'s unlawful leak to Defendant[1] Ivan Raiklin ("Mr. Raiklin" or "Defendant Raiklin"), a violent political extremist, of the classified information that the Agency hired and fired Dr. Terry Adirim ("Dr. Adirim" or "Plaintiff"). Defendant CIA's illegal leak of classified information for political reasons grossly violated the Privacy Act, 5 U.S.C. § 552a—in addition to Executive Order 13526, *Classified National Security Information* (Dec. 29, 1972) and 18 U.S.C. § 793, *Gathering, Transmitting or Losing Defense Information*—physically endangered Dr. Adirim and her family, and caused them severe emotional distress. Defendant CIA's leak further caused Dr. Adirim economic damages, as it led to the Agency and CIA Director John Ratcliffe's bad faith breach of Dr. Adirim's valuable employment contract, and her ongoing difficulty in finding employment.

---

[1] On August 1, 2025, the Court Ordered that the claims against Ivan Raiklin be dismissed without prejudice. Dkt 40. Dr. Adirim will refer to him as "Defendant Raiklin" to avoid confusion.

## FACTUAL AND PROCEDURAL BACKGROUND

Terry Adirim, a distinguished physician, served as acting Assistant Secretary of Defense for Health Affairs. In this role Dr. Adirim saved the lives of an unknowable but significant, number of servicemembers by recommending that uniformed personnel receive the coronavirus vaccine. Sadly, before the Coronavirus vaccine became available, nearly one hundred servicemembers died of the virus during the pandemic; none have died of coronavirus since. In the spring of 2024, Defendant CIA aggressively recruited Dr. Adirim to serve as the Agency's chief medical officer, and upon the retirement of the Center for Global Health Services' director during the summer of 2024, the Agency recruited Dr. Adirim for position, a post she assumed on December 16, 2024. *See* Complaint, Dkt. 1 at ¶¶ 16-19.

Defendant CIA made no public announcement of Dr. Adirim's appointment, and in fact advised Dr. Adirim to not tell people outside of her family of her appointment. The affiliation of most CIA personnel, including hers, is appropriately classified as secret and not disseminate to foreign nationals. Indeed, Defendant CIA classified the internal announcement of Dr. Adirim's appointment on Agency computer systems as "SECRET/NOFORN." *See id.* at ¶ 19. A screenshot of this announcement, marked SECRET/NOFORN, taken by someone who by definition maintained staff or staff-like access to CIA's classified computer systems, later appeared on the internet.

Circa July 2024 Defendant Raiklin, a conspiracy theorist and outspoken opponent of the coronavirus vaccine, placed Dr. Adirim on a highly publicized "Deep State Target List" of named individuals whom he insists ought to be literally executed by hanging for treason. Sometime between December 16 and 22, 2024, someone at Defendant CIA leaked to Defendant Raiklin the fact that the Agency hired Dr. Adirim, leading Defendant Raiklin to direct a tweet to Defendant

2

Ratcliffe asking, "Is the architect of the illegal DOD CCP-19 Jab Genocide Mandate Terry Adirim burrowing in at the CIA?" *See id.* at ¶¶ 22, 25 and 29.

Dr. Adirim's CIA affiliation was non-public, classified information. *See id.* at ¶ 30; *see also* E.O. 13526 § 1.4(c) (stating that information pertaining to intelligence activities, the unauthorized disclosure of which reasonably could be expected to cause at least articulable damage to national security, may be properly termed as classified). Whoever at Defendant CIA leaked Dr. Adirim's Agency affiliation to Defendant Raiklin, who was unauthorized to receive it and then posted it on-line, violated the Espionage Act. *See* 18 U.S.C. § 793(d) (stating that whoever lawfully having access to national defense information, which the possessor has reason to believe could be used to the injury of the United States, who willfully causes it to be communicated to any person not entitled to receive it, commits a felony).

Defendant CIA's leak of Dr. Adirim's Agency affiliation is a *per se* violation of the Privacy Act. That statute provides that absent thirteen enumerated exceptions, none of which apply here, no agency (including Defendant CIA) shall disclose any record contained in a system of records (such as Dr. Adirim's hiring and firing by the Agency) by any means of communication to any person, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains (here, Terry Adirim). The Privacy Act further requires that agencies such as Defendant CIA establish appropriate safeguards to ensure the security of records and to protect against any anticipated threats to their security which could result in substantial harm to any individual on whom information is maintained. If an agency such as Defendant CIA fails to comply with the Privacy Act, in such a way as to adversely affect an individual such as Dr.

Adirim, she may bring a civil action for damages against that agency. *See* Section 552a(b), (g)(1)(D) and (e)(10).[2]

Defendant Raiklin did not stop at his public revelation of the private and classified fact that CIA hired Dr. Adirim, which alone led to a mob of online trolls engaging in vile abuse of her and her family. Defendant CIA's leak of Dr. Adirim's Agency affiliation led to Defendant Raiklin asking fellow conspiracist Lara Loomer to insist at a White House meeting on April 2, 2025, that President Trump fire Dr. Adirim. A host of senior national security officials got terminated on April 3, 2025. That same day, Defendant Raiklin tweeted, "For the record, I respect Laura Loomer." *See* Complaint at ¶¶ 32-36.

Defendant Ratcliffe caused Dr. Adirim to be terminated from her position on April 4, 2025, in a bad faith breach of the five-year employment contract between the Agency and Dr. Adirim. Between April 4 and April 8, 2025, someone at Defendant CIA yet again leaked Privacy Act-protected information about Dr. Adirim, this time to the extremist website Breitbart News (and most likely through Defendant Raiklin), that the Agency terminated Dr. Adirim for "potentially illegal" activity.

Specifically, the article stated that "Terry Adirim, a senior Central Intelligence Agency official and former senior defense official who played a pivotal and potentially illegal role in the Biden Administration's military vaccine mandate, was recently fired from the agency, a source has exclusively revealed to Breitbart News." The article continued to state that a memorandum signed by Dr. Adirim was "legally dubious," quoted a source calling the memo a fraud, claimed that this was not "the first time Adirim would appear to skirt the law," and accused her of violating the Hatch Act. *See id.* at Ex. D.

---

[2] Indeed, whoever at Defendant CIA leaked Dr. Adirim's Agency hiring and firing to Defendant Raiklin committed a misdemeanor under the Privacy Act, apart from the Espionage Act felony. *See* Section 552a(g).

4

Defendant Raiklin re-tweeted this article. Donald Trump Jr. tweeted a screenshot of the article's headline, including the phrase "Bye bye" and an emoji of hands clapping. *See* Complaint at ¶¶ 32-36.

In addition to violating the Privacy Act and breaching its employment contract with Dr. Adirim, the Government Defendants violated the Due Process Clause of the Fifth Amendment by firing Dr. Adirim for no stated reason, and then stigmatizing her by leaking the news of her termination to Breitbart News, and defaming her by stating that she got fired for "potentially illegal" activity.

On May 2, 2025, Dr. Adirim filed a Complaint and sought injunctive relief against Defendants CIA and Ratcliffe for violations of the Due Process Clause, for firing her and defaming her in the process; breach of contract for firing Dr. Adirim in bad faith and making a defamatory statement about her termination; and violation of the Privacy Act.[3] The Court granted an administrative stay before ultimately denying Dr. Adirim's claim for injunctive relief on May 9, 2025. Defendants CIA and Ratcliffe's motion to dismiss followed. See Dkts. 6, 14, 36 and 36.

## **LEGAL STANDARD**

Defendants CIA and Ratcliffe move to dismiss Dr. Adirim's complaint under Federal Rules of Civil Procedure 12(b)(1) and (6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. When deciding a motion to dismiss, a court "draw[s] all reasonable inferences in favor of the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). A motion to dismiss should only be granted if "after accepting all well-pleaded allegations…as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts

---

[3] Dr. Adirim also filed tort claims against Defendant Raiklin and his employer America's Future, Inc.

in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## ARGUMENT

### I. Dr. Adirim Alleges a Uniquely Strong Privacy Act Claim

As set forth *supra*, Defendants CIA and Ratcliffe may not disclose a record contained in a system of records by any means of communication to any person, except pursuant to a written request by the individual to whom the record pertains. Defendant CIA must establish appropriate safeguards to ensure the security of records and to protect against any anticipated threats to their security which could result in substantial harm to any individual on whom information is maintained. If Defendants CIA and Ratcliffe fail to comply with the Privacy Act in such a way as to have an adverse effect on an individual, that individual may bring a civil action for damages against that agency. *See* Section 552a(g)(1)(D).

The Government Defendants fail to acknowledge the basic fact that Dr. Adirim's hiring by the CIA and her Agency affiliation were literally secrets, authorized to be known only to Agency personnel. Dr. Adirim's name appeared on no publicly-available list of Government employees, such as might be published by a different department or agency. This is for the good reason that the CIA is an intelligence service involved in, *inter alia*, espionage and covert action, such that the names of only a handful of its very most senior officials—such as the Agency's director, deputy director, chief operating officer(s), general counsel and inspector general—are properly considered to be public knowledge.

Someone from Defendant CIA leaked to Defendant Raiklin, for domestic political reasons, the properly classified fact that Dr. Adirim was an Agency employee. In the recent past, this sort of clear violation of the Espionage Act resulted in the appointment of a special counsel, criminal

6

convictions and even the issuance of material witness warrants to journalists.[4]  In contrast, the Government Defendants here did nothing to protect Dr. Adirim's CIA cover, not even after she reported to the Agency's Office of Security the fact that she had been outed, much less pursue who leaked her CIA affiliation to Defendant Raiklin.  Neither did the Government Defendants do anything at all to help Dr. Adirim and her family with their physical safety, despite the ongoing calls for her death from Defendant Raiklin and his online mob—a further demonstration of the Agency's bad faith towards her, and its failure to fulfill its end of the unique and lifelong mutual legal and moral obligations the CIA and its former employees owe to one another.

This illegal leak led to Dr. Adirim losing the substantial economic benefit of a five-year contract, when Defendant Raiklin prevailed upon fellow extremist Laura Loomer to demand that President Trump order the Government Defendants to fire Dr. Adirim from the CIA.  Next, someone at Defendant CIA leaked, again illegally, the fact that the Agency terminated Dr. Adirim, adding the false allegation that she got fired for "potentially illegal" misconduct.  This second leak led to Dr. Adirim, despite her expertise as a physician and experience in very senior health care leadership roles, to be unable to find employment since being publicly terminated by Defendant CIA for potential crimes, causing her still further and indeed ongoing economic damages.

The Government Defendants' misconduct here is *ipso facto* willful.  Dr. Adirim's CIA affiliation was properly classified national defense information.  Unless it is the Government's position that Defendant CIA is a sieve that somehow accidentally—and repeatedly—disclosed the name, affiliation, and employment status of an Agency employee to uncleared individuals and organizations, such as Defendant Raiklin and Breitbart News (such gross negligence by an

---

[4] *See generally* T. Gabriel, *Richard L. Armitage, 79, Dies; State Department Official in a Turbulent Era*, NEW YORK TIMES (Apr. 15, 2025); P. Baker, *Trump Pardons Scooter Libby in a Case That Mirrors His Own*, NEW YORK TIMES (Apr. 13, 2018); and *Reporter Judith Miller released from prison,* History.com (May 27, 2025), available at https://www.history.com/this-day-in-history/september-29-reporter-judith-miller-released-from-prison.

intelligence service would be alarming in its own way), then someone at the CIA deliberately leaked Dr. Adirim's hiring and firing for political reasons and in violation of the Privacy Act.

The Government Defendants' claim that it is "plausible that others discovered or commented on [Dr. Adirim]'s employment with the CIA because of her *own* disclosures, namely her public statement on LinkedIn that she had a new job within the federal government," is unfair. Dkt. 37 at 19. Most professionals maintain LinkedIn profiles, Dr. Adirim already maintained one before joining the CIA, and it would be odd for her to not update her page after she clearly ceased being a political appointee at the close of the Biden Administration. Defendant CIA did not give Dr. Adirim a cover position—a notional title at another government department or with a commercial cover provider, for example—to refer to, with all parties' blessings, in public-facing fora such as LinkedIn. So Dr. Adirim properly did what any other Agency officer in her situation does, and described herself as working for the "federal government"—a statement that is neither a lie, nor a public disclosure of her CIA affiliation unauthorized by the Agency. Many officers in intelligence agencies other than the CIA, and federal law enforcement agents, use the exact same formulation, and the Court may take judicial notice that this is a common practice within the Eastern District of Virginia.

Even if Dr. Adirim's honest edit to her LinkedIn page is somehow to blame for Defendant Raiklin deducing her CIA affiliation (it is not), this purported error would not explain how Breitbart News came to know of the Agency firing the doctor. Certainly Dr. Adirim did not advertise her termination and unemployment on LinkedIn. Rather, someone at Defendant CIA told Breitbart's anonymous source, most likely Defendant Raiklin, that Dr. Adirim got fired, and for "potentially illegal" activity to boot. There is no other plausible explanation, and the

8

Government Defendants offer none. This is a classic Privacy Act violation, and the false allegation of illegal activity caused Dr. Adirim to be unable to find follow-on employment.

*Contra* the Government Defendants' assertions, Dr. Adirim's Complaint makes plain the economic damages she suffered and continues to suffer from their Privacy Act violation. To be perfectly clear, Defendant CIA's leak of Dr. Adirim's Agency employment to Defendant Raiklin led to the termination of that employment, and the economic damage caused by her loss of five years' worth of wages, as well as full retirement benefits just one month short of their vesting:

- "Plaintiff anticipates being terminated … approximately one month short of when Plaintiff would qualify for full federal retirement benefits." *See* Complaint, Dkt. 1 at ¶ 6; *see similarly* ¶ 41.

- Plaintiff signed a contract with Defendant CIA, Ex. E." Dkt. 1 at ¶ 28. The referenced exhibit provides the amounts of Dr. Adirim's compensation, bonus, additional payments and benefits. *See* Dkt. 1-5, Ex. E. at ¶ 2.

- "Plaintiff and Defendant CIA signed a valid contract for five years of employment … Defendants CIA and Ratcliffe breached their employment agreement with Plaintiff, causing her to lose nearly five years of wages." Dkt. 1 at ¶ 45.

- "Plaintiff respectfully requests that the Court enter an award and judgment in their favor, against Defendants as follows: … Compensatory damages, in an amount to be determined, but in excess of $75,000, against all Defendants[.]" *Id*. at 15.

Counsel redacted the exact amounts of Dr. Adirim's compensation in deference to the doctor's privacy, given the campaign of online hate targeting her. Dr. Adirim's employment contract is obviously in the Government Defendants' possession. At this pleading stage, counsel would be happy, with the Court's leave, to submit an unredacted copy of Dr. Adirim's employment contract under seal.

Since filing her Complaint and finally being terminated pursuant to a false allegation of illegal activity, Dr. Adirim is unable to find employment, causing her further current and

prospective economic damages as well. This is the kind of harm that the Privacy Act seeks to remedy, and the kind of government misconduct that the Privacy Act seeks to punish and deter.

**II.     Dr. Adirim Advances Cognizable Due Process Claims**

The Government Defendants violated Dr. Adirim's rights under the Due Process Clause twice, first by the CIA not following its own rules when it fired Dr. Adirim for no stated reason, *see generally United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), and second by leaking word of her firing and falsely alleging that she got terminated for alleged illegal activity, a stigmatizing statement impacting Dr. Adirim's liberty interest in pursuing her career and making it impossible for her to find onward employment.

   a.     <u>The Government Defendants Violated Dr. Adirim's Due Process Rights by Providing No Plausible Reason for her Termination</u>.

The Government Defendants assert that Dr. Adirim maintains no cognizable due process claim. But *pace* the Government Defendants, Dr. Adirim being fired at the insistence of the President, absent misconduct or poor performance, only on the basis of defamation by an extremist who calls for her death, is no "run-of-the-mill contract dispute." Dkt. 37 at 11.

The Government Defendants point to the provision in Dr. Adirim's contract which provides that she may be terminated "for any reason." Yet the Government Defendants provide *no* plausible reason for Dr. Adirim's firing.

The Government Defendants provide a declaration by the fourth-ranking official at the CIA, Deputy Chief Operating Officer ("D/COO") Brenda McKinlay, to justify the Agency's termination of Dr. Adirim. D/COO McKinlay's declaration so lacks detail that it ought not be taken seriously by the Court as a truthful account of the reason Defendant CIA fired Dr. Adirim.

D/COO McKinlay states only—quoted in full—that by March 2025,

> Dr. Adirim's conduct had already generated multiple complaints by several different CIA officers regarding alleged inappropriate and harassing statements and actions by Dr. Adirim towards them in the workplace. These issues first arose almost immediately after the start of Dr. Adirim's tenure at CIA and continued to accumulate throughout. I first became aware of such concerning allegations in February 2025. A range of concerns relating to Dr. Adirim came to the attention of CIA's senior-most leadership by mid-March 2025.

Dkt. 9-1 Exh. 1 at ¶ 6.

That's it. D/COO McKinlay does not identify any misconduct, nor describe the purported complaints, nor detail the alleged "inappropriate and harassing statements and actions by Dr. Adirim" with any information at all.

Dr. Adirim is a sixty-two year old wife, mother, and physician, who most recently served as an Assistant Secretary of Defense. She served as a member of the Senior Executive Service for over ten years, without any similar complaints. It strains credulity for the Government Defendants to assert that within three months of her arrival at CIA, after being heavily vetted by the Agency (including interviews with her previous supervisors), Dr. Adirim suddenly morphed into a cougar engaging in "inappropriate and harassing statements" at work, necessitating her immediate termination. The Government under the current Administration, as demonstrated by its false statements and contemptuous actions in federal litigation since January 20, 2025,[5] no longer deserves automatic deference from the courts when its officials make bald and implausible assertions of the kind made by D/COO McKinlay.

While Dr. Adirim's contract with the CIA does indeed state that she may be terminated "for any reason," the Government Defendants can provide no good reason whatsoever. Indeed, when Dr. Adirim twice asked her supervisor for the reason for her termination, her supervisor answered, "I have no information." Complaint at ¶ 4. Drawing all reasonable factual inferences

---

[5] *See generally* A. Feuer, *Judges Openly Doubt Government as Justice Dept. Misleads and Dodges Orders*, NEW YORK TIMES (Aug. 4, 2025).

11

in Dr. Adirim's favor, her detailed and logical allegations explaining the inadmissible reason for her termination, compared to the Government Defendants' fact-free assertion of unidentified "harassing statements and actions," suggest that Dr. Adirim can indeed prove a set of facts in support of her claim entitling her to relief.

*United States ex rel. Accardi v. Shaughnessy* stands for the common-sense proposition that government agencies must follow their own rules as a matter of constitutional due process for their employees. This reasonable reading of *Accardi* is currently before the Court of Appeals in another case involving the Government Defendants, and awaits adjudication. *See Doe v. Office of the Director of National Intelligence, et al.*, No. 25-1527 (4th Cir. 2025). Surely, Defendant CIA terminating an employee absent any performance issues, and then providing a facially dubious declaration from an official accusing her of unidentified workplace misconduct—Dr. Adirim harassed who? How? Where? When?—amounts to a violation of Agency rules, which at a minimum assume some level of honesty in CIA officials' statements.

      b.     <u>The Government Violated Dr. Adirim's Due Process Rights by Stigmatizing her with Defamatory Statements Regarding her Termination.</u>

While Dr. Adirim's contract with Defendant CIA did make her an at-will employee, the Agency terminated her because of the political pressure from extremists such as Defendant Raiklin and Ms. Loomer, a request brought to the attention of President Trump during Loomer's Oval Office meeting on April 2, 2025. Dr. Adirim further suffered a stigmatizing statement upon her termination through an illegal leak by Defendant CIA to an anonymous source of Breitbart News (most likely Defendant Raiklin) of the fact of her termination, and an allegation that the Agency fired her for "potentially illegal" misconduct, an allegation then amplified in social media by Donald Trump, Jr. republishing the title of the defamatory article, tweeting an applause emoji and the snide comment "bye bye."

These statements are stigmatizing enough that Dr. Adirim, despite her expertise as a physician and experience in health care leadership roles, is as yet unable to find employment since being publicly terminated by Defendant CIA for "potentially illegal" activity, unfairly impinging upon her liberty interest in pursuing her honorable profession. Within the Fourth Circuit, a stigma-plus statement amounting to a due process violation occurs when the Government defames an employee in connection with their termination. *See Roe v. Department of Defense*, 947 F.3d 207 (4th Cir. 2020).

In the words of the Court of Appeals, "circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." 947 F.3d at 229, citing *Sampson v. Murray*, 415 U.S. 61, 92 (1974). Defendant CIA unlawfully leaked the fact of Dr. Adirim's termination to Breitbart News in violation of the Privacy Act, added insult to injury by accusing Dr. Adirim of potential crimes, the president's son kicked her while she was down by applauding and circulating the defamatory article's title, and subsequently she is having difficulty in finding employment in her profession. The circumstances surrounding Dr. Adirim's discharge, and resultant effects on her, depart so far from normal that Dr. Adirim suffered irreparable harm.

Remarkably, the Government Defendants even question whether the "CIA knew that Plaintiff's role in the vaccine mandate was *not* 'potentially illegal.'" It is shocking to see in a pleading signed by the Department of Justice, the deranged implication that a Department of Defense official suggesting that servicemembers receive a life-saving vaccine could be illegal. Obviously, outside of the fever swamps of extremism, an assistant secretary of defense correctly advising the defense secretary to vaccinate the troops is no crime. The CIA, and certainly the

13

Justice Department, know this, and making this bizarre statement on behalf of the United States is just sad.

The Defendants further assert that the President's son is a third party unrelated to the Government. However, the President's son makes diplomatic visits and statements on the President's behalf, is the subject of official press releases by the Department of State, and publicly discusses succeeding his father in office.[6] Donald Trump Jr. is not the functional equivalent of, for example, Barack Obama or George W. Bush's then-teenaged daughters during their father's presidencies. Donald Trump Jr. is a de facto member of his father's Administration, and a powerful one at that. His applause emoji celebrating Dr. Adirim's termination, and his reposting of the title of an article accusing her of potential crimes, is a further gratuitous and defamatory stigmatization of a good public servant. Donald Trump Jr.'s malicious statement may reasonably be imputed to the Government.

The Government Defendants raise important factual arguments against Dr. Adirim's claims. Defendant CIA and Defendant Ratcliffe argue that the Agency did not leak Dr. Adirim's CIA affiliation or termination; that Dr. Adirim got fired not because of extremist political pressure resulting from a CIA leak, but rather for good cause related to some unspecified misconduct; that she suffered no economic harm, nor indeed any irreparable harm; and that Donald Trump, Jr. does not speak for his father's Government.

The Government Defendants' claims, which Dr. Adirim firmly rejects, raise factual questions that should now be explored in discovery. They are not grounds for dismissing

---

[6] *See* J. Keaten, *Donald Trump Jr. arrives in Greenland with a message from his dad: 'We're going to treat you well'*, ASSOCIATED PRESS (Jan. 7, 2025); *Secretary of State Marco Rubio with Donald Trump, Jr. of Triggered with Don Jr. Interview*, Dep't of State (Apr. 8, 2025), available at https://www.state.gov/secretary-of-state-marco-rubio-with-donald-trump-jr-of-triggered-with-don-jr; and S. Croucher, *Donald Trump Jr. Hints at Taking Over From Father in Politics*, NEWSWEEK (May 21, 2025)

Dr. Adirim's suit for failure to state claims upon which relief may be granted. Defendants CIA and Ratcliffe's illegal actions gravely injured Dr. Adirim, she adequately pleaded facts constituting Privacy Act and due process violations, and her meritorious suit ought to be allowed to proceed.

## CONCLUSION

Counsel filed all seven of Dr. Adirim's claims against four Defendants in District Court, under the time pressure of seeking a temporary restraining order, and in the interests of judicial economy. However, counsel takes Defendants CIA and Ratcliffe's good point that breach of contract claims against the United States seeking damages in excess of $10,000 properly lie in the Court of Federal Claims, and joins in their suggestion that the Court dismiss Dr. Adirim's breach claim without prejudice, to allow Dr. Adirim to consider re-filing this claim in that court. Dr. Adirim respectfully requests that this Court deny Defendants' motion to dismiss with respect to all other claims.

Dated: August 7, 2025					Respectfully submitted,

							/s/ Kevin T. Carroll
							Kevin T. Carroll, VSB No. 95292
							Warren G. Bianchi (*pro hac vice forthcoming*)
							**Fluet**
							1751 Pinnacle Drive, Suite 1000
							Tysons, Virginia 22102
							T: (703) 590-1234
							F: (703) 590-0366
							kcarroll@fluet.law
							wbianchi@fluet.law
							e-file@fluet.law

							*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 7, 2025, I caused the foregoing to be served on all counsel of record for the Defendants via CM/ECF.

<i>/s/ Kevin T. Carroll</i><br>
Kevin T. Carroll, Esq.