**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| TERRY ADIRIM, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| U.S. CENTRAL INTELLIGENCE ) | Case No.  25-cv-00768-MSN-WBP |
| AGENCY; ) | |
| ) | |
| JOHN RATCLIFFE, in his official ) | |
| capacity as Director of the Central ) | |
| Intelligence Agency; and ) | |
| ) | |
| IVAN RAIKLIN, ESQ. ) | |
| ) | |
| Defendants. ) | |

## <u>FIRST AMENDED COMPLAINT</u>

### NATURE OF THE CASE

1.      Plaintiff Terry Adirim ("Plaintiff" or "Dr. Adirim") lost her job and sense of security because of political retribution and extremist conspiracy theories.  In a ruse designed to purge a perceived ideological enemy, the Central Intelligence Agency ("CIA" or the "Agency") wrongfully broadcast Dr. Adirim's private and protected information—including the classified fact of her employment with the Agency—before terminating her employment.  The Agency's wrongful disclosures of nonpublic facts relating to Dr. Adirim caught the attention of extremist content creators such as Defendant Ivan Raiklin ("Defendant Raiklin"), who amplified news of Dr. Adirim's private information and wrongful termination.

2.      Previously, Defendant Raiklin included Dr. Adirim on his "Deep State Target List" of 350 people who Defendant Raiklin falsely accused of committing heinous felonies and identified for political retribution, public trial and even execution.  Defendant Raiklin specifically

accused Dr. Adirim of mutilating those within her care, committing genocide, and otherwise betraying her professional and ethical obligations as a doctor.

3.      Dr. Adirim is medical doctor who proudly served our nation.  Dr. Adirim's public service included serving as Acting Assistant Secretary of Defense for Health Affairs at the outset of the coronavirus pandemic,[1] in which role she gave Secretary of Defense Lloyd Austin the life-saving advice to vaccinate our servicemembers.  Most recently, Dr. Adirim took on a senior role at CIA's Center for Global Health Services after being actively sought out and recruited by the Agency.  Soon after Dr. Adirim began her new job at CIA, the Agency's senior leaders expressed satisfaction with her performance; just weeks before Plaintiff's termination, CIA's Chief Operating Officer sent her an email stating that the Agency looked forward to investing in her career.

4.      Defendant Raiklin creates extremist content on social media platforms including X (formerly Twitter) and on various podcasts.  Defendant Raiklin is notorious for his "Deep State Target List" of individuals who he considers guilty of treason and fit to be executed.  Defendant Raiklin is particularly venomous regarding Dr. Adirim, publicly accusing her not only of treason, but also genocide, war crimes, homicide and mutilation, while threatening to release her private correspondence.  Defendant Raiklin repeated these accusations during his appearance on the Roseanne Barr Podcast on October 3, 2024.  During that appearance, Defendant Raiklin stated that he wishes for individuals such as Dr. Adirim to be unable "to walk anywhere" without feeling the "wrath of their neighbors, friends, relatives, family."[2]  Defendant Raiklin calls for those on his

---

[1]    *See* U.S. Department of Defense, *Dr. Terry Adirim*, https://www.defense.gov/About/Biographies/Biography/Article/2604503/dr-terry-adirim/ (on file with the United States Government) (last visited Aug. 21, 2025).

[2] "The Deep State Hit List with Ivan Raiklin - The Roseanne Barr Podcast #68" (Apple Podcasts, Aug. 21, 2025), https://podcasts.apple.com/tw/podcast/the-deep-state-hit-list-with-ivan-

target list to be dangerously and illegally "swatted." Ex. A. His odious actions and words threaten the physical safety of Dr. Adirim and her family.

5.    Dr. Adirim's affiliation with CIA was classified as SECRET/NOFORN, meaning that the unauthorized disclosure of this information, which is related to intelligence activities, could be reasonably expected to cause articulable and serious damage to U.S. national security, and also that the information could not be released to foreign nationals. *See* Executive Order 13526, *Classified National Security Information* (Dec. 29, 2009) § 1.2(a)(2) and 1.4(c).[3] Indeed, CIA advised Dr. Adirim not to tell people outside of her family of her Agency appointment.

6.    Last winter, within days of Dr. Adirim quietly starting work at CIA, Defendant Raiklin directed a tweet to Defendant CIA Director John Ratcliffe asking, "Is the architect of the illegal DOD CCP-19 Jab Genocide Mandate Terry Adirim burrowing in at the CIA?" Ex. B.[4] Dr. Adirim informed CIA security that someone at the Agency illegally leaked to Defendant Raiklin the private and classified information that Dr. Adirim now served at CIA. The Agency had only formally announced Dr. Adirim's arrival on a classified email system and in an email marked SECRET//NOFORN. To Dr. Adirim's knowledge, the Agency's Office of Security took no action in response.

7.    A photograph or screenshot of the internal CIA announcement of Dr. Adirim's appointment, marked as SECRET/NOFORN, necessarily taken by someone who maintained staff

---

raiklinthe/id1689617956?i=1000671636728    [https://perma.cc/RZ2D-CW8V]    (hereinafter, "Rosanne Barr Podcast"), at 08:10.

[3] Because Dr. Adirim no longer works for Defendant CIA, her previous Agency affiliation is no longer classified information. Furthermore, Defendant CIA itself blew Dr. Adirim's cover for all practical purposes when it illegally leaked her Agency affiliation, first to Defendant Raiklin and then to Breitbart News.

[4] This Tweet has since been deleted, but can be found using the "Wayback Machine".

access or staff-like access to CIA's air-gapped and classified computer systems, later appeared on the internet. Whoever at CIA leaked Dr. Adirim's Agency affiliation to Defendant Raiklin, whoever copied the internal announcement of her appointment, and whoever posted it to the internet potentially committed a felony under the Espionage Act. *See* 18 U.S.C. § 793(d), *Gathering, Transmitting or Losing Defense Information* (stating that whoever lawfully having access to national defense information, which the possessor has reason to believe could be used to the injury of the United States, who willfully causes it to be communicated to any person not entitled to receive it, commits a felony). Whoever at Defendant CIA leaked Dr. Adirim's Agency affiliation to Defendant Raiklin also committed a misdemeanor under the Privacy Act. *See* 5 U.S.C. § 552a(g). To Dr. Adirim's knowledge, the Department of Justice ("DOJ") and Federal Bureau of Investigation ("FBI") took no action in response.

8.     On April 2, 2025 Defendant Raiklin's associate and fellow conspiracy theorist Laura Loomer visited President Donald Trump in the White House.[5] On April 3, 2025 a series of senior national security officials got fired from their positions, in response to which Defendant Raiklin tweeted, "For the record, I respect Laura Loomer." Ex. C. On April 4, 2025 a tweet by Ms. Loomer took credit for these officials getting fired, and President Trump stated that he spoke with Ms. Loomer on April 3, 2025 and listened to her "hiring recommendations."[6]

9.     Also on April 4, 2025 Defendant CIA informed Dr. Adirim that the Agency would terminate her employment. Dr. Adirim asked twice for the reason for her termination, and her

---

[5] *See* M. Haberman, *Trump Fires 6 N.S.C. Officials After Oval Office Meeting With Laura Loomer*, NEW YORK TIMES (Apr. 3, 2025), https://www.nytimes.com/2025/04/03/us/politics/trump-meeting-laura-loomer.html (on file with The New York Times).

[6] *See* A. Treene, *White House advisers have kept Laura Loomer at bay for months. Then, Trump invited her in.* CNN (Apr. 5, 2025), https://www.cnn.com/2025/04/05/politics/laura-loomer-donald-trump-meeting (on file with CNN) (last visited Aug. 21, 2025).

supervisor told her, "I have no information." Dr. Adirim's five-year contract with Defendant CIA is worth over one million dollars. Defendant CIA fired Dr. Adirim just weeks before her full pension benefits as a career federal employee would vest; she lost, for example, the valuable economic benefit of lifelong government health insurance.

10.    On April 8, just four days after Plaintiff learned of her looming termination, Defendant Raiklin re-posted a message stating, "Scoop: Terry Adirim, a senior Central Intelligence Agency official and former senior defense official who played a pivotal and potentially illegal role in the Biden Administration's military vaccine mandate, was recently fired from the agency, a source has revealed exclusively to Breitbart News." Ex. D. An anonymously-sourced Breitbart article with the same claim appeared earlier that same day, adding the false and defamatory statement that Dr. Adirim played a "potentially illegal role in the Biden Administration's military vaccine mandate."[7] Someone at CIA again illegally leaked non-public information about Dr. Adirim, this time that she was to be terminated from the Agency, adding the false and defamatory allegation that she broke the law by recommending COVID-19 vaccines. Yet again, whoever at Defendant CIA leaked Dr. Adirim's firing by the Agency to Breitbart News committed a misdemeanor under the Privacy Act, but to Dr. Adirim's knowledge, DOJ and FBI took no action in response.

11.    Also on April 8, 2025 Donald Trump, Jr. tweeted the phrase "Bye bye" and an emoji of hands clapping, while attaching a screenshot of the title of the Breitbart article. Ex. E. On information and belief, Dr. Adirim's firing from the CIA was politically motivated.

---

[7] *See* Kristina Wong, *Exclusive: Senior CIA Official Who Facilitated Biden's Military COVID-19 Vaccine Mandate Fired*, BREITBART (Apr. 8, 2025), https://www.breitbart.com/politics/2025/04/08/exclusive-senior-cia-official-who-facilitated-bidens-military-covid-19-vaccine-mandate-fired/ [https://perma.cc/B58V-GD47] (last visited Aug. 21, 2025).

12.     Dr. Adirim and her family suffered terrible injustice only because her good service to our Country made her a target for a political extremist who defamed her and called for the termination of her employment and even her death.  Rather than stand up for their officer against this violent thug, and other internet trolls, Defendant CIA and its Director connived in firing Dr. Adirim and leaking private information about her.  Through their actions and words, Defendant CIA, through Defendant Ratcliffe, jointly and severally violated the Due Process Clause of the Fifth Amendment and the Privacy Act while breaching Dr. Adirim's employment contract. Meanwhile, Defendant Raiklin defamed Dr. Adirim while wrongfully converting her private messages on the social media platform X for use in his vitriolic web content.

13.     Defendant Raiklin defamed Dr. Adirim out of personal and political malice towards her, and based on his preconceived conspiracy theories on which Defendant Raiklin's livelihood depends.  Defendant CIA then illegally leaked the classified and Privacy Act-protected fact of Dr. Adirim's Agency affiliation to Defendant Raiklin and the public at large.  Next, Defendant CIA breached its contract with Dr. Adrim in bad faith, and illegally leaked the Privacy Act-protected fact of Dr. Adirim's firing by the Agency to Breitbart News, adding the false and defamatory accusation that she engaged in potentially illegal misconduct while at the Defense of Department.

14.     Since being defamed by Defendants Raiklin and CIA, and since the Agency illegally leaked the fact of her firing, Dr. Adirim is unable to find follow-on employment despite her successful experiences as a physician and a senior leader in the health care profession. Defendants' tortious acts, and constitutionally and statutorily illegal acts, are causing Dr. Adirim millions of dollars in damages, both from the loss of her contract with the Agency, and from her inability to find onward employment subsequent to the stigmatizing remarks of Defendant CIA

about the circumstances of her firing.  Dr. Adirim therefore seeks justice through claims for injunctive relief and statutory, compensatory, exemplary and punitive damages.

## JURISDICTION

15.    The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the action arises under the Due Process Clause of the Fifth Amendment; the Privacy Act of 1974, 5 U.S.C. § 552a; and Virginia common law.  The Court also exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the action involves an amount in controversy exceeding $75,000 between different States' citizens.

16.    The Court exercises personal jurisdiction over Defendant CIA under Section 1331 as it is a federal agency, and over Defendant Director Ratcliffe as he is named in his capacity as an agency head.  The Court exercises personal jurisdiction over Defendant Raiklin pursuant to Section 1332 as upon information and belief he is a resident of this District, having run for elected office in Virginia.

## VENUE

17.    Venue in this District is proper because constitutional, statutory, and tortious violations took place in the Eastern District of Virginia.  Defendants reside in this judicial district.

## THE PARTIES

18.    Plaintiff Dr. Adirim served as director of Defendant CIA's Center for Global Health Services and is a resident and domiciliary of Maryland.

19.    Defendant CIA is a U.S. Government agency headquartered in this District.

20.    Defendant Ratcliffe is Director of Defendant CIA.

21.    Defendant Raiklin is a resident of, and former political candidate in, Virginia.

## FACTUAL ALLEGATIONS

22.     Dr. Adirim is an emergency medicine and public health expert who served, until April 2025, as Director of Defendant CIA's Center for Global Health Services.  She earlier served as a Senior Associate Dean, Department Chair and Professor at the Schmidt College of Medicine at Florida Atlantic University, as well as in Senior Executive Service leadership roles at the Department of Defense and the Department of Veterans Affairs.

**A.**     ***Dr. Adirim's Exemplary Work at DOD Results in New Employment at CIA.***

23.     While at the Defense Department, Dr. Adirim served as Acting Assistant Secretary for Health Affairs, the principal advisor to the Defense Secretary for all health protection policies, programs, and activities.  Dr. Adirim's service at the Pentagon coincided with the COVID-19 pandemic.  Dr. Adirim's advice to Secretary Lloyd Austin included a recommendation, accepted by the Secretary, that military servicemembers receive COVID-19 vaccines.

24.     Dr. Adirim's good medical advice saved the lives of American servicemembers. Nearly one-hundred troops sadly died of COVID-19 in the early days of the pandemic in 2020-21. None died of COVID-19 after Secretary Austin adopted Assistant Secretary Adirim's recommendation and ordered our armed forces vaccinated.  Dr. Adirim's advice and Secretary Austin's order followed in the best traditions of our military: George Washington ordered the Continental Army's soldiers to receive experimental smallpox vaccinations in 1777.

25.     Before Dr. Adirim's first political appointment as Acting Assistant Secretary for Health Affairs, she also served as Deputy Assistant Secretary of Defense in a military health systems team chief medical officer role.  Dr. Adirim served as a career civil servant in the Senior Executive Service from 2016 to 2020, several years prior the COVID-19 pandemic.

26.     After being actively recruited by Defendant CIA, including interviews with the Agency's Director and Deputy Director at that time, on December 11, 2024 Dr. Adirim signed a renewable five-year contract with the Agency to serve as a member of the Senior Intelligence Service and lead Defendant CIA's Center for Global Health Services.  Ex. F.  Dr. Adirim entered on duty with Defendant CIA on December 16, 2024.  Dr. Adirim's hiring by Defendant CIA was nonpublic information, properly classified as a national defense secret.

27.     In March 2025, Defendant CIA's third-ranking official, the Agency's Chief Operating Officer, confirmed Plaintiff's satisfactory performance as Director of Center for Global Health Services by sending her a complimentary email supportive of her future at the Agency.

**B.**     ***Defendant Raiklin Demonizes Dr. Adirim in His Extremist Conspiracy Theory.***

28.     Defendant Raiklin, who styles himself as Donald Trump's "Secretary of Retribution," is an attorney, combat veteran, former military intelligence and special operations officer, and former candidate for office.  Defendant Raiklin was present at the United States Capitol during the deadly insurrection on January 6, 2021.  Defendant Raiklin is, upon information and belief, the lead suspect in the attempted bombing of Democratic National Committee ("DNC") headquarters that day, but as yet stands charged with no crime.

29.     Defendant Raiklin staunchly opposed Secretary Austin's decision to vaccinate servicemembers, and he remains fiercely critical of Dr. Adirim's recommendation of the same. Defendant Raiklin baselessly claims that the vaccinations recommended by Dr. Adirim "ended up killing lots of people."  Ex. A.[8]

---

[8] *See* Ex. A, quoting Defendant Raiklin stating the vaccination program was "unlawful, immoral, unethical, illegal[.]"

30.     Around July 2024 Defendant Raiklin included Dr. Adirim's name on a list of political opponents that he titled the "Deep State Target List."  Defendant Raiklin wears his list on a t-shirt during media appearances and considers the 350 individuals on the list to be guilty of the capital crime of treason as well as other crimes.  Most people on Defendant Raiklin's list are current or former government officials, or relatives of these officials.  According to *The Atlantic*, Defendant Raiklin "said he would conduct 'livestreamed swatting raids' against his targets."  Ex. A.  The Atlantic explained that "[s]watting is the illegal practice of falsely reporting an emergency in order to summon armed law enforcement to someone's home."  *Id*.

31.     On October 3, 2024 Defendant Raiklin appeared on the Roseanne Barr Podcast.  During his appearance, Defendant Raiklin made a series of familiar but utterly false and defamatory allegations against the Deep State Target List, including allegations that these individuals were guilty of war crimes, genocide and other atrocities.[9]

32.     During the podcast appearance, Defendant Raiklin identified Dr. Adirim several times by name and directed various allegations at her.  Specifically, Defendant Raiklin claimed that Dr. Adirim "signed the memo institutionalizing the illegal vax mandate on the DOD."[10]  He claimed that there are "many tens of thousands of us who want her to face … Nuremburg-style consequences" for that and that Dr. Adirim will be "criminally liable and face consequences for genocide and for mutilation."[11]  Defendant Raiklin then asked his 200,000+ followers on X (formerly known as Twitter) to send this message to Dr. Adirim's account.  Defendant Raiklin said, "You can block all you want, Terry.  You are still going to be convicted of genocide and mass

---

[9] Roseanne Barr Podcast, at 30:35 - 30:50.

[10] *Id*. at 29:10.

[11] *Id*. at 29:25-30:20.

mutilation at the very least.  Remember, we have all of your Twitter DMs and exchanges with Twitter employees."[12]

33.    Defendant Raiklin claimed he obtained Dr. Adirim's direct messages ("DMs") even though those messages were stored under Dr. Adirim's personal, password-protected account, and should by X's terms of service be accessible only by her.  Dr. Adirim authored these messages, which were timestamped, stored in documented digital form and retrievable solely through her exclusive login credentials.  Dr. Adirim never authorized or consented to the disclosure of her DMs to Defendant Raiklin or anyone else.

34.    X's Privacy Policy explicitly provides that direct messages are private communications, not public-facing content.  Ex. G.  Indeed, X states that "Direct Messages are the private side of X.  You can use Direct Messages to have private conversations with people about posts and other content."  Ex. H.  Direct messages are sent to "a specific X user," and not shared with anyone else unless the intended recipient "accesses X through a third-party service."  Ex. G.  In that case, the direct messages "may be shared" with the third-party service, but certainly not another unintended, individual recipient.  *Id*.

35.    Thus, under relevant policies, users retain control over how their direct messages are accessed and disseminated.  Unlike public posts or tweets, which are intentionally published for anyone to view, direct messages are intended solely for the specific recipient(s) designated by the sender, and are shielded from public visibility absent deliberate disclosure.

36.    These Twitter/X direct messages are Dr. Adirim's property.  They are unique, personally-created communications holding informational and relational value, and whose disclosure or use without consent wrongfully deprived Dr. Adirim of that value.  Dr. Adirim

---

[12] *Id*. at 35:00.

exercised control over her DMs through platform tools allowing her to view, delete and manage her private messages, thereby maintaining an exclusive and protectable possessory interest in them.  By acquiring and retaining these messages without authorization, Defendant Raiklin deprived Dr. Adirim of her right to control their possession and dissemination.

37.    A copy of the Deep State Target List available online includes a request to Elon Musk, owner of X, for copies of the 350 individual's direct messages.  On information and belief, Defendant Raiklin obtained Dr. Adirim's direct messages without her consent.

38.    Also on Barr's show, Defendant Raiklin described the individuals on his Deep State Target List, such as Dr. Adirim, as "war-criminal scum."[13]  He stated that he hoped that those on his list would be unable "to walk anywhere, whether it's in the digital space o[r] physical space, without them feeling the, let's just say, wrath of their neighbors, friends, relatives, family."[14]

**C.    Defendant Raiklin Targets Dr. Adirim's New Job as Defendant CIA Leaks Classified Information.**

39.    On December 11, 2024 Dr. Adirim signed a five-year renewable employment contract with Defendant CIA.  Ex. F.  Dr. Adirim entered on duty on December 16, 2024.

40.    On December 22, 2024 Defendant Raiklin directed a tweet to Defendant Ratcliffe, Director of the CIA, asking, "Is the architect of the illegal DOD CCP-19 Jab Genocide Mandate Terry Adirim burrowing in at the CIA?"  Ex. B.  This tweet came just six days after Dr. Adirim entered on duty with Defendant CIA.

41.    Dr. Adirim's position with Defendant CIA was nonpublic information, and indeed classified.  *See* E.O. 13526, *Classified National Security Information* (Dec. 29, 2009) § 1.2(a)(2)

---

[13] Rosanne Barr Podcast at 05:47.

[14] Rosanne Barr Podcast at 08:10.

and 1.4(c).  Defendant CIA told Dr. Adirim not to tell people outside of her family that she worked for the Agency, and the announcement of her appointment on CIA's air-gapped internal computer system was properly classified as secret national defense information.  A photograph or screen shot of this internal CIA announcement later appeared on the internet, in which the information is clearly and properly marked "SECRET/NOFORN." Either someone at Defendant CIA informed Defendant Raiklin of Dr. Adirim's hiring, or the Agency informed someone outside of CIA who told Defendant Raiklin.

42.    The illegal leak of Dr. Adirim's CIA affiliation violated the Privacy Act, 5 U.S.C. § 552a, as both a civil and misdemeanor criminal matter, and the Espionage Act, 18 U.S.C. § 793, as a felony criminal matter.  Dr. Adirim reported the illegal leak of her affiliation to CIA security, but the Agency, DOJ and FBI took no action in response.[15]

43.    On April 2, 2025 Defendant Raiklin's associate and fellow conspiracy theorist Laura Loomer visited President Trump in the White House.  On April 3, 2025 a series of senior officials including National Security Agency director General Timothy Haugh were terminated from their positions.[16] Also on April 3, 2025 Defendant Raiklin tweeted, "For the record, I respect Laura Loomer."  Ex. C.

44.    On April 4, 2025 Ms. Loomer took credit in a tweet for convincing President Trump to fire General Haugh and others, stating, "NSA Director Tim Haugh and his deputy Wendy Noble

---

[15] In striking contrast to DOJ's inaction in Dr. Adirim's case, when Deputy Secretary of State Richard Armitage leaked the CIA affiliation of Agency officer Valerie Plame to the press in 2003, DOJ appointed a U.S. Attorney, Patrick Fitzgerald, as special counsel to investigate the matter. DOJ jailed *New York Times* reporter Judith Miller in an effort to get her to reveal her sources, and convicted Lewis Libby, Vice President Richard Cheney's chief of staff, for false statements to investigators.

[16] *See* M. Haberman, *Trump Fires 6 N.S.C. Officials After Oval Office Meeting With Laura Loomer*, NEW YORK TIMES (Apr. 3, 2025).

have been disloyal to President Trump.  That is why they have been fired … Thank you President Trump for being receptive to the vetting materials provided to you and thank you for firing these Biden holdovers. Vetting matters!"  Ex. I.   That day, President Trump stated that he spoke with Ms. Loomer on April 3, 2025 and listened to her "hiring recommendations."[17]

45.     Also on April 4, 2025 Defendant CIA informed Dr. Adirim of the termination of her employment.  Defendant CIA gave Dr. Adirim no reason for her termination; when she twice asked her supervisor for the reason for her termination, her supervisor answered, "I have no information."  An administrator at Defendant CIA told Dr. Adirim that the Agency "was invoking the clause in her contract that allows termination to occur 'upon thirty (30) day[']s notice by either party for any reason.'"

46.     Dr. Adirim's five-year contract with Defendant CIA is worth over one million dollars.  Defendant CIA fired Dr. Adirim just weeks before her full pension benefits as a career federal employee would vest; she lost, for example, the valuable economic benefit of lifelong government health insurance.

47.     On information and belief, given the sequence of similar events, the circumstantial evidence suggests that Defendant Raiklin asked Ms. Loomer to ask President Trump to fire Dr. Adirim, and that Defendants CIA and Ratcliffe did so at the direction of the White House. Defendants CIA and Ratcliffe can provide no other plausible reason for Dr. Adirim's firing.

48.     The Government Defendants provided a declaration by the fourth-ranking official at Defendant CIA, Deputy Chief Operating Officer Brenda McKinlay, to justify the Agency's termination of Dr. Adirim.  Ms. McKinlay stated that by March 2025,

---

[17] *See* A. Treene, *White House advisers have kept Laura Loomer at bay for months. Then, Trump invited her in.*  CNN (Apr. 5, 2025), available at https://www.cnn.com/2025/04/05/politics/laura-loomer-donald-trump-meeting.

> Dr. Adirim's conduct had already generated multiple complaints by several different CIA officers regarding alleged inappropriate and harassing statements and actions by Dr. Adirim towards them in the workplace. These issues first arose almost immediately after the start of Dr. Adirim's tenure at CIA and continued to accumulate throughout. I first became aware of such concerning allegations in February 2025. A range of concerns relating to Dr. Adirim came to the attention of CIA's senior-most leadership by mid-March 2025.

Dkt. 9-1 at ¶ 6.

49.     This declaration does not identify any misconduct, nor describe the purported complaints, nor detail the alleged "inappropriate and harassing statements and actions by Dr. Adirim" with any information at all.  Dr. Adirim is a sixty-two-year-old wife, mother, and physician, who most recently served as an Assistant Secretary of Defense.  She served as a member of the Senior Executive Service for over ten years, without any similar complaints.  It strains credulity to assert that within three months of her arrival at Defendant CIA, after being heavily vetted by the Agency (including interviews with her previous supervisors), Dr. Adirim suddenly began engaging in "inappropriate and harassing statements" at work, necessitating her immediate termination.  On information and belief, Ms. McKinlay's declaration is a false *post hoc* justification for firing Dr. Adirim, which was actually done for improper political reasons, to satisfy extremists such as Defendant Raiklin and Ms. Loomer at the request of the White House.

50.     On April 8, 2025, Defendant Raiklin re-posted a message stating, "Scoop: Terry Adirim, a senior Central Intelligence Agency official and former senior defense official who played a pivotal and potentially illegal role in the Biden Administration's military vaccine mandate, was recently fired from the agency, a source has revealed exclusively to Breitbart News." Ex. D.  The anonymously-sourced Breitbart article appeared earlier that same day.  Either someone at the Defendant CIA informed Breitbart of Dr. Adirim's termination, or Defendant CIA informed someone outside of the Agency who told Breitbart.

51.     Also on April 8, 2025 Donald Trump, Jr. tweeted the phrase "Bye bye" and an emoji of hands clapping, while attaching a screenshot of the title of the Breitbart article.  Ex. E.  The President's son is functionally a member of his father's Administration, and a powerful one at that.  Trump Jr. makes diplomatic visits and statements on the President's behalf, is the subject of official press releases by the Department of State, and publicly discusses succeeding his father in office.[18]

52.     The illegal leak of the fact of Dr. Adirim's firing by Defendant CIA violated the Privacy Act, Section 552a, as both a civil and misdemeanor criminal matter.  The false and defamatory statement in connection with her firing that Dr. Adirim played a "potentially illegal role in the Biden Administration's military vaccine mandate" stigmatized her, such that she is now unable to find work, despite being a very highly regarded physician, health care leader and former subcabinet official.

**D.     *Defendant Raiklin Openly Expresses His Animus Towards Dr. Adirim.***

53.     On April 13, 2025, Defendant Raiklin stated on CNN that "the nation will be furious" if within twelve months, no one on his "Deep State Target List" is executed.[19]

54.     On May 3, 2025, the day after Dr. Adirim filed her Complaint in this suit, Defendant Raiklin posted on X, "hey [sic] Terry, please look up the words Retribution, Nuremburg 2.0, mutiny, treason."  Ex. J.

---

[18] *See* J. Keaten, *Donald Trump Jr. arrives in Greenland with a message from his dad: 'We're going to treat you well'*, ASSOCIATED PRESS (Jan. 7, 2025); *Secretary of State Marco Rubio with Donald Trump, Jr. of Triggered with Don Jr. Interview*, Dep't of State (Apr. 8, 2025), available at https://www.state.gov/secretary-of-state-marco-rubio-withdonald-trump-jr-of-triggered-with-don-jr; and S. Croucher, *Donald Trump Jr. Hints at Taking Over From Father in Politics*, NEWSWEEK (May 21, 2025).

[19] *The far-right extremist with a 'retribution list,'* CNN (Apr. 10, 2025), available at https://www.cnn.com/2025/04/10/politics/video/maga-far-right-extremist-ivan-raiklin-digvid (on file with CNN) (last visited Aug. 22, 2025).

55.     Also on May 3, 2025 Defendant (and attorney) Raiklin posted on X, "How many times should we force 'vaccinate' @Terru AdirimMD ? [*sic*] How about the total number of 'vaccines' that she compelled throughout the force? Probably millions."  Ex. K.  These tweets falsely claimed that Dr. Adirim forced vaccinations on patients without consent, and implied that she did so to cause them harm.  They also asserted that Dr. Adirim is guilty of a war crime, such that punishment for mutiny or treason under "Nuremburg 2.0" in an apparent reference to the  war crimes prosecutions of Nazi officials following World War II.

56.     On May 6, 2025 Defendant Raiklin made a post concerning these notional "Nuremburg 2.0" proceedings titled, "Ending the Reign of Terry," where he stated of the Plaintiff, "Terry Adirim was the top doctor at the CIA and former DOD [*sic*] Health Official that signed the 'Vaccine' Mandate that destroyed Hundreds of thousands of Servicemembers and family members."  Ex. L.

57.     Previously, while posting a link to someone shooting a gun at a target, Defendant Raiklin posted on X:

> ~8600 thrown out
> ~80 thousand that left early
> ~3.5 million that were duped
> By the @TerryAdirimMD unlawful DOD jab mandate implementation memo
> Accountability is inevitable.

Ex. M.

58.     On May 11, 2025, Defendant Raiklin—after attending court on this matter,—posted on X, "Mass defenestration of those involved in the unlawful jab mandate is the only path forward."  Ex. N.

59.     On July 4, 2025, Defendant Raiklin re-posted a video quoting Alex Jones, who has repeatedly been found liable for defamation, stating, "We know the penalty for this is open and

shut.  They need to get fair trials, and then they need to be hung in public." [*sic*] Defendant Raiklin replied to the video with approval saying, "Legally, Morally, Ethically!  To the Max!"  Ex. O.

60.    Defendant Raiklin , a member of the bar who sat at defense counsel's table during the August 1, 2025 hearing in this matter has, since Dr. Adirim filed her complaint, called for his party opponent to be forcibly vaccinated, thrown out of a window and hanged as a matter of retribution.  Defendant Raiklin also implied that Dr. Adirim should be shot.  Defendant Raiklin participated in the deadly January 6, 2021 assault on the United States Capitol, and is reportedly the lead suspect in the attempted bombing of DNC headquarters that day.  The United States Attorney's Office and the Marshals Service are both aware of Defendant's multiple threats of violence against Dr. Adirim, but to her knowledge, inexplicably no action has been taken by the Department of Justice in response, despite her requests for the same.[20]

61.    Defendant Raiklin made his statements amid troves of publicly available information carefully debunking COVID-19 vaccine conspiracy theories.  For example, far from being "illegal" the DOD vaccine mandate was instituted by President Biden and at the request of Secretary of Defense Lloyd Austin.[21]  Since the introduction of the COVID-19 mRNA and other vaccines, study after study debunked claims that the vaccines cause widespread death, disfigurement, mutilation or genetic defects.[22]  In fact, authoritative studies found that the vaccines

---

[20] Counsel has practiced law for twenty-four years and is unfamiliar with any similar situation in which a party to a lawsuit and member of the bar repeatedly and publicly calls for his party opponent to be killed, and law enforcement is made aware of the death threats, yet does nothing.

[21] *See* U.S. Department of Defense, *Biden to Approve Austin's Request to Make COVID-19 Vaccine Mandatory for Service Members*, https://www.defense.gov/News/News-Stories/article/article/2724982/biden-to-approve-austins-request-to-make-covid-19-vaccine-mandatory-for-service/ (on file with United States Government) (last visited Aug. 22, 2025).

[22] *See* National Institutes of Health, *Death after the Administration of COVID-19 Vaccines Approved by EMA: Has a Causal Relationship Been Demonstrated?*, https://pmc.ncbi.nlm.nih.gov/articles/PMC8875435/ (on file with United States Government) (last

averted millions of deaths between 2020 and 2024.[23]  Still, Defendant Raiklin pursued his specific claims that, by approving vaccination protocols, Dr. Adirim incurred criminal liability for genocide and mutilation.

62.     On information and belief, Defendant Raiklin is aware of, or at the very least recklessly disregards, the inherent improbability of the falsity of his claims.  Defendant Raiklin— an educated attorney and retired Green Beret and field grade officer in the U. S. Army— discounted, ignored or purposely avoided scientific authority on these issues out of animus towards Dr. Adirim and others and out of a financial motive to propagate to his conspiracy theory.  And Defendant Raiklin made the motivation for his actions clear in a series of social media posts calling for the harassment, injury, prosecution, hanging and public castigation of individuals who he hates, including Dr. Adirim specifically.

---

visited Aug. 22, 2025); Mayo Clinic, *Debunking COVID-19 myths*, https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-myths/art-20485720 [https://perma.cc/BLF3-XCFD] (last visited Aug. 22, 2025); Irving Washington and Hagere Yilma, *Pfizer Lawsuit and Debunked Study Undermine COVID-19 Vaccine Recommendations*, https://www.kff.org/health-information-trust/volume-04/ [https://perma.cc/UX9R-H5MU] (last visited Aug. 22, 2025); National Institutes of Health, *Misinformation About COVID-19 Vaccines on Social Media: Rapid Review*, https://pmc.ncbi.nlm.nih.gov/articles/PMC9359307/ (on file with United States Government) (last visited Aug. 22, 2025); Virat Agrawal, Neeraj Sood, and Christopher M. Whaley, *The Impact of the Global COVID-19 Vaccination Campaign on All-Cause Mortality*, https://www.nber.org/papers/w31812 [https://perma.cc/R4VF-8K5N] ((last visited Aug. 22, 2025); Reuters, *Fact check: COVID-19 vaccines won't alter recipient DNA; frontline workers have suffered directly from the virus*, https://www.reuters.com/article/world/fact-check-covid-19-vaccines-wont-alter-recipient-dna-frontline-workers-have-idUSKBN28S2UI/ (on file with Reuters) (last visited Aug. 22, 2025).

[23] *See* John P. A. Ioannidis, *et al.*, *Global Estimates of Lives and Life-Years Saved by COVID-19 Vaccination During 2020-2024*, https://jamanetwork.com/journals/jama-health-forum/fullarticle/2836434 (on file with JAMA Network) (last visited Aug. 22, 2025).

## CLAIMS FOR RELIEF

### COUNT I:
### Violation of the Due Process Clause
### against Defendants CIA and Ratcliffe

63.     Plaintiff incorporates the allegations in all prior paragraphs as if fully set forth herein.

64.     The Fifth Amendment provides that no one may be deprived of a property interest without due process of law.  *See* U.S. CONST. AMEND V.  Dr. Adirim maintains a cognizable property interest in her contract with Defendant CIA, a cognizable liberty interest in pursuing her profession as a doctor and health care administrator, and a procedural right not to be terminated from the Agency with a defamatory statement made about her to Breitbart News on her way out the door, accusing her of "potentially illegal" activity as the reason for her being fired by Defendant CIA.

65.     Defendant CIA is tasked with protecting classified information such as the identity and employment status of Agency officers.  No one other than Defendant CIA and its personnel knew of Dr. Adirim's hiring and firing by the Agency.  Defendant CIA placed a stigma on Dr. Adirim by making a false public statement to Breitbart News that the Agency fired her because of her "potentially illegal" activity at the Defense Department.  Alleged participation in illegal activity falsely suggests serious character flaws on the part of Dr. Adirim.

66.     Defendant CIA relying upon Defendant Raiklin's defamatory statements about Dr. Adirim to fire her, falsely accusing her of illegal misconduct while at the Defense Department, and then falsely claiming that she engaged in workplace harassment, is an unconstitutional violation of her procedural due process rights.

67.     Dr. Adirim's five-year contract with Defendant CIA is worth over one million dollars.   Defendant CIA fired Dr. Adirim just weeks before her full pension benefits as a career federal employee would vest; she lost the benefit of lifelong government health insurance.  Worse, the stigmatizing statement made by Defendant CIA upon Dr. Adirim's firing, that she engaged in potentially illegal misconduct while at the Defense Department, is causing her to be unable to find onward employment in her profession despite her outstanding credentials and experience as a physician and health care executive, causing her tens of thousands of dollars in economic damages every month.  Dr. Adirim rose through succeeding at positions of increasing responsibility within the federal government, most recently as Acting Assistant Secretary of Defense for Health Affairs and as Chief Medical Officer of Defendant CIA.  The only logical explanation for why she is now unemployable is the defamatory statement made by Defendant CIA about her wrongful termination.

68.     Defendant CIA by and through its Director, Defendant Ratcliffe, violated Dr. Adirim's property and liberty interests and procedural rights by terminating her without cause and in a manner that tortiously disparaged her reputation while illegally disclosing nonpublic (and classified) facts protected under the Privacy Act.

## COUNT II:
## Violation of the Privacy Act
## against Defendants CIA and Ratcliffe

69.     Plaintiff incorporates the allegations in all prior paragraphs as if fully set forth herein.

70.     The Privacy Act provides that no federal agency shall disclose any record contained in a system of records to any person, except through a written request by the individual to which the record refers, or pursuant to thirteen exceptions, none of which applies in this case.  *See* 5

U.S.C. § 552a(b).  If an agency fails to comply with the Privacy Act, "in such a way as to have an adverse effect on an individual," that person may bring a civil action against the agency.  5 U.S.C. § 552a(g)(1)(D).

71.     The non-public facts that Dr. Adirim was hired and then terminated by Defendant CIA are contained in the Agency's system of records.  Someone at Defendant CIA leaked to Breitbart News, or a source of Breitbart, that Agency hired Dr. Adirim in December and terminated in April.  Either Defendant CIA or Breitbart's source additionally implied that the reason for Plaintiff's termination was her "potentially illegal role in the Biden Administration's military vaccine mandate."

72.     Because Defendant CIA is tasked with protecting classified information such as the identity and employment status of Agency officers, these unlawful disclosures by CIA are by definition intentional and willful—no one other than the Agency and its personnel knew of Dr. Adirim's hiring and firing by CIA.

73.     Defendant CIA's improper disclosures regarding Plaintiff's hiring, firing, and the alleged reason for her termination caused her grave harm, including being condemned online by Defendant Raiklin as "the architect of the illegal DOD CCP-19 Jab Genocide Mandate" in connection with her termination, resulting in her being held up to vile public abuse, and physically endangering her and her family.

74.     Defendant CIA's illegal leak of Dr. Adirim's classified Agency affiliation caused Defendant Raiklin to call for Defendant Ratcliffe to fire her.  Defendant CIA soon did so, in response to Defendant Raiklin's request to Laura Loomer that she ask President Trump to cause Dr. Adirim to be fired.  This Privacy Act violation cost Dr. Adirim her five-year contract with

Defendant CIA, worth over one million dollars, and retirement benefits including government health insurance.

75.     Defendant CIA's illegal leak of Dr. Adirim's firing, combined with the stigmatizing defamatory statement that she engaged in potentially illegal activity at the Defense Department, is causing her to be unable to find onward employment in her profession.  This Privacy Act violation is causing Dr. Adirim tens of thousands of dollars in economic damages every month.

## COUNT III:
## Defamation *Per Se*
## against Defendant Raiklin

76.     Plaintiff incorporates the allegations in all prior paragraphs as if fully set forth herein.

77.     On October 3, 2024 Defendant Raiklin appeared on Roseanne Barr's publicly available podcast.

78.     During the Barr podcast appearance, Defendant Raiklin identified Dr. Adirim by name and stated that she "signed the memo institutionalizing the illegal vax mandate on the DOD;" that she is "criminally liable and [will] face consequences for genocide and for mutilation;" and that she will "be convicted of genocide and mass mutilation at the very least" (collectively, the "Defamatory Statements").

79.     The Defamatory Statements are of and concerning Dr. Adirim.  While Defendant Raiklin makes general allegations against the individuals on his Deep State Target List, the above statements specifically identified Dr. Adirim by name and related to her specific actions as a medical professional.

80.     The Defamatory Statements are factual (but false) and are reasonably understood as factual (but are false).  Defendant Raiklin accuses Dr. Adirim of instituting an "illegal vax

mandate" on DOD.  In fact, DOD's vaccine mandate is not illegal and was directed by President Biden at the request of Secretary of Defense Lloyd Austin.  Defendant Raiklin's allegations that Dr. Adirim has committed genocide and mutilation are also factual but false.  Genocide is a crime as defined by both the federal criminal code (*see* 18 U.S.C. § 1091) and Article 6 of the Rome Statute and the International Criminal Court's Elements of Crimes.  Mutilation is also a crime as described in Article 8 of the Rome Statute and the International Criminal Court's Elements of Crimes, and it is defined in Black's Law Dictionary.[24]  Virginia law also criminalizes this conduct under Va. Code Ann. § 18.2-51.2.  The Defamatory Statements are therefore disprovable statements of fact.

81.     In fact, at all times, Dr. Adirim adhered to the highest standards required of medical professionals.  She never intentionally inflicted harm, and she certainly never acted with any bad intent that would be cognizable under any criminal statute.

82.     The Defamatory Statements also prejudice Dr. Adirim in her profession and trade. As a medical professional, Dr. Adirim took an oath to do no harm or injustice to those under her care, and she is subject to strict professional and ethical standards relating to this obligation.  The Defamatory Statements accuse Dr. Adirim of subjecting individuals to illegal medical procedures and causing death and/or mutilation to those individuals.  These statements directly injure Dr. Adirim in her profession.  Dr. Adirim is unable to find employment following the wrongful termination of her contract with the CIA.

83.     Individuals who listened to Defendant Raiklin's Defamatory Statements would understand them to be defamatory because they tend to harm Dr. Adirim's reputation and lower it

---

[24] *See, e.g.*, 18 U.S.C. § 2441(d)(1)(E) (defining mutilation in the War Crimes Act); BLACK'S LAW DICTIONARY "Mutilation,", https://thelawdictionary.org/mutilation/ [https://perma.cc/2E7A-Q9TN] (last visited Aug. 21, 2025).

in the estimation of the community or to deter third parties from associating or dealing with Dr. Adirim.  Accusing Dr. Adirim of committing crimes and harming individuals prejudices her in her profession as a medical professional.

84.    Defendant Raiklin made the Defamatory Statements with reckless disregard for the truth and with actual malice, including actual, subjective awareness of their falsity, as evidenced by the overwhelming body of readily accessible information debunking his conspiracy theories, the inherent improbability of his claims, and his repeatedly and explicitly stated intent to harm Dr. Adirim, subject her to criminal prosecution, and cause her to fear for her safety.

85.    Defendant Raiklin knew that his claims regarding deaths and mutilations caused by the COVID-19 vaccine were false, or he recklessly disregarded the truth by, among other actions, discounting or ignoring credible sources of information and adhering to a false narrative despite compelling contrary information.  Defendant Raiklin, a lawyer, further knew that it is illegal for Dr. Adirim to advise on a vaccine policy requested by the Secretary of Defense and ultimately approved by the President.  Defendant Raiklin made his false statements out of personal and political animus towards Dr. Adirim, a financial incentive to stoke conspiracy theories, and with a subjective intent to harm Dr. Adirim and other political opponents.  Defendant Raiklin discounted, ignored or purposely avoided scientific authority on these issues out of animus towards Dr. Adirim and others and out of a financial motive to propagate to his conspiracy theory narrative

86.    Defendant Raiklin holds no applicable privilege or legal authorization to publish the Defamatory Statements or, if he did, he abused such privilege or authorization.

87.    As a direct and proximate result of Defendant Raiklin's Defamatory Statements, Dr. Adirim has suffered substantial economic damage including, among other things, loss of

current and future business opportunities, retirement benefits and such other compounding and growing losses as will be shown at trial.

88.     As a direct and proximate result of Defendant Raiklin's Defamatory Statements, Dr. Adirim suffered severe reputational damage and spent considerable time and resources to correct the public record about and to mitigate the reputational harm she suffered.  She also suffered mental anguish and other emotional harm.

89.     Defendant Raiklin published the Defamatory Statements maliciously, willfully, wantonly, heedlessly, with common law malice, with actual malice, and with a conscious, reckless and willful indifference to Dr. Adirim's rights, and with a desire to cause injury to Dr. Adirim. Accordingly, punitive damages are appropriate.

90.     In view of the foregoing, Dr. Adirim is entitled to actual, presumed and punitive damages in amounts to be specifically determined at trial.

## COUNT IV:
## Conversion
## against Defendant Raiklin

91.     Plaintiff incorporates the allegations in all prior paragraphs as if fully set forth herein.

92.     Pursuant to X's policies relating to direct messages, Dr. Adirim authored the direct messages under her account with an expectation of privacy and by exerting control over the distribution of those messages.   The messages hold informational and relational value to Dr. Adirim.

93.     Defendant Raiklin obtained Dr. Adirim's direct messages without Dr. Adirim's consent and without another lawful basis or authorization to do so.  In so doing, Defendant Raiklin deprived Dr. Adirim of her control over those messages and of the protections expressed in X's

Privacy Policy. Further, obtaining those messages without Dr. Adirim's consent deprived Dr. Adirim of the informational and relational value therein.

94. A copy of Defendant Raiklin's Deep State Target List, available on the internet includes a request to Elon Musk, owner of X, for copies of the 350 individuals' direct messages. Defendant Raiklin subsequently stated on Roseanne Barr's podcast that he indeed obtained Plaintiff's private Twitter/X direct messages. Even if Defendant Raiklin did not obtain the messages, his lie to that effect further illustrates his bad faith, recklessness and malice toward Dr. Adirim.

95. Dr. Adirim holds reasonable expectation that her messages would remain private, as the policy in place indicated they would. Dr. Adirim took no steps to disseminate her own private messages, nor did she authorize Defendant Raiklin to access her messages.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a jury trial on all triable issues.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court enter an award and judgment in their favor, against Defendants as follows:

(a) Injunctive relief, against Defendants CIA and Ratcliffe;

(b) Statutory damages, against Defendants CIA and Ratcliffe;

(c) Compensatory damages, in an amount to be determined, but in excess of $75,000, against all Defendants;

(d) Exemplary and punitive damages against Defendant Raiklin;

(e) Expenses and costs, including attorneys' fees, pursuant to 5 U.S.C. §§ 504 and 552a; and

(f) Such other relief as the Court deems appropriate.

Plaintiff further respectfully requests that the Court hold Defendants jointly and severally liable.

Dated: August 22, 2025                    Respectfully submitted,

                                          /s/ Kevin T. Carroll
                                          Kevin T. Carroll, VSB No. 95292
                                          **Fluet**
                                          1751 Pinnacle Drive
                                          Suite 1000
                                          Tysons, Virginia 22102
                                          T: (703) 590-1234
                                          F: (703) 590-0366
                                          kcarroll@fluet.law
                                          e-file@fluet.law

                                          *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 22, 2025 I caused the foregoing to be served on all counsel of record for the Defendants via CM/ECF.

                                          /s/ Kevin T. Carroll
                                          Kevin T. Carroll, Esq.