IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

TERRY ADIRIM, M.D.                          )
                                            )
      Plaintiff,                            )
                                            )
v.                                          )
                                            )
U.S. CENTRAL INTELLIGENCE AGENCY, et al.)   Case No.: 1:25-cv-00768-MSN-WBP
                                            )
      Defendants.                           )

## DEFENDANT IVAN RAIKLIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

COMES NOW, the Defendant, Ivan Raiklin ("Raiklin"), by Counsel, and in and for his

Memorandum in Support of Motion to Dismiss First Amended Complaint state as follows:

### I.    INTRODUCTION

This is a retaliatory action by Terry Adirim, M.D. ("Dr. Adirim") who was hired and

terminated by the CIA. She makes conclusory allegations against the CIA, Director Ratcliff and

Ivan Raiklin ("Raiklin") regarding the reasons for her termination. Dr. Adirim also challenges

Raiklin's opinions regarding the mandatory vaccination program instituted for service members.

Raiklin opposed the program and believes, in his opinion, it led to deaths. In her Original

Complaint, Dr. Adirim alleged Raiklin defamed her, stole her private X messages, intentionally

caused her to suffer emotional distress and wrongfully interfered with her employment with the

CIA. Following full briefing and argument, this Court granted Defendants' Motion to Dismiss the

Complaint without prejudice. (ECF 23 & 40). The First Amended Complaint abandons the

emotional distress and speculative intentional interference claims, limiting the action to

defamation *per se* and conversion. This case now comes before the Court on a 12(b)(6) Motion to

Dismiss Plaintiff's First Amended Complaint.

## II.    ALLEGATIONS IN COMPLAINT

Dr. Adirim recommended military service members receive mandatory COVID-19 vaccines. Am. Compl. at ¶ 23. Raiklin opposed the imposition of mandatory vaccines and claims the COVID-19 vaccines were responsible for causing deaths. *Id.* at ¶ 29. Raiklin placed Plaintiff's name on a list of individuals he considers guilty of treason. *Id.* at ¶ 30. Dr. Adirim alleges Raiklin stated on a podcast that she "signed the memo institutionalizing the illegal vax mandate on the DOD;" that she is "criminally liable and [will] face consequences for genocide and mutilation;" and that she will "be convicted of genocide and mass mutilation at the very least." *Id.* at ¶ 78. Dr. Adirim claims these statements are false and were made with knowledge of their falsity. She further claims multiple studies have "debunked claims that the vaccines cause widespread death, disfigurement, mutilation or genetic defects." *Id.* at ¶ 61.

As it relates to her private X messages, Dr. Adirim claims she authored "the direct messages under her account with an expectation of privacy." *Id.* at ¶ 92. She claims the "messages hold informational and relational value" and were obtained by Raiklin without Dr. Adirim's consent. *Id.* at ¶¶ 92-93.

## III.    STANDARD OF REVIEW

The court, "in deciding a Rule 12(b)(6) motion, must take all well-pleaded material allegations of a complaint as admitted and review them in the light most favorable to the plaintiff." *De Sole v. United States*, 947 F.2d 1171 (4th Cir. 1991). "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F. 3d 250, 255 (4th Cir. 2009). Under the standard established by *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), compliance with Fed. R. Civ. P. 8(a)(2) requires more than "labels and conclusions,"

and a complaint must "state a claim to relief that is plausible on its face." *Id.* Facts that are merely consistent with a defendant's liability are insufficient to state a plausible claim. *Id.*

To survive a motion to dismiss, the "factual allegations must be enough to raise a right to relief above a speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d at 180 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). It is the court's obligation to "determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (quoting *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (internal quotation marks omitted).

In *Twombly*, the court rejected the prior rule, set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court stated that *Conley*'s "no set of facts" standard had "earned its retirement" and the "phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563. Instead, the *Twombly* court stated that Fed. R. Civ. P. 8 requires a greater showing – a complaint must present enough facts to state an entitlement to relief that is "plausible" on its face. *Id.* at 570.

## IV.    LAW AND ARGUMENT

The allegations in the First Amended Complaint fail to state a plausible claim for relief against Raiklin. As with the Original Complaint, the defamation claims fail because the statements at issue are not actionable and the allegations in the First Amended Complaint continue to fail to demonstrate actual malice. The conversion claim fails under Virginia law because Dr. Adirim's private Twitter/X communications are intangible property, not covered by the tort. Plaintiff has no

reasonable expectation of privacy in communications shared with third parties. Therefore, Defendant's Motion to Dismiss the First Amended Complaint should be granted and Dr. Adirim's claims against Raiklin dismissed with prejudice.

### A. The Allegations in the Complaint fail to state claim of Defamation *per se.*

The elements of defamation under Virginia law are (1) publication of (2) an actionable statement with (3) the requisite intent. *See Jordan v. Kollman*, 269 Va. 569, 575 (2005). Dr. Adirim has now narrowed her claim to three statements made on the Barr podcast: (1) Dr. Adirim "signed the memo institutionalizing the illegal vax mandate on the DOD;" (2) Dr. Adirim is "criminally liable and [will] face consequences for genocide and for mutilation;" and (3) Dr. Adirim will "be convicted of genocide and mass mutilation at the very least." Am. Compl. at ¶ 78. These statements are not actionable in defamation because they are expressions of opinion and, even if actionable, the allegations fail to plausibly demonstrate New York Times actual malice.

i.     The alleged statements are inactionable expressions of opinion.

"To be actionable, the statement must be both false and defamatory."[1] *Jordan*, 269 Va. at 575. "Statements of opinion are generally not actionable because such statements cannot be objectively characterized as true or false." *Id.* "Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion." *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 132-33 (2003). If a statement is not opinion, the plaintiff in a defamation action has the burden of proving that the statement is false. *Jordan*, 269 Va. at 576; *see also Williams v. Garraghty*, 249 Va. 224, 235 (1995). A defendant's statement of his or her subjective

---

[1] Even when statements involve the commission of a crime to support a defamation per se theory, a plaintiff must still prove the remaining elements of falsity, publication and intent. *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709 (2006) (evaluating whether statements related to plaintiff's profession were statements of opinion). When a statement supports an action for defamation per se the plaintiff is only relieved of her obligation to prove special damages.

analysis of fully disclosed facts is generally not actionable. *See Schaecher v. Bouffault*, 290 Va. 83, 105 (2015).

Each of the three statements identified by Dr. Adirim are statements of opinion. The application of the law to a set of facts forms a conclusion, making it an opinion rather than a verifiable fact. In *Goulmanine v. CVS Pharm., Inc.*, 138 F. Supp. 3d 652, 660 (E.D. Va. 2015) the district court explained the two caveats to the general rule that statements of opinion are not actionable. Opinions may be actionable when (1) they have a provably false connotation and are capable of being proven true or false, and (2) the underlying facts are false. Dr. Adirim's conduct in this case is widely known and is undisputed: she was the architect of the vaccine mandate implementation. The dispute surrounds whether her admitted conduct is unlawful/criminal and Raiklin's comments reflect his subjective analysis of the potential legal consequences of the mandate implementation. These are his subjective opinions regarding the scope and magnitude of Dr. Adirim's fully disclosed conduct and are not actionable in defamation.

Virginia requires an examination of context in evaluating whether a statement constitutes opinion. *Snyder v. Phelps*, 580 F.3d 206, 219-20 (4th Cir. 2009) (stating courts must "assess how an objective, reasonable reader would understand the challenged statement by focusing on the plain language of the statement in the context and general tenor of its message"). A reasonable person could "only regard [Raiklin's comments related to Dr. Adirim] as a relative statement of opinion ground upon the speaker's obvious bias." *Chaves v. Johnson*, 230 Va. 112, 119 (1985). "No reasonable [listener] would consider the [statements as] anything but the opinion of the [speaker] drawn from the circumstances related." *Chapin v. Knight-Ridder, Inc.*, 993 F.3d 1087, 1093 (4th Cir. 1994). In Raiklin's opinion, Dr. Adirim's undisputed conduct is criminal and he believes she will face consequences for her role in the implementation of the vaccine mandate.

"Our country has a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open; that commitment must be honored even when – indeed, especially when – the debate includes vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Patel v. CNN, Inc.*, 83 Va. App. 387, 406-407 (Va. App. 2025) (internal citations omitted). Such "vilification" is a tool of persuasion and is protected not just by the actual malice standard, as discussed in *Patel*, but by the requirement that a statement be actionable rather than "rhetorical hyperbole". *See Schaecher v. Bouffault*, 290 Va. 83, 92 (2015); *see also Marroquin v. Exxon Mobil Corp.*, 2009 U.S. LEXIS 44834, *23 (E.D. Va. 2009) (holding statements cited by plaintiff were "an opinion of the scope and magnitude of" admitted conduct and not actionable). Raiklin's statements are not actionable statements of fact and the motion to dismiss should be granted and the case dismissed with prejudice.

ii.    Even if Raiklin's statements are actionable, Plaintiff fails to allege actual malice.

The requisite intent for defamation is determined by the status of the plaintiff. For a public figure to recover for a defamation claim, they must show the allegedly defamatory statement was made with actual malice. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). A finding of actual malice requires that the statement be made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* "The evidence must establish that the defendant had a high degree of awareness of probable falsity." *Shenandoah Publishing House, Inc. v. Gunter*, 245 Va. 320, 324 (1993) (*citing Harte-Hankes Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989)). "Actual malice demands subjective knowledge of likely falsity" *Blankenship v. NBC Universal, LLC*, 60 F. 4th 744, 768 (4th Cir. 2023).

New York Times actual malice is a subjective inquiry. *Bose Corp. v. Consumers Union*, 466 U.S. 486, n. 30 (1984) (noting plaintiff must prove the defendant realized his statements were

false or that he subjectively entertained serious doubts); *Blankenship*, 60 F. 4th at 768 ("actual malice demands subjective knowledge of likely falsity"); *Fairfax v. N.Y. Pub. Radio*, 2023 U.S. Dist. LEXIS 81984 (E.D. Va. 2023) (noting actual malice is ultimately a subjective inquiry). In *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) the United States Supreme Court explained that "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing" and that "there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."

To show actual malice, a plaintiff must allege the defendant made the defamatory statement with either 1) knowledge that it was false, or 2) reckless disregard for whether it was false or not. *See Gazette, Inc. v. Harris*, 229 Va. 1, 9 (1985). While evidence of ill will and financial motive may be relevant to the inquiry, they are insufficient on their own. *See Eramo v. Rolling Strong, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016) (stating that while it bears relevance to the inquiry, "actual malice cannot be inferred from ill will or intent to injure alone."); *See also Gilmore v. Jones*, 2021 WL 68684 (W.D. Va. Jan. 8, 2021) (holding that specific profit motive is relevant, but not sufficient to prove, actual malice).

Dr. Adirim fails to allege any facts to demonstrate there is no objective basis for Raiklin's belief that the vaccinations "ended up killing lots of people." Am. Compl. ¶ 29. The Amended Complaint relies on a collection of articles that allegedly debunk claims of *widespread* death, disfigurement, mutilation or genetic defects. *Id.* at ¶ 61. Plaintiff does not allege there is *no* causal link between any service member death and the vaccine mandate implementation. The first article listed states: "There have been 55 cases of death after COVID-19 vaccination reported and a causal relationship has been excluded in 17 cases. In the remaining cases, the causal link between the

vaccine and the death was not specified (8) considered possible (15), probable (1), or very probable/demonstrated (14)." National Institutes of Health, *Death after the Administration of COVID-19 Vaccines Approved by EMA: Has a Causal Relationship Been Demonstrated?*, https://pmc.ncbi.nlm.nih.gov/articles/PMC8875435/#sec4-vaccines-10-00308 (last visited September 1, 2025).

This article reinforces the arguments set forth in Section A(i) above, as the dispute plainly surrounds Raiklin's subjective assessment of the scope and magnitude of the adverse health effects causally related to the "vaccines"[2] and the morality and legality of the mandate. Accepting the data presented by Dr. Adirim at this stage, Raiklin believes 14 probable/demonstrated service member deaths causally related to a mandated vaccine to be morally repugnant and criminal. He also considers the death of 14 service members to be "a lot" and believes Dr. Adirim is morally responsible for and should face consequences for the deaths of these service members. Dr. Adirim focuses her assessment on the lives saved by the vaccine and considers 14 service members to be comparatively small in light of the dangers of COVID-19. Both opinions have value in robust debate over public health policy.[3] Neither opinion is actionable in defamation.

As in the original Complaint, Dr. Adirim merely argues that Raiklin's subjective opinions are *wrong* and seeks to silence him. She argues Raiklin is motivated by profit and personal animus against her. The actual malice standard "properly understood, protects freedom of expression specifically for those who harbor ill will towards [public] officials, publish defamatory statements for profit, or 'resort to exaggeration' or even 'vilification' to 'persuade others to [their] own point."

---

[2] To be a vaccine rather than an emergency use authorized product it must be FDA approved.
[3] This is essentially the trolley problem, wherein Raiklin takes the deontological view that forcing service members to receive a vaccine that may cause harm to some is wrong, regardless of the outcome, while Dr. Adirim takes the utilitarian view that the public good justifies forcing service members to receive a vaccine, notwithstanding the risk of harm to some.

*Patel v. CNN, Inc.*, 83 Va. App. 387, 411 (2025) (*citing Sullivan*, 376 U.S. at 271; *Harte-Hanks*, 491 U.S. at 667). Dr. Adirim must allege facts to demonstrate Raiklin had "a high degree of subjective awareness" that his statements were "probabl[y] false." *Id.* (*citing Jackson*, 274 Va. at 230). Even accepting Dr. Adirim's own evidence, however, it is apparent Raiklin has an objective basis for his subjective view that the vaccine mandate caused deaths for which, he believes, Dr. Adirim should bear moral, ethical and legal responsibility. Therefore, Raiklin's motion to dismiss must be granted because the allegations of the First Amended Complaint do not plausibly allege actual malice.

Raiklin's Motion to Dismiss Count III should be granted and the defamation claims dismissed with prejudice.

### B. The Allegations in the Complaint fail to state a claim for Conversion.

Dr. Adirim has no property interest in her private X messages to support a conversion claim under Virginia law. The elements of conversion are "(i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession." *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001) (*citing Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75-76 (1956) (defining conversion as the wrongful assumption of authority "over another's goods, depriving him of their possession").

Conversion generally applies to tangible property and not intangible property. *See Williams v. Reynolds*, 2006 U.S. Dist. LEXIS 79178, *12 (W.D. Va. 2006). In *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994) the Virginia Supreme Court noted the tort of conversion may be recognized in cases where "intangible property rights arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond." Some district courts have found certain

intangible business information can be subject to conversion. *In Re Outsidewlal Tire Litig.*, Case No. 1:09cv1217, 2010 U.S. Dist. LEXIS 73729 (E.D. Va. July 21, 2010) (finding blueprints were property that could be converted); *Combined Ins. Co. of Am. V. Wiest*, 578 F. Supp. 2d 822 (W.D. Va. 2008) (finding company's targeted recruitment list was property that could be converted). In *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 2011 U.S. Dist. LEXIS 113702 (E.D. Va. 2011), the Eastern District concluded that "if confronted with the issue, the Supreme Court of Virginia would . . . permit a conversion action for . . . confidential business information about the manufacturing process and about a company's business plans."

Dr. Adirim claims Raiklin obtained copies of Plaintiff's private Twitter/X direct messages.[4] There are still no allegations regarding the nature or content of the messages. Dr. Adirim vaguely alleges the messages "hold informational and relational value" to her. Am. Compl. ¶ 92. She alleges a general expectation of privacy in her private X messages, but this is neither correct[5] nor relevant to evaluating whether the messages possess the kind of information necessary to be considered "property" for conversion claims under Virginia law. There are no allegations that the messages include "confidential business information" or should otherwise be considered

---

[4] It is not clear from the Complaint why these messages were "wrongfully obtained". If Twitter/X turned over the documents without authority to do so, Adirim's remedy would be against Twitter/X. If intended recipients shared the messages or if Twitter/X turned over the documents with authority to do so, the messages are not wrongfully obtained.

[5] *See United States v. Sporn*, 2022 U.S. Dist. LEXIS 39070, *22-*29 (Kas. 2022) (reviewing the Terms of Service and explaining why the defendant had neither a reasonable expectation of privacy in his private messages nor any meaningful possessory interest in his own content). "[H]is voluntary consent to Twitter's broad TOS not only renders his claimed expectation of privacy unreasonable, it also sharply circumscribes whatever possessory interest he might otherwise have had in the preservation file." *Id.* The Court further explains "Twitter users 'own' their content only in the sense that they can post it without losing whatever 'title' they might have to it, but the TOS establishes that the content (and the entire account) can be deleted by Twitter at any time." *Id.* The court concludes Twitter's "unilateral right to publish account content is inconsistent with either a reasonable expectation of privacy, or any exclusive possessory or property right." *Id.* at *30.

"property" for a conversion claim under Virginia law. *See In re Cap. One Fin. Corp.*, 2025 U.S. Dist. LEXIS 104577, *34 (E.D. Va. June 2, 2025) (holding tracking codes are not "property" for a conversion claim); *Am. Conservative Union v. Inst. For Legis. Analysis*, 2025 U.S. Dist. LEXIS 27448, *27 (E.D. Va. Feb. 13, 2025) (dismissing conversion claim premised on plaintiff's alleged trade secret and other non-public information because it was premised on intangible property).

Therefore, Dr. Adirim's conversion claim based on intangible property should be dismissed with prejudice.

## V.    CONCLUSION

WHEREFORE, the foregoing considered, Defendant Ivan Raiklin, Esq. by counsel, moves this Court to grant his motion to dismiss and dismiss this case with prejudice.

IVAN RAIKLIN, ESQ.
By Counsel

**McGAVIN, BOYCE, BARDOT,**
**THORSEN & KATZ, P.C.**

*/s/ John D. McGavin*
John D. McGavin (VSB 21794)
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:    (703) 385-1000
Facsimile:    (703) 385-1555
jmcgavin@mbbtklaw.com
*Counsel for Defendant Ivan Raiklin, Esq.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of September, 2025, I electronically filed the

foregoing pleading using the CM/ECF System, which will send notifications of the filing to all

counsel of record:


Kevin Thomas Carroll, Esq.
Fluet & Associates, PLLC
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22103
kcarroll@fluet.law
*Counsel for Plaintiff*

Carolyn M. Wesnouski, Esq.
DOJ-USAO
2100 Jamieson Avenue
Alexandria, VA 22315
Carolyn.wesnousky@usdoj.gov
*Counsel for U.S. Central Intelligence Agency
And John Ratcliffe*


                                        */s/ John D. McGavin*
                                        John D. McGavin (VSB 21794)

**McGavin, Boyce, Bardot, Thorsen & Katz, PC**
9990 Fairfax Boulevard, Suite 400 | Fairfax, VA 22030 | Tel: 703.385.1000 | Fax: 703.385.1555