IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TERRY ADIRIM, MD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 25-cv-00768-MSN-WBP |
| v. ) | |
| ) | |
| U.S. CENTRAL INTELLIGENCE ) | |
| AGENCY, *et al.* ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF TERRY ADIRIM'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT**

**INTRODUCTION**

Plaintiff Terry Adirm, MD ("Dr. Adirim") respectfully submits this memorandum of law in support of her motion for leave to amend the operative First Amended Complaint. Dkt. No. 45.

**BACKGROUND**

Dr. Adirim served as acting Assistant Secretary of Defense for Health Affairs during the coronavirus pandemic. She wisely advised Secretary of Defense Lloyd Austin to vaccinate servicemembers, likely saving hundreds of lives. Defendant the Central Intelligence Agency ("CIA") subsequently recruited Dr. Adirim to lead its Center for Global Health Services. Within days of Dr. Adirim's entry on to duty with CIA in December 2024, someone at the Agency criminally leaked the fact, properly classified as SECRET/NOFORN, of her new employment to a fervent opponent of the military's coronavirus vaccine mandate, Defendant Ivan Raiklin.[1] *See* Dkt. No. 45 ¶ 3.

---

[1] Defendant Raiklin falsely and publicly accuses Dr. Adirim of treason, genocide, war crimes, homicide and mutilation; threatens to release her private correspondence; and calls for her to be "swatted" and executed. Dkt. No. 45 ¶ 4.

1

In March 2025, CIA's third-ranking official, the Chief Operating Officer, complimented Dr. Adirim's performance as Director of the Center for Global Health Services and expressed support for her future at the Agency. *Id*. at ¶ 27. On April 4, 2025, CIA suddenly terminated Dr. Adirim. *Id*. at ¶ 45. Dr. Adirim asked twice for the reason for her termination and her supervisor stated, "I have no information." *Id*. Dr. Adirim's termination took place amid a purge of senior national security officials following an April 2, 2025 meeting between President Trump and conspiracy theorist and extremist Laura Loomer, an associate of Raiklin. *Id.* ¶ 43. Raiklin publicly praised Loomer at that time. *Id*. at ¶ 43.

On April 8, 2025, Raiklin posted a message stating, "Scoop: Terry Adirim, a senior [CIA] official and former senior defense official who played a pivotal and potentially illegal role in the Biden Administration's military vaccine mandate, was recently fired from the agency, a source has revealed exclusively to Breitbart News." *Id*. at ¶ 10. An anonymously-sourced Breitbart News article with the same claim appeared earlier that day, adding the defamatory statement that Dr. Adirim played a "potentially illegal role in the Biden Administration's military vaccine mandate." *Id*.[2]

Dr. Adirim's five-year contract with CIA is worth over one million dollars and the Agency fired her just weeks before her full pension benefits vested. *Id*. at ¶ 46. Since being wrongfully terminated and defamed, Dr. Adirim is unable to secure employment commensurate with her extensive experience and established career as a physician and senior leader in healthcare, effectively foreclosing her liberty to continue in her chosen profession. *Id*. at ¶ 14.

---

[2] Later that day Donald Trump, Jr. tweeted the phrase "Bye bye" and an emoji of hands clapping, while attaching a screenshot of the title of the Breitbart article about Dr. Adirim. *Id*. at ¶ 11.

In Dr. Adirim's First Amended Complaint, she alleges that CIA and Defendant John Ratcliffe terminated her employment in an act of political retribution in service of extremist conspiracy theories advanced by Defendant Raiklin and stigmatized her with a defamatory public statement about her termination, impinging upon her liberty interest in pursuing her profession, and violating her privacy rights. *See* Dkt. No. 45. She asserts violations of the Due Process Clause of the Fifth Amendment and of the Privacy Act, 5 U.S.C. § 552a, and separately asserts tort claims of defamation *per se* and conversion against Defendant Raiklin. *See id.* at ¶¶ 63-95.

Throughout this lawsuit, CIA and Ratcliffe rejected Dr. Adirim's allegation that they terminated her employment in an act of political retribution. *See* Dkt. Nos. 9, 37, 44; *see also* Dkt. No. 49. The Government Defendants termed Dr. Adirim's theory of her case as "at best, far-reaching speculation" with "little to no support other than her say-so" and "a speculative and unsupported theory as to why she was terminated that has no relation to actual events." Dkt. No. 9 at 19.

At oral argument on Plaintiff's Motion for Temporary Restraining Order, the Government stated that "CIA's decision to terminate Dr. Adirim's contract had nothing to do with Laura Loomer, with Ivan Raiklin, or with Dr. Adirim's role at the DoD related to the COVID vaccines." Dkt. No. 11 at 11:14-17. The Government continued to state that "CIA actually began reviewing the circumstances of Dr. Adirim's tenure and her onboarding well before this alleged April 2nd White House meeting with Laura Loomer, and that review began weeks before the April 2nd meeting and didn't have anything to do, again, with Loomer, Raiklin, or the COVID vaccinations." *Id*. at 11:22-12:2. The Government claimed that "concerns regarding Dr. Adirim's onboarding and the multiple complaints regarding her conduct only months into her new position led the CIA to exercise the termination provision of her contract." *Id*. at 12:17-20. The Government concluded that CIA's

decision to terminate Dr. Adirim "had no connection to … Dr. Adirim's role with respect to DoD's COVID vaccine." *Id*. at 12:22-25.

The Government proffered a declaration by CIA's fourth-ranking official, Deputy Chief Operating Officer Brenda McKinlay, to justify terminating Dr. Adirim. McKinlay stated that by March 2025,

> Dr. Adirim's conduct had already generated multiple complaints by several different CIA officers regarding alleged inappropriate and harassing statements and actions by Dr. Adirim towards them in the workplace. These issues first arose almost immediately after the start of Dr. Adirim's tenure at CIA and continued to accumulate throughout. I first became aware of such concerning allegations in February 2025. A range of concerns relating to Dr. Adirim came to the attention of CIA's senior-most leadership by mid-March 2025.

Dkt. No. 9, Ex. 1 at ¶ 6.

However, these purported justifications collapse when examined with the benefit of evidence not available to Plaintiff until October 20, 2025. Since the filing of Dr. Adirim's First Amended Complaint, new evidence emerged that provides compelling insight into the actual, unlawful motivation behind the Government Defendants' decision to terminate Dr. Adirim. On October 20, 2025, the Reuters news service reported an exclusive story by Jonathan Landay, Sarah Lynch and Phil Stewart entitled *Wide-ranging group of US officials pursues Trump's fight against 'Deep State,'* attached hereto as Ex. A.

Reuters reported that since at least May 2025, a "group of dozens of officials from across the federal government, including U.S. intelligence officers, has been helping to steer President Donald Trump's drive for retribution against his perceived enemies, according to government records and a source familiar with the effort." *Id*. The "Interagency Weaponization Working Group" (IWWG) includes officials from the White House, Office of the Director of

National Intelligence ("ODNI"), CIA, and Justice and Defense Departments. Neither the White House nor ODNI denied the Reuters report.

Reuters noted that while the Justice Department and CIA did not immediately respond to a request for comment, the Agency "is legally prohibited from conducting operations against Americans or inside the U.S. except under very limited and specific circumstances." *Id.*; *see also CIA's Updated Executive Order 12333 Attorney General Guidelines*, attached hereto as Ex. B (stating that the National Security Act prohibits CIA from "engaging in law enforcement or internal security functions"). CIA is statutorily forbidden from exercising "police, subpoena, or law enforcement powers or internal security functions." 50 U.S.C § 3036(d)(1), *Director of the Central Intelligence Agency*. Yet Reuters reports that "documents show the involvement of two CIA officers" in the IWWG. *Id*.

The IWWG reportedly features "COVID-19 vaccine mandate opponents" and among its primary targets are "former top U.S. military commanders who implemented orders to make COVID-19 vaccinations compulsory for servicemembers." *Id.* An ODNI official belonging to the group, Carolyn Rocco, "signed a January 1, 2024, open letter pledging to seek [courts-martial] for senior military commanders who made the shots mandatory for service members." *Id*; *see also* "An Open Letter to the American People from signatories of this Declaration of Military Accountability," attached here to as Ex. C.

Raiklin co-signed that letter with Rocco, with whom he also appears on podcasts. "Joe Oltmann Live with Ivan Raiklin and Carolyn Rocco—Accountability for Military Service Members," attached hereto as Ex. D. Raiklin and Rocco jointly attend events sponsored by Raiklin's employer America's Future. "American Exceptionalism Celebration," attached hereto as Ex. E. Rocco repeatedly posts negative commentary on social media sites such as LinkedIn

about Dr. Adirim. "Terry Adirim Day" and "Riddle me this, Batman," attached hereto as Exs. E-G.

On October 21, 2025, the New York Post reported that the IWWG began to meet in earnest April 2025, the same month CIA terminated Dr. Adirim. *See* J. Christenson, *Trump agencies 'working to undo' past abuses under Biden*, available at https://nypost.com/2025/10/21/us-news/trump-agencies-working-to-undo-past-abuses-under-biden-including-calling-posts-hunter-biden-scrop-russian-hoax/ (last accessed Oct. 24, 2025). Attorney General Pam Bondi established the group in early February, *see* A. Mallin, *Bondi, as new AG, launches 'Weaponization Working Group' to review officials who investigated Trump*, ABC NEWS (Feb. 5, 2025), pursuant to Executive Order 14147, *Ending the Weaponization of the Federal Government* (Jan. 20, 2025), attached hereto as Exs. H-I.

> Executive Order 14147 states:
>
> The Director of National Intelligence, in consultation with the heads of the appropriate departments and agencies within the Intelligence Community, shall take all appropriate action to review the activities of the Intelligence Community over the last 4 years and identify any instances where the Intelligence Community's conduct appears to have been contrary to the purposes and policies of this order, and prepare a report to be submitted to the President, through the Deputy Chief of Staff for Policy and the National Security Advisor, with recommendations for appropriate remedial actions to be taken to fulfill the purposes and policies of this order. The term "Intelligence Community" has the meaning given the term in section 3003 of title 50, United States Code.
>
> Section 3003 (4)(A)-(B) provides that the term "Intelligence Community" includes

ODNI and CIA.

Upon the reopening of the Executive Branch, Dr. Adirim will submit Freedom of Information Act ("FOIA") requests to the Executive Office of the President, the Departments of

Justice and Defense, ODNI and CIA for any records between January 20 and April 8, 2025, regarding Dr. Adirim and/or the IWWG.

Dr. Adirim's counsel conferred with Defendants' counsel via email on October 24, 2025, regarding her intent to seek leave to amend. Dr. Adirim's counsel explained the basis for the proposed amendment, including the recently discovered evidence bearing directly on Dr. Adirim's claims. The Government Defendants' counsel responded that same day that they oppose Dr. Adirim's motion. *See* email chain between the parties, attached hereto as Ex. J. The parties thoroughly discussed their respective positions but are unable to resolve their disagreement, necessitating the Court's intervention on this matter.

## PROCEDURAL HISTORY

Dr. Adirim sought injunctive relief on May 2, 2025, to prevent her termination from CIA. Dkt. No. 3. The Court denied temporary relief on May 9, 2025. Dkt. No. 12. CIA and Ratcliffe moved to dismiss Dr. Adirim's claims on July 24, 2025, Dkt. Nos. 35-36, and that motion remains pending. Motions to dismiss by Defendants America's Future, Inc. and Raiklin followed, and on August 1, 2025, the Court dismissed Dr. Adirim's claims against America's Future with prejudice, while dismissing her claims against Raiklin without prejudice. Dkt. No. 40. Dr. Adirim filed a First Amended Complaint on August 22, 2025. Dkt. No. 45. The Government Defendants stand on their original motion to dismiss papers and waived argument. Dkt. No. 49. Defendant Raiklin filed a motion to dismiss the First Amended Complaint on September 4, 2025. Dkt. No. 46. Argument on Defendant Raiklin's motion to dismiss is set for October 31, 2025.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure allow a party to file a second or subsequent amendment to a pleading either with "the opposing party's written consent or the court's leave." Fed. R. Civ. P.

15(a)(2). When an opposing party does not consent to the amendment, as in this case, the rule states that the court "should freely give leave when justice so requires." *Id*.

The Fourth Circuit consistently upholds a liberal policy of permitting amendments in accordance with the spirit of Rule 15. *See Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). A court should only deny a motion to amend in exceptional circumstances: when the amendment would prejudice the opposing party, when the moving party acted in bad faith, or when the amendment is futile. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). None of these exceptional circumstances exist in this case; therefore, the Court should grant leave to amend. *See Sectek v. Diamond*, 2016 WL 3033455 at *3 (E.D. Va. May 27, 2016) (Nachmanoff, J.) (permitting amended complaints under Rule 15(a)(2)).

## ARGUMENT

The new evidence related to the IWWG points to a factual basis for Dr. Adirim's Constitutional claims. Indeed, the Reuters article confirms that Dr. Adirim's original allegations relating to stigma and motive—far from mere speculation—lay grounded in facts previously unknown to the general public. With FOIA requests, and through discovery in this case, Dr. Adirim reasonably anticipates that external corroboration will validate her account and undermine Defendants' pretextual justifications for her termination.

CIA's assertion that its decision to terminate Dr. Adirim is not connected to Dr. Adirim's role with respect to military COVID vaccines is cast deeply into doubt by reports of the Agency's illegal participation in the IWWG. This group includes vaccine opponents such as Raiklin's associate, ODNI official Rocco, and targets former military officials—presumably Dr. Adirim—regarding their roles in servicemembers' compulsory vaccinations.

8

The sworn declaration by CIA's McKinlay, relied upon by the Government in its motion to dismiss, alleging that within weeks of onboarding, Dr. Adirim generated multiple complaints regarding inappropriate statements and harassing actions, always lacked credibility. McKinlay's declaration did not actually describe any of the alleged misconduct by Dr. Adirim, a sixty-two-year-old wife, mother, and physician who served as an Assistant Secretary of Defense and as a Senior Executive Service member for a decade without any such complaints. In light of Reuters' reporting that the IWWG (in which CIA illegally participates) includes Raiklin's associate, vaccine opponent Rocco, who posts about Dr. Adirim, and targets former military officials regarding compulsory vaccinations for servicemembers, it is likely McKinlay's declaration is in fact false.

Further, Plaintiff's "stigma-plus" claim is even stronger in light of this task force purpose-built for purging from government people such as Dr. Adirim who supported COVID-19 vaccines. Plaintiff seeks to incorporate these facts—previously unavailable to her—into her Complaint in light of the Government Defendants' allegations that Dr. Adirim's claims are mere speculation, or fail to plead necessary elements.

Based on compelling new evidence which materially strengthens Dr. Adirim's case and exposes the Government Defendants' pretextual justifications, Plaintiff moves for leave to amend her First Amended Complaint to fully address her now externally corroborated claims. Specifically, Dr. Adirim intends to amend her claims to include that CIA terminated and stigmatized her in an act of political retribution, in violation of her due process and privacy rights, armed with the knowledge that the Agency is illegally participating in a group targeting former military officials regarding servicemembers' vaccinations, which includes an associate of CIA's co-Defendant Raiklin, who posts derogatory commentary on social media about Plaintiff.

Dr. Adirim intends to add these additional facts, additional defendants such as Rocco, ODNI and Director of National Intelligence Tulsi Gabbard, and additional causes of action such as 42 U.S.C. § 1983, *Civil action for deprivation of rights.* The interest of justice is paramount, and here, is clearly advanced by allowing Dr. Adirim to pursue her claims against Defendants with the full support of this newly emerged and crucial corroboration.

In addition to the compelling justification for amendment, granting Dr. Adirim leave to file a second amended complaint will not prejudice Defendants—particularly where the Government did not respond in substance to the First Amended Complaint, and argument on Raiklin's motion to dismiss the tort claims against him may still proceed on October 31, 2025. Dr. Adirim shows no bad faith, learning only on October 20, 2025, of the CIA's illegal participation in the IWWG, and of Raiklin's associate Rocco's targeting of former military officials such as herself. Amendment is also not futile as a cause of action under Section 1983 would be added to Dr. Adirim's existing, meritorious Due Process and Privacy Act claims.

## CONCLUSION

For the foregoing reasons, Dr. Adirim's Motion for Leave to Amend should be granted.

Dated: October 24, 2025                Respectfully submitted,

/s/ Kevin Carroll
Kevin Carroll, VSB No. 95292
Warren Bianchi, *pro hac vice*
**Fluet**
1751 Pinnacle Drive, Suite 1000
Tysons, Virginia 22102
T: (703) 590-1234
F: (703) 590-0366
kcarroll@fluet.law
wbianchi@fluet.law
e-file@fluet.law

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 24, 2025, I caused the foregoing to be served on all counsel of record for the Defendants via CM/ECF and that the exhibits filed via flash drive were served via e-mail on the following counsel of record:

Carolyn M. Wesnousky, Esq.
carolyn.wesnousky@usdoj.gov

Elizabeth Anne Spavins, Esq.
lizzie.spavins@usdoj.gov

                                        */s/ Kevin Carroll*
                                        Kevin Carroll, Esq.