**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

TERRY ADIRIM,

                Plaintiff,

      v.

U.S. CENTRAL INTELLIGENCE
AGENCY, *et al.*,

                Defendants.

No. 1:25-cv-768 (MSN/WBP)

**FEDERAL DEFENDANTS' OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT</u>**

Plaintiff Terry Adirim asks the Court for leave to file a Second Amended Complaint despite the fully briefed and pending motion to dismiss already before this Court. Her reason for doing so is purportedly "new" evidence that goes to the allegedly "unlawful motivation" for why she was terminated from the CIA. In doing so, Plaintiff ignores the simple fact that—as Federal Defendants have *repeatedly* explained—this theory does not support a due process claim. The only viable due process claim Plaintiff may bring to challenge her termination on constitutional grounds is a "stigma-plus" due process claim, which relies on a direct, negative statement made by the government in conjunction with her termination. Plaintiff's allegedly new evidence therefore does not move the needle one bit in terms of advancing her claims. While not discussed in her motion, *see* Dkt. 57, Plaintiff's other proposed amendments are equally futile. In short, her motion should be denied because the proposed amendments would not produce a complaint capable of surviving another motion to dismiss. Accordingly, Federal Defendants respectfully request that the Court deny Plaintiff's motion for leave to amend.

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 15, Plaintiff must seek "the court's leave" to amend her complaint, which the Court "should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision on a motion for leave to amend "is within the sound discretion of the district court." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987); *Smithfield Foods Inc. v. United Food & Comm. Workers Int'l Union*, 254 F.R.D. 274, 277 (E.D. Va. 2008). And leave may be denied "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Procedural History.**

On May 2, 2025, Plaintiff initiated this lawsuit by filing a Complaint and moving for a temporary restraining order to halt her impending termination by her then-employer, the CIA. *See* Dkt. 1, 3. Plaintiff originally brought three claims against Federal Defendants: (1) violation of the Fifth Amendment's Due Process Clause; (2) breach of contract; and (3) violation of the Privacy Act. *See* Dkt. 1. Following briefing and oral argument, the Court denied Plaintiff's motion for injunctive relief, holding that Plaintiff was unlikely to succeed on the merits of her due process claim. *See* Dkts. 6-13; Dkt. 14. On July 24, 2025—after being served with a copy of the Complaint and Summons—Federal Defendants moved to dismiss Plaintiff's claims, expanding on the same arguments already presented to the Court. Dkt. 37. Plaintiff filed an opposition on August 7, 2025, and Federal Defendants replied on August 21, 2025. Dkts. 41, 44.

Earlier that same month, on August 1, 2025, the Court dismissed Plaintiff's claims against the two other named Defendants, Ivan Raiklin and America's Future, Inc., after briefing and oral

2

argument. Dkt. 40. The Court granted Plaintiff leave to file an Amended Complaint against Mr. Raiklin only. *Id.* On August 22, 2025—the day after Federal Defendants filed their reply brief—Plaintiff filed her First Amended Complaint. First Am. Compl. ("FAC"), Dkt. 45. Despite having leave to file an Amended Complaint only as to Mr. Raiklin, Plaintiff's First Amended Complaint also included claims against Federal Defendants[1] along with new factual allegations pertinent to those claims. *See id.* In response, Federal Defendants filed a notice with the Court arguing that Plaintiff's Amended Complaint was improper, and regardless, subject to the same flaws outlined in Federal Defendants' pending motion to dismiss. Dkt. 49.

Six weeks later, on October 24, 2025, Plaintiff filed the instant motion, seeking leave to amend her complaint for a second time. Dkt. 56. As discussed in depth below, Plaintiff's Second Amended Complaint is subject to the same flaws as her original complaint. Accordingly, because her proposed amendments are futile, Plaintiff's motion for leave to amend should be denied.

### B.    Plaintiff's Proposed Second Amended Complaint.

In her proposed Second Amended Complaint, Plaintiff asserts a total of three claims against Federal Defendants: (1) violation of the Fifth Amendment Due Process clause (Count One); (2) Violation of the Privacy Act (Count Two); and (3) violation of the 42 U.S.C. § 1983 (Count 3). *See* Second Am. Compl. ("SAC") ¶¶ 82–101. In addition to proposing to add a new claim (i.e., her § 1983 claim), Plaintiff proposes adding *six* new federal defendants, including two entirely new federal agencies and four new federal officers: the Office of the Director of National Intelligence ("ODNI"), the Interagency Weaponization Working Group ("the IWWG"), Tulsi

---

[1] Notably, in her First Amended Complaint, Plaintiff dropped her breach of contract claim against Federal Defendants, conceding—as Federal Defendants argued—that the Court lacked jurisdiction to oversee it. *See* Dkt. 45.

Gabbard (the Director of ODNI), Carolyn Rocco (a member of ODNI), and two John Doe CIA officers. *See id.* ¶¶ 23–30.

The alleged facts of this case are well known to the Court and remain largely unchanged. In brief, Plaintiff's original Complaint alleged that she was terminated from her job at the CIA due to a politically motivated conspiracy spearheaded by Mr. Raiklin and his associate, Laura Loomer—who both harbored ill-will towards Plaintiff because of her earlier work in the miliary on the COVID-19 vaccine mandate. *See* Compl. ¶¶ 6–7, Dkt. 1. Plaintiff continued to espouse this theory in her First Amended Complaint, *see* FAC ¶¶ 1–14, despite Federal Defendants' reasoned argument and factual showing during the preliminary injunctive briefing that it was without merit, *see* generally Dkt. 9. Plaintiff's legal theories have also been consistent throughout her first two complaints. As to her due process claim, Plaintiff argued that she suffered a so-called "stigma plus" due process violation because Donald Trump Jr. tweeted "bye bye" with a hand-waving emoji alongside a Breitbart News headline stating she had been fired. *See* Dkt. 37 at 14–16. As to her Privacy Act claim, Plaintiff argued that Federal Defendants committed *per se* violations of the Act by allegedly leaking news of her hiring and firing to someone outside the CIA (as allegedly evidenced by Breitbart News reports of those facts). *Id.* at 17–18. In her proposed Second Amended Complaint, Plaintiff continues to espouse these same legal claims and theories. *See* SAC ¶¶ 42–96. But she now purports to add to them. Namely, Plaintiff proposes to add: (1) a new factual theory as to *why* she was fired; (2) new statements allegedly attributable to the CIA about her firing; and (3) and additional facts to support her Privacy Act claim regarding damages and the supposedly classified nature of her affiliation with the CIA.

*Firstly*, Plaintiff now alleges that, *in addition* to the conspiracy between Mr. Raiklin and Ms. Loomer, she was fired due to the actions of Carolyn Rocco, an ODNI official and member of

the IWWG.  *See, e.g.*, SAC ¶¶ 16–18.  As alleged, the IWWG was established in February 2025 by Attorney General Pam Bondi pursuant to one of President Donald Trump's Executive Orders. *Id.* ¶¶ 8–10.  The IWWG, comprised of officials from the White House, ODNI, the CIA, and other federal agencies, allegedly "targeted former military officials involved in recommending that servicemembers receive coronavirus vaccinations," including Dr. Adirim.  *Id.* ¶¶ 15, 76.  Ms. Rocco, an IWWG member, co-signed a letter with Mr. Raiklin (and approximately 200 other former service members) pledging to hold military leaders who implemented the COVID-19 vaccine mandate accountable.[2]  *Id.* ¶ 79; Dkt. 57-3.  Ms. Rocco also twice posted on her public LinkedIn page about Plaintiff's role in the military vaccine mandate.  SAC ¶ 79; Dkt. 57-11 at 160, 162.

*Secondly*, Plaintiff has revised her theory as to what stigmatizing remarks can be attributed to the CIA in support of her stigma-plus due process claim.  Instead of pointing to Donald Trump Jr.'s "bye bye" tweet, Plaintiff now claims that the CIA made "a false public statement to Breitbart News that the [CIA] fired her because of her 'potentially illegal' activity at the Defense Department."  SAC ¶ 84; *id.* at 92.  Plaintiff also alleges that the CIA's declaration—provided to the Court during this litigation—"falsely claim[ed] that she engaged in workplace harassment"— and is *itself* a basis for her due process claim.  *Id.* ¶ 84.

*Lastly*, Plaintiff's Second Amended Complaint contains new allegations related to her Privacy Act claim.  These include allegations that Plaintiff's employment was "classified" or "secret" and that the leak of her hiring and firing were illegal acts.  *Id.* ¶¶ 5, 7, 51–52.  Plaintiff has allegedly been "unable to find follow-on employment" since her termination, losing "millions of

---

[2] While some two dozen military leaders were individually called out in the letter, Plaintiff was not.  *See* Dkt. 57-3.

dollars in damages" due to "the loss of her contract" with CIA[3] and "the stigmatizing remarks of Defendant CIA about the circumstances of her firing." *Id.* ¶ 18; *see also id.* ¶ 65. Plaintiff attributes both her termination and inability to find employment to the CIA's alleged disclosure of the fact of her hiring and firing. *See id.* ¶¶ 92–95.

As explained below in more detail, these additions do not overcome the well-settled case law already laid out by Federal Defendants that establishes that Plaintiff cannot proceed with either her due process or Privacy Act claim. Likewise, Plaintiff's *new* claim—under § 1983—is without legal merit. As such, her proposed Second Amended Complaint is futile and her motion should be denied.

ARGUMENT

### I.    Granting Plaintiff Leave to Amend Would be Futile.

Five months after filing her original complaint and three months after Federal Defendants moved to dismiss it, Plaintiff seeks the Court's leave to amend for a second time. Yet, such an amendment serves no purpose; Plaintiff's new allegations do not save her existing claims from dismissal and her new claim—purportedly brought under § 1983—is not legally viable against Federal Defendants. Accordingly, despite a third bite at the apple, Plaintiff still cannot state a plausible claim against Federal Defendants. Her motion for leave to amend should be denied. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("[A] district court may deny leave if amending the complaint would be futile—that is, 'if the proposed amended complaint fails to satisfy the requirements of the federal rules.'") (quoting *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007)).

---

[3] Plaintiff alleges that her five-year contract with the CIA was "worth over one million dollars." SAC ¶ 59.

6

### A.  Plaintiff Cannot Bring a § 1983 Claim Against Federal Defendants.

To start, Plaintiff attempts to bring a new claim against Federal Defendants under 42 U.S.C. § 1983.  *See* SAC ¶¶ 97–101.  But it is well-settled that § 1983 does not apply to the federal government, its agencies, or its officials.  *See* 42 U.S.C. § 1983 (referring to persons acting under color of state law); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66–67 (2001) ("*Bivens* acknowledged that Congress had never provided for a private right of action against federal officers."); *Bulger v. Hurwitz*, 6 F.4th 127, 135 (4th Cir. 2023) (while "42 U.S.C. § 1983 authorizes plaintiffs to bring an action for money damages against state and local government officials" . . . "there is no statutory counterpart under which plaintiffs can sue federal officials for constitutional violations"); *Tun-Cos v. Perrotte*, 922 F.3d 514, 520 (4th Cir. 2019) (" But § 1983 does not provide a cause of action against federal officials.").  The only avenue to pursue a claim for monetary damages based on constitutional violations by federal officials in their official capacities is through a *Bivens* claim.  Plaintiff does not make any such claim here, and if she were to do so, it would likewise fail.  *Bivens* is a disfavored remedy available in only three narrowly prescribed situations, namely for: (1) a Fourth Amendment violation based on a warrantless search and seizure; (2) a Fifth Amendment violation based on gender discrimination; or (3) an Eighth Amendment violation based on failure to provide adequate medical treatment.  *See Ziglar v. Abbasi*, 582 U.S. 120, 131, 135 (2017) ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself."); *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971); *Carlson v. Green*, 446 U.S. 14 (1980), *Davis v. Passman*, 442 U.S. 228 (1979).  Plaintiff's proposed amendment to include a § 1983 claim is therefore futile.

**B. Plaintiff's Second Amended Complaint Fails to State a Plausible Stigma-Plus Claim.**

Federal Defendants have already explained at length why Plaintiff's original Complaint fails to state a plausible "stigma plus" due process claim. *See* Dkt. 37 at 14–16. In brief, a "stigma plus" due process claim exists where a public employer makes "stigmatizing remarks" "in the course of a discharge or significant demotion." *Ridpath v. Bd. of Governors*, 447 F.3d 292, 309 (4th Cir. 2006) (quotation omitted). To bring such a claim, Plaintiff "must allege that the charges against [her]: (1) placed a stigma on [her] reputation; (2) were made public by the employer; (3) were made in conjunction with [her] termination or demotion; and (4) were false." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007). These claims require "an ***overt, direct government statement*** that the plaintiff has a serious character flaw." *Moschetti v. Office of the Inspector General*, 2022 WL 3329926, at *6 (E.D. Va. Aug. 11, 2022) (emphasis added).

In her Second Amended Complaint Plaintiff appears to have abandoned her theory that Donald Trump Jr.'s tweet was an overt government statement. *See* SAC ¶¶ 82–89 (no mention of the tweet in Plaintiff's due process claim). Instead, Plaintiff now alleges that the CIA told Breitbart News that she was fired because of her "potentially illegal activity" at the Defense Department, SAC ¶ 84, and *that* statement is a basis for her stigma plus claim. This fails for several reasons. First, as Federal Defendants have explained before, the Breitbart News article does ***not*** attribute any such words to the CIA. Dkt. 37 at 16. Rather, the article states:

> Terry Adirim, a senior Central Intelligence Agency official and former senior defense official who played a pivotal and potentially illegal role in the Biden Administration's military vaccine mandate, was recently fired from the agency, a source has exclusively revealed to Breitbart News.

Dkt. 9-1 at 27. The context of the sentence—indeed, the entire article— makes clear that it is ***Breitbart News***' opinion that Plaintiff's role was potentially illegal, not the unknown source's.

8

Crucially, the stigma-plus claim requires an overt and direct government statement. *Moschetti*, 2022 WL 3329926, at *6. An ambiguous phrase from an anonymous source hardly qualifies.

Plaintiff also alleges that the declaration of Brenda McKinlay, the CIA's Deputy Chief Operating Officer, constitutes a stigmatizing remark in connection with her firing. *See* SAC ¶¶ 61–62, 85. Ms. McKinlay stated that Plaintiff was terminated from the CIA after concerns arose about her within the agency, including complaints about her workplace behavior. Dkt. 9-1 at 2–5. Ms. McKinlay's declaration was submitted at the request of the Court after Plaintiff sought emergency relief to stop her impending termination. The CIA would not have submitted such a declaration had Plaintiff not brought the instant lawsuit. Plaintiff cannot manufacture a claim by asking the CIA to explain ***why*** she was fired (after all, such a request is hardly likely to elicit positive information) and then cry foul because she does not like the explanation. Thus, Plaintiff's claim fails because the statements in Ms. McKinlay's declaration were not made in conjunction with Plaintiff's termination as required by Plaintiff's due process claim, but rather made in the course o fthis litigation.

Finally, Plaintiff purports to bring "new evidence [that] emerged that provides compelling insight into the actual, unlawful motivation behind the Government Defendants' decision to terminate Dr. Adirim." Dkt. 57 at 4. Plaintiff's new evidence is nothing more than the theory that a third individual from another federal agency—namely Ms. Rocco—was involved in Plaintiff's termination. Yet, as Federal Defendants have repeatedly stressed, the ***reason*** for Plaintiff's termination is ***irrelevant*** to the analysis of a stigma-plus claim. Despite multiple chances to provide case law, Plaintiff has failed to provide any authority that suggests that an "unlawful motivation" creates a due process claim. *See e.g.*, Dkt. 9 at 14–15, Dkt. 37 at 13 (explaining why reliance on a third-party's defamation to fire an employee is neither unlawful nor

9

nonconstitutional).  Thus, Plaintiff's new speculation—that she was terminated because of the animus of yet another individual not employed by the CIA—does not make her due process claim any more legally plausible.

In sum, Plaintiff's Second Amended Complaint does not cure the overarching failure of her first—which is that she wholly fails to allege that there was a direct government statement made in connection with her firing.

### C. Plaintiff's Second Amended Complaint Fails to State a Plausible Privacy Act Violation.

In her Second Amended Complaint, Plaintiff continues to allege that Federal Defendants violated the Privacy Act by leaking the fact of her hiring at and firing from the CIA either directly to Breitbart News or to a source of the company.  SAC ¶ 92.  As Federal Defendants explained in their motion to dismiss, a plausible Privacy Act claim requires Plaintiff to allege, *inter alia*,[4] that: (1) that she suffered actual pecuniary damages as a result; and (2) Federal Defendants acted intentionally or willfully.  *See Poursaied v. EEOC*, 2015 WL 7112008, at *3 (M.D.N.C. Nov. 13, 2015); *Middlebrooks v. Mabus*, 2011 WL 4478686, at *8 (E.D. Va. Sept. 23, 2011) (quoting 5 U.S.C. § 552a(g)(4)); Dkt. 37 at 17–19.  In a clear concession that her original complaint failed to include these key elements, Plaintiff's Second Amended Complaint now attempts to do so.  As

---

[4] The full list of elements of a Privacy Act violation claim are:

    (1) that the information allegedly disclosed is covered by the [Privacy] Act as a "record" contained in a "system of records";
    (2) that the agency disclosed the information;
    (3) that the disclosure was without plaintiff's consent and did not fit within one of the enumerated exceptions to the anti-disclosure provision;
    (4) that the disclosure was willful or intentional; and
    (5) that the disclosure had an adverse effect on the plaintiff.

*Id.*; *see also Chesser v. Fed. Bureau of Investigation*, 2017 WL 663348, at *4 (E.D. Va. Feb. 17, 2017) (setting forth elements of a cause of action under the Privacy Act).

explained below, these additional allegations do not save her claims, making the proposed amendments futile.[5]

### 1. Plaintiff Does Not Plausibly Allege She Suffered Pecuniary Damages.

As to her damages, Plaintiff first tries to tie the alleged disclosure of the fact that she was hired by the CIA to the loss of her employment contract. To manufacture causation—albeit in a confusing and convoluted manner—Plaintiff alleges that the CIA's alleged "illegal leak of Dr. Adirim's classified Agency affiliation caused Defendant Raiklin to call for Defendant Ratcliffe to fire her." SAC ¶ 95. She then alleges that, "Defendant CIA soon did so, in response to Defendant Raiklin's request to Laura Loomer that she ask President Trump to cause Dr. Adirim to be fired." SAC ¶ 95. Allegedly, this "cost Dr. Adirim her five-year contract with Defendant CIA, worth over one million dollars, and retirement benefits including government health insurance." SAC ¶ 95. Federal Defendants have already explained at length why this causal chain is wholly implausible. *See, e.g.*, Dkt. 9 at 4–7, Dkt. 37 at 2–7. Even Plaintiff acknowledges the obvious alternative explanation in her own Second Amended Complaint—that she was fired due to her own behavior in the workplace. *See* SAC ¶¶ 61 ("Dr. Adirim's conduct had already generated multiple complaints by several different CIA officers regarding alleged inappropriate and harassing statements and actions by Dr. Adirim towards them in the workplace.") (quoting the McKinlay declaration).

*Second*, Plaintiff claims that the alleged disclosure of the fact of her termination—and disclosureof the reason behind it—caused her to suffer actual damages. SAC ¶ 96. But this flies

---

[5] Plaintiff also asserts Count II against "Defendants CIA, Ratcliffe and John Does 1 and 2." However, "civil actions under the [Privacy] Act are properly commenced only against agencies, not individuals." *Walker v. Gambrell*, 647 F. Supp. 2d 529, 536 (2009). Plaintiff's proposed amendment is futile on this account as well.

in the face of simple logic.  Plaintiff's *termination* was why she lost her employment contract—not the fact that other individuals discovered she had been terminated.  Nor can Plaintiff tie what she now alleges to be her inability to find new employment to the alleged disclosure.  Plaintiff *herself* widely publicized the facts surrounding her termination when she initiated this lawsuit.[6]  And to reiterate, the CIA *did not* state that Plaintiff was fired for "potentially illegal activity"—that was Breitbart News' own opinion of Plaintiff's conduct.  Finally, Plaintiff's role in the vaccine mandate—and others' unhappiness with that role—was publicly known and discussed *long* before her termination.  *See e.g.,* Dkt. 9-1 at 9–13 (Breitbart News article dated September 2022 discussing Plaintiff's role in the vaccine mandate); Ex. J to SAC (referencing October 2024 podcast with Mr. Raiklin discussing Plaintiff); SAC ¶ 41–42, 48 (same); *id.* ¶ 40 (discussing Plaintiff's inclusion on Mr. Raiklin's "Deep State Target List" in July 2024).

In short, Plaintiff's claim that she cannot find a new job because of these alleged disclosures is not plausible on its face, especially when there are a myriad of other plausible explanations readily available.  *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617–18 (4th Cir. 2020) (affirming dismissal of racial discrimination claim because the plaintiff himself had "specifically alleged a non-racial reason for the termination"); *McCleary-Evans v. Md. Dep't of Trans. State Highway Admin.*, 780 F.3d 585, 588 (4th Cir. 2015) (holding that "obvious alternative explanation" for adverse treatment precluded plaintiff from pleading plausible Title VII claim of discrimination); *see also Tabb v. Bd. of Educ. of Durham Pub. Schs.*, 29 F.4th 148, 156 (4th Cir. 2022) (same).  To the extent Plaintiff cannot find new employment due to news articles about her role in the vaccine mandate, those are not traceable to the CIA, and in any event, long predate her employment with

---

[6] It also stands to reason that Plaintiff would have to disclose at least *some* of the circumstance of why her prior employment ended when applying for a new job.

the agency.  Accordingly, Plaintiff's Second Amended Complaint fails to plausibly allege that the alleged disclosures caused her to suffer actual pecuniary damages.

### 2. *Plaintiff Does Not Plausibly Allege the Disclosures Were Intentional or Willful.*

Plaintiff's Second Amended Complaint also fails to allege that the alleged disclosures at issue were either intentional or willful.  To rise to that level, "the disclosures must be grossly negligent, committed with flagrant disregard of the Plaintiff's rights, and without grounds for believing the disclosures to be lawful."  *Walker*, 647 F. Supp. 2d at 538 (citing *Scrimgeour v. Internal Revenue*, 149 F.3d 318, 326 (4th Cir. 1998)).  Plaintiff's theory is that because the facts of Plaintiff's affiliation with the CIA were some level of "non-public" or "classified," that those facts were either guessed at or publicly reported is both attributable to the CIA *and* intentional and willful.  *See* SAC ¶¶ 5–7, 51–54, 93; Dkt. 41 at 7 ("The Government Defendants' misconduct here is *ipso facto* willful.").

To wit, Plaintiff alleges that, because the CIA "is tasked with protecting classified information such as the identity and employment status of Agency officers," any disclosure that Plaintiff was hired and/or fired "are by definition intentional and willful."  SAC ¶ 93.  Yet Plaintiff's allegations regarding the nature the facts at issue are remarkably inconsistent throughout her Second Amended Complaint.  For example, Plaintiff repeatedly alleges that the fact of her employment with CIA was "classified," *see e.g.,* SAC ¶¶ 2, 6, 17, but her language varies considerably as to *how exactly* it was classified (i.e., as confidential, secret, or top secret).  At certain points, Plaintiff alleges that her employment was merely "private" or "nonpublic information."  *Id.* ¶¶ 6, 36, 51.  But at others she alleges that her employment was "properly

classified as a national defense secret," *id.* ¶ 36, or even "classified as SECRET/NONFORN," *id.* ¶ 5.[7]

And despite this information being "classified," Plaintiff was told she could tell "her family of her Agency appointment" and merely "advised" not to tell anyone else. SAC ¶ 5. Plaintiff also alleges that "no one other than the Agency and its personnel knew of [her] hiring and firing." SAC ¶¶ 1, 93. However, Plaintiff concedes she told her family *and* admits that she posted the fact that she had new employment within the Federal government on LinkedIn.[8] *See* SAC ¶ 5 ("[T]he CIA advised Dr. Adirim not to tell people outside of her family of her Agency appointment"); Dkt. 41 at 8 ("Dr. Adirim properly did what any other Agency officer in her situation does, and described herself as working for the federal government.'"). And, as Federal Defendants previously discussed, attachments to Plaintiff's own Complaint, which she includes against with her Second Amended Complaint, reflect that Plaintiff's employment contract was plainly marked "unclassified." *See* Compl. Ex. E (Dkt. 1-5); SAC Exh. F. These contradictory and confusing allegations undermine Plaintiff's assertions, both that *only* the CIA could have disclosed the fact of Plaintiff's employment, and that disclosing the information carried *criminal* consequences.

Finally, Plaintiff admits that because she "no longer works for Defendant CIA, her previous Agency affiliation is no longer classified information." SAC ¶ 6 n.3. Accordingly, Plaintiff

---

[7] Plaintiff's Second Amended Complaint contains various allegations about a screenshot of an internal CIA announcement of Plaintiff's appointment that "later appeared on the internet." SAC ¶ 7. As Plaintiff carefully does not reveal the date this screenshot appeared, Federal Defendants assume that occurred well after the events at issue here and thus plays no role in her instant Privacy Act claims.

[8] Notably, "information acquired through voluntary verbal communication, prior knowledge, or observation does not constitute a record, and therefore its disclosure does not violate the [Privacy] Act." *Walker*, 647 F. Supp. 2d at 536–37.

concedes that the fact that she was fired is likewise *not* classified information—and therefore serves no basis for alleging any disclosure of that fact was intentional or willful.

In short, none of Plaintiff's allegations support an inference that the unnamed individuals at the CIA who allegedly disclosed Plaintiff's employment details acted willfully or intentionally—as opposed to failing to guard this "private' information with due care (i.e., negligently). *See Chesser v. Fed. Bureau of Investigation*, 2017 WL 663348, at *5 (E.D. Va. Feb. 17, 2017) (dismissing Privacy Act claim where plaintiff failed to allege facts supporting willful or intentional behavior); *Middlebrooks v. Mabus*, 2011 WL 4478686, at *8 (E.D. Va. Sept. 23, 2011) (same where "the complaint is replete with adjectives and adverbs that state in conclusory fashion that the Navy's acts were 'vicious[ ] and willful[ ],' but it fails to allege a single fact to support these assertions"); *see also Ferguson v. Alderson Fed. Prison Camp*, 2018 WL 7820739, at *6 (S.D. W. Va. Oct. 17, 2018) (dismissing same where plaintiff alleged facts that supported an inference of mere negligence). As such, she fails to state a viable Privacy Act claim for this reason as well.

## CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request that the Court deny Plaintiff's motion for leave to file a second amended complaint.

Dated: November 26, 2025

Respectfully submitted,

LINDSEY HALLIGAN
UNITED STATES ATTORNEY

By: _____/s/_____
ELIZABETH A. SPAVINS
CAROLYN M. WESNOUSKY
Assistant United States Attorneys
Office of the United States Attorney

Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3785/3996
Fax: (703) 299 3983
Email: Lizzie.Spavins@usdoj.gov
        Carolyn.Wesnousky@usdoj.gov

*Counsel for Federal Defendants Central
Intelligence Agency and Director John Ratcliffe*