UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TERRY ADIRIM, <br>            *Plaintiff*, <br><br>     v. <br><br> U.S. CENTRAL INTELLIGENCE <br> AGENCY, *et al.*, <br>            *Defendants*. | No. 1:25-cv-00768-MSN-WBP |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Terry Adirim, a medical doctor who served in the U.S. Central Intelligence Agency ("CIA")'s Center for Global Health Services, filed suit against the CIA; its director, John Ratcliffe; and Ivan Raiklin over alleged constitutional, statutory, and common law violations related to her termination from the CIA in 2025. This Court previously denied Plaintiff's request for a Temporary Restraining Order and dismissed her claims against Raiklin, but granted Plaintiff leave to file an amended complaint against him. Now, Defendants Ratcliffe, the CIA, and Raiklin move to dismiss Plaintiff's remaining claims (ECF Nos. 35, 36, 46), while Plaintiff seeks leave to amend her Complaint once more (ECF 56). For the reasons that follow, the Court will grant Defendants Ratcliffe and the CIA's Motions to Dismiss. ECF Nos. 35 & 36. The Court will grant in part and deny in part Defendant Raiklin's Motion to Dismiss. ECF 46. Lastly, the Court will deny Plaintiff's Motion for Leave to File Amended Complaint. ECF 56.

## I.    BACKGROUND

### A.    Original Complaint

Plaintiff's original Complaint alleged the following: Plaintiff is a medical doctor who began working at the CIA's Center for Global Health Services in December 2024. ECF 1 ¶¶ 1, 19. Prior to joining the CIA, Plaintiff worked as the acting assistant secretary for health affairs at the Department of Defense. *Id.* ¶ 17. Plaintiff's tenure at the Department of Defense coincided with the COVID-19 pandemic, and Plaintiff played a critical role in advising Defense Secretary Lloyd Austin that military servicemembers should receive COVID-19 vaccines. *Id.* Secretary Austin adopted Plaintiff's recommendation and ordered the armed forces to be vaccinated. *Id.* ¶ 18.

Defendant Ivan Raiklin staunchly opposed the vaccine mandate and has claimed that COVID-19 vaccinations "ended up killing lots of people." *Id.* ¶ 23. In July 2024, Raiklin included Plaintiff's name on a "Deep State Target List" of over three-hundred individuals he considers guilty of treason. *Id.* ¶ 25. Then in October 2024, Raiklin stated on a podcast hosted by Roseanne Barr that Plaintiff should be convicted of "genocide and mass mutilation." *Id.* ¶ 26. On the same podcast, Raiklin described the individuals on his "Deep State Target List," including Plaintiff, as "war-criminal scum" who he hoped would be unable "to walk anywhere, whether it's in the digital space [or] physical space, without them feeling the, let's just say, wrath of their neighbors, friends, relatives, [or] family." *Id.* ¶ 27. Raiklin also claimed that he had obtained copies of Plaintiff's private direct messages from the social media platform X. *Id.* ¶ 60.

In December 2024, Plaintiff signed a five-year contract with the CIA. *Id.* ¶¶ 19, 28. Just days after Plaintiff joined the CIA, Raiklin tweeted at CIA Director Ratcliffe asking, "Is the architect of the illegal DOD CCP-19 Jab Genocide Mandate Terry Adirim burrowing in at the

CIA?" *Id.* ¶¶ 3, 29. Plaintiff's employment with the CIA was not public information and therefore Plaintiff alleges that someone at the CIA leaked information about her hiring to Raiklin. *Id.* ¶ 30.

In April 2025, Laura Loomer, an activist and an associate of Raiklin, visited President Trump at the White House. *Id.* ¶ 4. In the days after Loomer's visit, several national security officials were notified of their upcoming termination, including Plaintiff. *Id.* Loomer took credit for convincing President Trump to fire these individuals and Plaintiff claims that Raiklin asked Loomer to request that Trump terminate Plaintiff specifically. *Id.* ¶ 5. A few days after Plaintiff was informed of her looming termination, Raiklin reposted a message stating "Scoop: Terry Adirim, a senior Central Intelligence Agency official and former senior defense official who played a pivotal and potentially illegal role in the Biden Administration's military vaccine mandate, was recently fired from the agency, a source has revealed exclusively to Breitbart News." *Id.* On the same day, Breitbart posted an anonymously-sourced article about Plaintiff's termination. *Id.* Donald Trump, Jr. then tweeted a screenshot of the Breitbart Article's title, "Exclusive: Senior CIA Official Who Facilitated Biden's Military COVID-19 Vaccine Mandate fired," with the caption "Bye bye" and an emoji of hands clapping. *Id.* ¶ 39; *see also* ECF 1-6 at 2.

Plaintiff was given notice of her termination on April 4, 2025, and anticipated being terminated on May 3, 2025, approximately one month short of when she would qualify for full federal retirement benefits. *Id.* ¶ 6.

On May 2, 2025, Plaintiff filed a Complaint against the CIA, Defendant Ratcliffe in his official capacity as the CIA's director, Defendant Raiklin, and Raiklin's political advocacy group, America's Future. ECF 1. Plaintiff alleged that the CIA and Ratcliffe (collectively, the "CIA Defendants"), had violated her right to due process (Count I), breached her employment contract

(Count II), and violated the Privacy Act, 5 U.S.C. § 552a, by disclosing that she had been hired and fired by the CIA (Count III). Plaintiff further alleged that Raiklin and America's Future had committed defamation (Count IV), intentional infliction of emotional distress (Count V), conversion (Count VI), and tortious interference with contractual relations (Count VII).

The CIA Defendants, Raiklin, and America's Future all moved to dismiss Plaintiff's Complaint. The Court granted the motion to dismiss by Raiklin and America's Future, concluding among other things, that Plaintiff's Complaint failed to identify specific defamatory statements. *See* ECF 40. While the Court dismissed Plaintiff's claims against America's Future with prejudice, it granted Plaintiff's request to amend her claims against Raiklin. *Id.*

At the time of the Court's ruling on Raiklin and America's Future's motion to dismiss, the CIA Defendants' motions to dismiss (ECF Nos. 35, 36) had not yet been fully briefed. Those motions are now ripe and pending before the Court.

### B.    First Amended Complaint

On August 22, 2025, Plaintiff filed her First Amended Complaint ("FAC"). ECF 45. Plaintiff's FAC alleged that, while appearing on Roseanne Barr's podcast on October 3, 2024, Raiklin identified Plaintiff by name and made three defamatory statements about her. *Id.* ¶ 32. First, Raiklin claimed that Plaintiff "signed the memo institutionalizing the illegal vax mandate on the DOD." *Id.* Next, he claimed that there are "many tens of thousands of us who want [Plaintiff] to face . . . Nuremburg-style consequences" for that and that Plaintiff will be "criminally liable and face consequences for genocide and for mutilation." *Id.* Lastly, Raiklin stated—referring to Plaintiff's X account—"You can block us all you want, Terry. You are still going to be convicted of genocide and mass mutilation at the very least." *Id.*

On the podcast, Raiklin went on to discuss Plaintiff's social media messages, stating "Remember, we have all of your Twitter DMs and exchanges with Twitter employees." *Id.* ¶ 32.

Raiklin subsequently continued to target Plaintiff and others on his "Deep State Target List." On April 13, 2025, he stated on CNN that "the nation will be furious" if, within twelve months, no one on his "Deep State Target List" is executed. *Id.* ¶ 53. After Plaintiff filed her original Complaint, Raiklin made several social media posts about her, including instructing her to "look up the words Retribution, Nuremburg 2.0, mutiny, treason," *id.* ¶ 54; asking "How many times should we force 'vaccinate' @Terr[y] AdirimMD? How about the total number of 'vaccines' that she compelled throughout the force? Probably millions," *id.* ¶ 55; and posting a link to someone shooting a gun at a target with the words

> ~8600 thrown out
> ~80 thousand that left early
> ~ 3.5 million were duped
> By the @TerryAdirimMD unlawful DOD jab mandate implementation memo
> Accountability is inevitable

*id.* ¶ 57.

Raiklin made these statements about Plaintiff's role in the vaccination of U.S. service members despite "troves of publicly available information carefully debunking COVID-19 vaccine conspiracy theories." *Id.* ¶ 61. In particular, "study after study [has] debunked claims that the vaccines cause widespread death, disfigurement, mutilation or genetic defects." *Id.* Plaintiff alleges that Raiklin should have been aware of this information as an educated attorney, retired Green Beret, and field grade officer, and yet purposefully discounted or ignored scientific evidence out of animus towards her. *Id.* ¶ 62.

Plaintiff's FAC brings a claim of defamation *per se* (Count III) against Raiklin as well as a claim of conversion (Count IV) for obtaining her direct messages on X without her consent.

In addition to Plaintiff's revised claims against Raiklin, her FAC amended her allegations against the CIA Defendants. Plaintiff, however, did not seek leave to amend these claims under Federal Rule of Civil Procedure 15(a)(2). Raiklin, meanwhile, again moved to dismiss. ECF 46.

### C.     Proposed Second Amended Complaint

After Defendant Raiklin fully briefed his motion to dismiss, Plaintiff filed a motion for leave to file a Second Amended Complaint. ECF 56. Her Proposed Second Amended Complaint ("PSAC") contains the following new allegations:

Plaintiff's affiliation with the CIA was classified as "SECRET/NOFORN," meaning that the CIA believed the information could cause damage to the United States' national security and could not be released to foreign nationals. ECF 57-11 ¶ 5. The CIA advised Plaintiff not to tell people outside of her family about her position and announced her arrival internally on a classified email system in an email marked as "SECRET/NOFORN." *Id.* ¶¶ 5-6. Nevertheless, someone at the agency took a photograph or screenshot of the classified announcement, which later appeared on the internet. *Id.* ¶ 7. Plaintiff claims that whoever took this action potentially committed a felony under the Espionage Act, 18 U.S.C. § 793(d), and yet the federal government took no action in response. *Id.* ¶ 7. In addition, she claims that someone at the CIA either directly or indirectly informed Raiklin that she had been hired. *Id.* ¶ 51.

On January 20, 2025—shortly after she began working at the CIA—President Trump signed Executive Order 14147, *Ending the Weaponization of the Federal Government*, 90 Fed. Reg. 8235 (Jan. 20, 2025), in which he ordered the Director of National Intelligence to create a committee to "review the activities of the Intelligence Community over the last 4 years." ECF 57-11 ¶ 8. The committee, named the "Interagency Weaponization Working Group" ("IWWG"), includes Carolyn Rocco, an employee of the Office of the Director of National Intelligence

("ODNI"), and has "specifically targeted former military officials involved in recommending that servicemembers receive coronavirus vaccinations." *Id.* ¶¶ 15, 29. Indeed, Rocco and Raiklin signed an open letter on January 1, 2024, pledging to seek courts martial for senior military commanders who made COVID-19 vaccine shots mandatory for service members. *Id.* ¶¶ 78-79.

On April 4, 2025, after Laura Loomer's visit to the White House, the CIA informed Plaintiff that she had been terminated. *Id.* ¶¶ 56, 58. Her termination caused her to lose her five-year contract with the CIA which was worth over one million dollars, as well as her full pension benefits as a career federal employee. *Id.* ¶ 59.

Plaintiff repeatedly asked her supervisor why she was being terminated, but was told that her supervisor had "no information." *Id.* ¶ 58. During this litigation, however, the CIA's Deputy Chief Operating Officer filed a declaration stating that, by March 2025, Plaintiff's conduct had "already generated multiple complaints by several different CIA officers regarding alleged inappropriate and harassing statements and actions by Dr. Adirim towards them in the workplace." *Id.* ¶ 61.

Since Plaintiff's termination, she has been unable to find work, despite being a very highly regarded physician. *Id.* ¶ 65.

Plaintiff's PSAC seeks to add as defendants two John Doe CIA officers; ODNI; Tulsi Gabbard, the Director of National Intelligence; Carolyn Rocco; and the IWWG. It alleges that the CIA, Ratcliffe, and the John Does violated her right to due process and her rights under the Privacy Act (Counts I and II). Her PSAC also asserts a claim under 42 U.S.C. § 1983 against the CIA, Ratcliffe, the John Does, ODNI, Gabbard, Rocco, and the IWWG (Count III). It does not add any new claims or change the factual allegations against Defendant Raiklin. *See* ECF 66 at 1.

## II.     LEGAL STANDARD

At the pleading stage, the Court "must accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Federal Rule of Civil Procedure 15(a)(2), courts should "freely give" parties leave to file amended pleadings. To that end, district courts may deny leave to amend only in cases of "prejudice, bad faith, or futility." *In re Triangle Capital Corp. Securities Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)). A proposed amendment is "futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *Id.*

## III.    ANALYSIS

Raiklin and the CIA Defendants move to dismiss each of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1] ECF 36, 46. Plaintiff, for her part, seeks to amend her claims against the CIA Defendants, which they oppose.[2] ECF Nos. 56, 65. The Court will address each of Plaintiff's claims—and Defendants' respective arguments—in turn.

---

[1] The CIA Defendants also move to dismiss Plaintiff's breach of contract claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. ECF 35. Plaintiff concedes that the Court lacks jurisdiction over this claim pursuant to the Tucker Act, 28 U.S.C. § 1491. *See* ECF 41 at 15. The Court will, accordingly, grant the CIA Defendants' Motion and dismiss Plaintiff's breach of contract claim.

[2] Raiklin also opposes Plaintiff's Motion for Leave to Amend, ECF 64, but Plaintiff's PSAC does not change any of the allegations against him, *see* ECF 57-11.

A.     **Defamation**

In her FAC, Plaintiff alleges that Defendant Raiklin defamed her by stating on Roseanne Barr's podcast that Plaintiff had (1) "signed the memo institutionalizing the illegal vax mandate on the DOD," (2) will be "criminally liable and face consequences for genocide and for mutilation," and (3) is "going to be convicted of genocide and mass mutilation at the very least." ECF 45 ¶ 32.

Under Virginia law, a plaintiff alleging defamation must show "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015) (quoting *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (2013)). A statement is "actionable" if it is "both false and defamatory." *Id.* at 594.

Raiklin argues that Plaintiff's defamation claim must be dismissed because she has not alleged that his statements were actually false, as opposed to nonactionable opinion, or that he acted with sufficient intent.

1.     **Falsity and Statements of Opinion**

The application of state defamation law "is limited, of course, by the First Amendment to the Constitution of the United States." *Caci Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008). Under the First Amendment, speech is protected from liability if it "cannot 'reasonably [be] interpreted as stating actual facts' about an individual.'" *Id.* (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)). Such speech falls into two categories. "First, the First Amendment serves to protect statements on matters of public concern that fail to contain a 'provably false factual connotation.'" *Snyder v. Phelps*, 580 F.3d 206, 219 (4th Cir. 2009) (quoting *Milkovich*, 497 U.S. at 20). "Second, rhetorical statements employing loose, figurative, or hyperbolic language are entitled to First Amendment protection to ensure that public debate will not suffer for lack of

imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of our Nation." *Id.* (internal quotation marks omitted).

"Statements of opinion—defined as statements that are 'relative in nature and depend largely upon the speaker's viewpoint'—are 'generally not actionable because such statements cannot be objectively characterized as true or false[.]'" *Gilmore v. Jones*, 370 F. Supp. 3d 630, 670 (W.D. Va. 2019) (quoting *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). But simply couching statements in terms of one's opinion does not protect a statement from liability. *Milkovich*, 497 U.S. at 18 (explaining that there is no "wholesale defamation exemption for anything that might be labeled 'opinion'"). Courts instead look to whether "a reasonable listener would understand the communication at issue as statements of facts." *Meredith v. Nestle Purina Petcare Co.*, 516 F. Supp. 3d 542, 552 (E.D. Va. 2021). If there is a "provably false connotation" in an opinion, it is "thus capable of being proven true or false," and the opinion may be actionable. *Goulmamine v. CVS Pharmacy, Inc*., 138 F. Supp. 3d 652, 660 (E.D. Va. 2015).

Likewise, statements constitute nonactionable hyperbole where "no reasonable inference could be drawn that the individual identified in the statements, as a matter of fact, engaged in the conduct described." *Yeagle*, 497 S.E.2d 136, 137 (Va. 1998).

"Whether a statement is an actionable statement of fact or non-actionable opinion is a matter of law to be determined by the court." *Jordan*, 612 S.E.2d at 206-07. In evaluating a motion to dismiss, courts credit a plaintiff's allegations of a statement's factual falsity. *Gilmore*, 370 F. Supp. 3d at 671.

Raiklin argues that his statements on the podcast were both statements of opinion and rhetorical hyperbole. ECF 47 at 5-6. He contends that his comments that Plaintiff will face criminal liability reflect only "his subjective analysis of the potential legal consequences of the [vaccine]

mandate implementation," *id.* at 5, as well as his "personal hope and expectation that Dr. Adirim will face [such] consequences," ECF 53 at 3 (emphasis omitted). Because his expectation that Plaintiff will face criminal consequences for her actions is a prediction about the future, Raiklin argues that it not a statement that is capable of being proven false. He further asserts that while his statements can be seen as "vilif[ying]" Plaintiff, this is mere hyperbole. ECF 47 at 6.

Raiklin's arguments fail to convince. To begin with, his statements plausibly communicate factual content. The first statement conveys that Plaintiff instituted an illegal program while the second and third statements convey that she has committed "genocide" and "mass mutilation." ECF 45 ¶ 32. While the second and third statements predict that Plaintiff will be held liable for her actions, they are "laden with [the] factual content" that she has, in fact, committed the underlying crimes. *Goulmamine*, 138 F. Supp. 3d at 660 (quoting *Andrews v. Va. Union Univ.*, No. 3:07-cv-447, 2007 WL 4143080 at *8 (E.D. Va. Nov. 19, 2007)); *see also WJLA-TV v. Levin*, 564 S.E.2d 383, 393 (Va. 2022) (concluding that a TV station's report that a doctor had sexually assaulted his patients constituted actional defamation because, while the statements of his former patients were "arguably expressions of their own subjective opinions" about their treatment, the TV station reported the allegations as fact).

That Raiklin's statements predicted Plaintiff would face future criminal liability for her actions does not change this outcome. Raiklin relies on *Cox v. Red Hat Inc.*, No. 1:23-cv-766, 2025 WL 889888 (E.D. Va. Mar. 21, 2025), to argue that statements about a "possible future event" cannot be "provably false." ECF 53 at 4. In *Cox*, however, the statement at issue was an employee's assertion that she would cause the plaintiff to be fired so that the plaintiff "won't be around long." 2025 WL 889888, at *10. As the court observed, those statements were purely about a possible future event and did not communicate provable facts. *See id.*

Predictions about the future that *do* convey factual content are actionable. For instance, in *Meredith*, a plaintiff claimed that the defendant had defamed her by stating that she "might sabotage [d]efendant's products." 516 F. Supp. 3d at 546. The court rejected defendant's assertion that the statement was a nonactionable prediction about a possible future event, concluding that, when viewed in context, the statement reasonably communicated that plaintiff had sabotaged defendant's products in the past. *Id.* at 552-53. The same is true here. While Raiklin's statements predict whether Plaintiff will face criminal liability in the future, they also communicate the factual assertion that she has committed genocide and mass mutilation in the past through her work at the Department of Defense. Such statements are capable of being proven false and therefore fall outside of the First Amendment's ambit.

Raiklin's statements do not constitute nonactionable hyperbole for similar reasons. This is not a case in which any reasonable person would understand Raiklin's statements as "imaginative" rhetoric not intended to "assert provable facts." *Snyder*, 580 F.3d at 223. Instead, as Raiklin himself explains, he made the statements in question in the context of explaining to his listeners why "the vaccine mandate was illegal and caused harm" to members of the military. ECF 53 at 3. Rather than using hyperbole to convey a "figurative expression," Raiklin's statements reasonably communicated that Plaintiff is responsible for the death or mutilation of masses of servicemembers. Because Raiklin's statements conveyed factual content, they are actionable statements for purposes of Plaintiff's defamation claim.

### 2. Actual Malice

Raiklin next challenges whether Plaintiff has plausibly alleged that he made the statements with sufficient intent.

"The requisite intent a plaintiff must prove in a defamation action depends upon the plaintiff's status as a public or private figure and the damages sought." *Jordan*, 612 S.E. 2d at 207. A public officials may not recover damages "for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). The actual malice standard "is rooted in the First Amendment's 'vital guarantee of free and uninhibited discussion of public issues'" and is meant to ensure that "issues of public concern are considered 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *CACI*, 536 F.3d at 293 (first quoting *Milkovich*, 497 U.S. at 22; and then quoting *New York Times*, 376 U.S. at 270).

To allege actual malice, a plaintiff must show that a defendant made a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 279-80. Reckless disregard requires evidence that a defendant made a statement "with a high degree of awareness of its probable falsity." *CACI*, 536 F.3d 280 (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)) (cleaned up); *see also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (explaining that reckless disregard requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication").

To determine whether a statement was made with actual malice, courts "assess how an objective, reasonable reader would understand a challenged statement by focusing on the plain language of the statement and the context and general tenor of its message." *Snyder*, 580 F.3d at 219. While conclusory allegations of actual malice are insufficient, the inquiry is necessarily

subjective and, thus, "a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence." *Gilmore*, 370 F. Supp. 3d at 671. At the motion to dismiss stage, a plaintiff need only plead sufficient facts that, if proven, could create a plausible inference of malice. *Id.*

Raiklin argues that the allegations in the FAC fail to create a reasonable inference that he acted with actual malice. For support, he points to a study cited by the FAC in which the National Institutes of Health concluded that fourteen people died following COVID-19 vaccination. ECF 47 at 7-8; ECF 45 ¶ 61 n.22. He claims that it is reasonable to presume that service members have also died from the vaccine and that he genuinely believes that Plaintiff's actions to require the vaccine were "illegal." ECF 53 at 6.

At this stage, the Court concludes that Plaintiff has adequately alleged actual malice. Plaintiff claims that Raiklin made his statements "amid troves of publicly available information carefully debunking COVID-19 vaccine conspiracy theories." ECF 45 ¶ 61. In particular, "study after study [has] debunked claims that the vaccines cause widespread death, disfigurement, mutilation or genetic defects." *Id.* Given Plaintiff's allegations that scientific studies have proven the vaccines to be safe, Raiklin should have "entertained serious doubts" as to whether Plaintiff caused a genocide and mass mutilation by requiring service members to be vaccinated. *Harte-Hanks*, 491 U.S. at 688. Indeed, Raiklin was not claiming that some people had experienced adverse effects from vaccination or even that a few people had died from the vaccine; he was accusing Plaintiff of "the deliberate and systematic destruction" of members of the military as a group and "destroying, removing, or severely damaging" military servicemembers' body parts en masse. *Genocide*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/genocide [https://perma.cc/J7RT-RGVV] (last accessed Feb. 19, 2026);

*Mutilation*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/mutilation [https://perma.cc/2VYU-KTB9] (last accessed Feb. 19, 2026). Plaintiff has plausibly alleged that Raiklin knew or should have been aware that his allegations were simply untrue and that he acted with actual malice by accusing her of genocide, mass mutilation, and illegal behavior regardless.[3]

In sum, Plaintiff has adequately alleged that Raiklin made actionable, defamatory statements against her with actual malice. The Court will therefore deny his Motion to Dismiss her defamation claim.

### B.    Conversion

Plaintiff's FAC also brings a conversion claim against Raiklin for obtaining copies of her direct messages on X without her permission.

"[C]onversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 719 (Va. 2000). To state a claim for conversion under Virginia law, a plaintiff must allege "(1) the ownership or right to possession of the property at the time of the conversion; (2) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession; and (3) the property at issue can be the subject of a conversion claim." *In re Cap. One Fin. Corp.*, No. 1:25-cv-023, 2025 WL 1570973, at *10 (E.D. VA. June 2, 2025) (internal quotation marks omitted). "'Although a cause of action for conversion typically applies only to tangible property,' the Virginia Supreme Court has

---

[3] Plaintiff argues extensively that Raiklin's actual malice towards her can be seen through his statements expressing a desire that she not be able to "walk anywhere" without feeling the "wrath of [her] neighbors, friends, relatives, [or] family" and calling for "retribution" against her. ECF 51 at 10. Such statements may express malice in the ordinary sense of the word but are insufficient to show that Raiklin acted with malice for purposes of a First Amendment analysis. *See Harte-Hanks*, 491 U.S. at 666 (emphasizing that "the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term").

recognized the conversion of intangible property in limited circumstances where the plaintiff is 'entitled to immediate possession of' the property and her ownership interests arise from or merge with a document symbolizing ownership." *Id.* (quoting *Mackey v. McDannald*, 842 S.E.2d 379, 387 (2020)). Documents that symbolize ownership include "a valid stock certificate, promissory note, or bond." *Mackey*, 842 S.E.2d at 387.

Plaintiff argues that Raiklin wrongfully obtained her direct messages on X without her consent, thereby depriving her of control over their contents. ECF 45 ¶ 93. While she recognizes that her messages are intangible, Plaintiff argues that her messages may still give rise to a conversion claim because "Virginia courts treat digital forms of personal correspondence in the same manner as physical documents." ECF 51 at 13. Plaintiff further argues that, even if she does not have exclusive control over her messages, X's Terms of Service make clear that she has a possessory right to them that is superior to Raiklin's. *Id.* at 16.

Despite these arguments, Plaintiff has not shown that her direct messages are "property" that can be converted under Virginia law. Plaintiff relies heavily on *E.I. du Pont Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09-cv-58, 2011 WL 4625760 (E.D. Va. Oct. 3, 2011), to argue that intangible property can give rise to a conversion under Virginia law claim even if that property has not merged with a physical document. ECF 51 at 13-14. The decision in *E.I. du Pont*, however, predates the Virginia Supreme Court's decision in *Mackey* and does not reflect the current state of Virginia law. The Virginia Supreme Court has since been clear that it "has refused to recognize a conversion claim for interference with *undocumented* intangible property rights." *Mackey*, 842 S.E.2d at 387 (internal quotation marks omitted).

Unlike an electronic copy of a recruitment list, *see Combined Ins. Co. of America v. Wiest*, 578 F. Supp. 2d 822, 835 (W.D. Va. 2008), or a copy of a tire blueprints, *see In re Outsidewall*

*Tire Litig.*, No. 1:09-cv-1217, 2010 WL 11474982, at *5 (E.D. Va. Sept. 17, 2010), virtual messages on social media do not arise from or merge with a document or other tangible property "symbolizing ownership," *In re Cap. One Fin. Corp.*, 2025 WL 1570973, at *11 (concluding that online tracking codes could not form the basis of a conversion claim because Plaintiff had not alleged that they arose from or merged with a document demonstrating ownership). For instance, while the messages may be governed by the X Terms of Service, those terms do not show that Plaintiff owns her messages and can exercise dominion over them. The Terms of Service instead make clear that Plaintiff has only limited control over her messages; she can delete her messages from her own interface but "[o]thers in the conversation will still be able to see" any conversations that she deletes. ECF 45-8 at 23. Unlike physical letters, her messages are also, by definition, shared with others who have simultaneous access and control over them. As a result, Plaintiff has not shown that she has a "clear, definite, undisputed, and obvious property right in a thing to which [she is] entitled to immediate possession," requiring dismissal of her conversion claim. *Mackey*, 842 S.E.2d at 387.

### C.    Due Process

Turning to Plaintiff's claims against the CIA Defendants, both her original Complaint and her PSAC allege that the CIA Defendants violated Plaintiff's right to due process. Plaintiff asserts two separate theories as to how the CIA Defendants have violated her right to due process. She claims that the CIA Defendants failed to follow the agency's rules in terminating her, in violation of the *Accardi* doctrine.  ECF 4 at 5; *see also* ECF 41 at 12. She also claims that the CIA Defendants made defamatory statements regarding her termination—a claim known as a "stigma plus" due process claim. *See* ECF 1 ¶ 43; *see also Elhady v. Kable*, 993 F.3d 208, 226 (4th Cir. 2021).

Defendants argue that, under either theory, Plaintiff's original Complaint and PSAC fail to state a claim.

### 3.  *Accardi* Claim

Under the *Accardi* doctrine—developed by the Supreme Court in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)—"an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination." *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999). "The fact that a particular regulation or procedure is not mandated by the Constitution or by statute is of no moment for purposes of an analysis under the *Accardi* doctrine." *Id.* Once an agency establishes an administrative framework, it is bound to follow it. *Id.* at 267.

The CIA Defendants argue that, to the extent that Plaintiff's due process claim seeks to state a claim under the *Accardi* doctrine, this claim must be dismissed because the *Accardi* doctrine is not a doctrine of constitutional law. ECF 37 at 12-13. They further argue that, even if Plaintiff properly raised an *Accardi* claim in her original Complaint, she failed to allege that the CIA failed to follow its regulations in firing her, as the doctrine requires. *Id.* at 13-14. The Court agrees with the CIA Defendants' second point and will dismiss Plaintiff's due process claim to the extent her claim relies on the *Accardi* doctrine.

Whether an *Accardi* claim implicates the Due Process Clause of the Fifth Amendment is a question that has generated substantial uncertainty. *See, e.g.*, *D.N.N. v. Bacon*, 1:25-cv-01613-JRR, 2025 WL 3525042, at *10-11 (D. Md. Dec. 9, 2025) (collecting cases). It is also a question the Court need not answer. Even if Plaintiff has properly raised an *Accardi* violation under her due process claim, neither her Complaint nor her PSAC allege that the CIA failed to follow its regulations in terminating her. Plaintiff merely alleges that she was not given a reason for her

termination. *See* ECF 1 ¶ 35; ECF 57-11 ¶ 58. Because Plaintiff has not plausibly alleged that the CIA's failure to explain her termination violated its regulations the Court will dismiss Plaintiff's due process claim to the extent Plaintiff seeks to allege an *Accardi* violation and deny leave to amend.

### 4. Stigma Plus

Plaintiff's due process claim also appears to allege a stigma plus claim against the CIA Defendants. Stigma-plus due process claims are rooted in public employees' right to "take advantage of other employment opportunities," "even when lawfully discharged." *Cannon v. Village of Bald Head Island*, 891 F.3d 489, 501 (4th Cir. 2018) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972)). "This includes the right to be free from arbitrary restrictions upon the opportunity for other gainful employment stemming from the reasons voluntarily given by government for lawfully terminating . . . at-will public employment." *Id.* (internal quotation marks omitted). Accordingly, a public employer may violate the Due Process Clause if they make public statements about the reasons for an employee's discharge without giving the employee sufficient notice and opportunity to be heard. *Id.*

To state a stigma-plus due process claim, a public employee must establish that the government violated a cognizable liberty interest. *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007). In other words, an employee must demonstrate that a public employer made charges against her that (1) placed a stigma on her reputation, (2) were made public by the employer, (3) were made in conjunction with her termination or demotion, and (4) were false. *Sciolino*, 480 F.3d at 646.

Plaintiff claims, first, that the CIA made a public, stigmatizing statement about her in conjunction with her termination when it stated to Breitbart news that she had engaged in

"potentially illegal" activity. ECF 1 ¶ 37; ECF 57-11 ¶ 83. But the statement in the article cannot be reasonably attributed to the CIA. *See Mochetti v. Off. of the Inspector Gen.*, No. 3:22-CV-24– HEH, 2022 WL 3329926, at *5 (E.D. Va. Aug. 11, 2022) (explaining that "stigma-plus claims are generally premised on an overt, direct government statement that the plaintiff has a serious character flaw"). Quoted in full, the article states, "Terry Adirim, a senior Central Intelligence Agency official and former senior defense official who played a pivotal and potentially illegal role in the Biden Administration's military vaccine mandate, was recently fired from the agency, a source has exclusively revealed to Breitbart News."[4] ECF 9-1 at 27. Because this quote makes clear that Breitbart—not the CIA—accused Plaintiff of "potentially illegal" activity, Plaintiff has not alleged that the CIA is responsible for making a public stigmatizing statement that can form the basis of a due process claim.

Plaintiff also alleges that she was stigmatized when Donald Trump, Jr. tweeted a screenshot of the Breitbart article's title with the phrase "Bye bye." ECF 1 ¶ 39; ECF 57-11 ¶ 14. Donald Trump, Jr., however, is not Plaintiff's employer and does not work for the government. *See* ECF 57-11 ¶ 64 (alleging that Donald Trump, Jr. is only "functionally" a government employee). Moreover, his tweet does not contain a defamatory statement. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 308 (4th Cir. 2006) (explaining that "[t]he type of communication that gives rise to a protected liberty interest implies 'the existence of serious character defects such as dishonesty or immorality'" (quoting *Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir. 1982))). The text in the screenshot does not accuse Plaintiff of illegal or immoral activity, it merely states: "Senior CIA Official Who Facilitated Biden's Military COVID-19 Vaccine Mandate [Was]

---

[4] While the article was not included in Plaintiff's original Complaint, Plaintiff cited to it in her PSAC. *See* ECF 57-11 ¶ 13 n.9. Moreover, the Court may consider documents at the motion to dismiss stage that are integral to a plaintiff's claim, even if they are not attached to the complaint, so long as there is no dispute about their authenticity. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Fired." ECF 57-11 at 57. The tweet thus is not a stigmatizing statement made public by Plaintiff's employer and cannot support her due process claim.

Finally, in her PSAC, Plaintiff alleges that the CIA's declaration accusing her of workplace harassment constitutes a false and defamatory statement that violated her right to procedural due process. ECF 57-11 ¶¶ 61, 85. This allegation is also insufficient; the Fourth Circuit has made clear that a defamatory statement by a public employer will only give rise to a due process violation if the employee suffers "a *present* injury such as termination of government employment." *Ridpath*, 447 F.3d at 309 n.16. The CIA did not accuse Plaintiff of harassment "in conjunction with" her termination, *Cannon*, 891 F.3d at 501, rather it submitted the declaration during the course of this litigation to explain why Plaintiff's termination was not connected to Raiklin or Loomer, *see* ECF 9 at 19-20; ECF 9-1. Having placed the reason for her termination at issue, Plaintiff cannot claim that the CIA defamed her by trying to explain the action it took. Accordingly, Plaintiff has failed to state a due process claim in either her original Complaint or her PSAC and her Motion for Leave to Amend must be denied as futile.

### D.    Privacy Act

Next, Plaintiff's original Complaint and PSAC contend that the CIA Defendants violated her rights under the Privacy Act by leaking the non-public information that she had been hired and then terminated by the CIA. ECF 1 ¶ 49; ECF 57-11 ¶¶ 92-95. In her PSAC, Plaintiff claims that her affiliation with the CIA was "private and classified." ECF 57-11 ¶ 6. Yet someone from within the CIA posted a screenshot of the classified announcement that she was joining the Agency on the internet. *Id.* ¶ 7 She alleges that, by leaking the information of her hiring, the CIA caused Raiklin to seek her termination through Loomer, costing her "tens of thousands of dollars in economic damages every month." *Id.* ¶ 96. The CIA Defendants argue that Plaintiff's Complaint

and PSAC fail to allege that the CIA's disclosure of her records was "willful or intentional" or that she suffered actual damages as a result, requiring dismissal of Plaintiff's claim. ECF 65 at 11-15.

The Privacy Act of 1974 "directs agencies to establish safeguards to protect individuals against the disclosure of confidential records 'which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained.'" *F.A.A. v. Cooper*, 566 U.S. 284, 294-95 (2012) (quoting 5 U.S.C. § 552a(e)(10)). To establish a Privacy Act cause of action, plaintiff must allege the following five elements regarding the allegedly unauthorized disclosure of information:

> (1) that the information allegedly disclosed is covered by the Act as a 'record' contained in a 'system of records'; (2) that the agency disclosed the information; (3) that the disclosure was without plaintiff's consent and did not fit within one of the enumerated exceptions to the anti-disclosure provision; (4) that the disclosure was willful or intentional; and (5) that the disclosure had an adverse effect on the plaintiff.

*Fattahi v. Bureau of Alcohol, Tobacco & Firearms*, 186 F. Supp. 2d 656, 659 (E.D. Va. 2002), *aff'd*, 328 F.3d 176 (4th Cir. 2003).

The Privacy Act sets an exceedingly high bar for what constitutes a "willful or intentional" disclosure. A disclosure is only "willful or intentional" if it was committed "without grounds for believing it to be lawful," or the disclosure "flagrantly disregard[ed] others' rights" under the Privacy Act. *Scrimgeour v. Internal Revenue*, 149 F.3d 318, 326 (4th Cir. 1998) (quoting *Waters v. Thornburgh*, 888 F.2d 870, 875 (D.C. Cir. 1989)). This evidentiary standard requires "more than gross negligence." *Middlebrooks v. Mabus*, No. 1:11-cv-46 LMB/TCB, 2011 WL 4478686, at *8 (E.D. Va. Sept. 23, 2011) (quoting *Reinbold v. Evers*, 187 F.3d 348, 362 n.14 (4th Cir. 1999)). To state a claim under the Act, a plaintiff must go beyond "conclusory" allegations "that [a defendant's] actions were . . . willful." *Id.*

Even if a plaintiff can make out a cause of action under the Privacy Act, the Act only allows a plaintiff to recover damages if they can show that the disclosure of their information caused them to suffer a pecuniary loss. *Cooper*, 566 U.S. at 298-99 (explaining that the Privacy Act only waives sovereign immunity if the plaintiff can show economic damages). Mental or emotional harm caused by the disclosure is insufficient to generate a claim for damages. *Id.* at 303.

Plaintiff has arguably shown that the CIA willfully disclosed her employment at the Agency by allowing a screenshot of her classified employment announcement to be posted on the internet. If this internal email was marked classified and only shared within the CIA, as Plaintiff alleges, *see* ECF 57-11 ¶ 51, then the leak necessarily originated from someone inside the CIA. And Plaintiff has plausibly alleged that because the email was marked as classified, any person would have known that disclosing the information was unlawful.[5] *See* 18 U.S.C. § 793(d) (penalizing the disclosure of information relating to the national defense).

Her claim falls short, however, in pleading actual damages.[6] Plaintiff does not allege that Raiklin or Loomer saw the screenshot of her employment announcement from the CIA or that the screenshot prompted them to advocate for Plaintiff's termination. On the contrary, she claims that Raiklin learned about her CIA employment either because "someone at Defendant CIA informed him" or because "the Agency informed someone outside of [the] CIA who told Defendant

---

[5] Plaintiff also claims that the CIA Defendants violated the Privacy Act by leaking the fact of her termination. In her PSAC, she alleges that "[e]ither someone at the Defendant CIA informed Breitbart of Dr. Adirim's termination, or Defendant CIA informed someone outside of the Agency who told Breitbart." ECF 57-11 ¶ 63. Plaintiff's hypothesis that the CIA must have been involved in sharing the news of her termination fails to plausibly allege that the Agency acted with more than gross negligence. *See Middlebrooks*, 2011 WL 4478686, at *8 (dismissing a claim under the Privacy Act where a plaintiff failed to allege facts showing that the government's disclosure was intentional or in flagrant disregard of the plaintiff's rights).

[6] Plaintiff argues strenuously in her Reply in Support of Motion for Leave to Amend Complaint that "[w]hether Dr. Adirim sufficiently alleged pecuniary damages is a quintessential Rule 12(b)(6) question with no place in a Rule 15 analysis" and should be reserved for a motion to dismiss. ECF 67 at 6. But this argument cannot be squared with Fourth Circuit precedent instructing district courts "to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d at 750. The Court therefore assesses here, and throughout, whether Plaintiff's PSAC states a claim for relief.

Raiklin." ECF 57-11 ¶ 51. Plaintiff also does not explain *when* the screenshot was posted on the internet or if it occurred before her termination. Moreover, while Plaintiff alleges that the email announcement of her employment was classified, she does not consistently allege that her CIA position itself was not public information. For example, she alleges that the CIA told her she could tell her family of her Agency appointment. ECF 57-11 ¶ 5. And her employment contract, which she attached to her Complaint, specifies that the document is "UNCLASSIFIED." ECF 1-5. Taking these allegations as a whole, Plaintiff asks the Court to infer that it must have been unlawful for the CIA to share that she was an employee; that Raiklin must have learned about her employment from a CIA leak, as opposed to another source; that, based on that information, Raiklin must have pressured Loomer to ask President Trump to have Plaintiff fired; and that the CIA must have fired Plaintiff at Loomer and Trump's behest, causing her to lose out on her salary under her employment contract. This attenuated chain of logic is simply too speculative to "nudge[] [Plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Poursaied v. EEOC*, No. 1:15-cv-548, 2015 WL 7112008, at *3 (M.D.N.C. Nov. 13, 2015) (dismissing Privacy Act claim where plaintiff failed to plausibly plead economic damages). The Court will therefore dismiss Plaintiff's Privacy Act claim and deny leave to amend.

### E.      Section 1983

The final claim in Plaintiff's PSAC is a 42 U.S.C. § 1983 claim against the CIA Defendants, John Doe CIA employees, ODNI, Gabbard, Rocco, and the IWWG. Plaintiff alleges that these Defendants violated § 1983 by participating in the IWWG which is "*ultra vires* and illegal" and by terminating her in violation of her "rights to due process and free speech." ECF 57-11 ¶¶ 98-100.

Section 1983 has no application here. All of the defendants that Plaintiff has named are federal officers. Section 1983, however, "reaches only those acting under color of state law." *Giancola v. State of W. Va. Dep't of Pub. Safety*, 830 F.2d 547, 549-50 (4th Cir. 1987). Because Federal officers cannot be held liable under § 1983, Plaintiff's § 1983 claim is futile.[7]

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant the CIA Defendants' Motions to Dismiss (ECF Nos. 35 & 36), grant in part and deny in part Raiklin's Motion to Dismiss (ECF 46), and deny Plaintiff's Motion for Leave to Amend Complaint (ECF 56), by an Order to be issued with this Memorandum Opinion.

**SO ORDERED.**

/s/
_____
Michael S. Nachmanoff
United States District Judge

February 25, 2026
Alexandria, Virginia

---

[7] To the extent that Plaintiff seeks to bring a *Bivens* action against the Defendants, that claim is similarly futile. Courts assess a *Bivens* claim under a two-step analysis. *Egbert v. Boule*, 596 U.S. 482, 492 (2022). First, courts ask "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017)). "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 136). Plaintiffs' allegations fail at step one as they fall outside the narrow circumstances in which the Supreme Court has recognized a *Bivens* cause of action. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) (recognizing cause of action against federal agents for violating a plaintiff's Fourth Amendment rights); *David v. Passman*, 442 U.S. 228 (1979) (same for sex-discrimination claim brought under the Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (same for prisoner's claim of inadequate treatment under the Eighth Amendment).